IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:07CR209 |
| | ) | |
| WILLIAM J. JEFFERSON, | ) | Hon. T.S. Ellis, III |
| | ) | |
| Defendant. | ) | Trial: June 2, 2009 |

## <u>GOVERNMENT'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORM</u>

The government respectfully requests the Court to include in its charge to the Jury the following general instructions, found in O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2000), Volume 1A, "General Instructions for Federal Criminal Cases."

**I.     Pre-Trial Jury Charges**

§ 11.03 -     Objections and Rulings

§ 11.04 -     Court's Comments to Counsel

§ 11.05 -     Court's Questions to Witnesses

§ 11.06 -     Court's Comments on Certain Evidence

§ 11.08 -     Publicity During Trial

§ 11.10 -     Typewritten Transcripts of Recorded Conversations

**II.     Final Jury Charges**

§ 12.01 -     Introduction to the Final Charge -- Province of the Court and of the Jury

§ 12.02 -     Judging the Evidence

§ 12.03 -     Evidence Received in the Case -- Stipulations, Judicial Notice, and Inferences Permitted

§ 12.04 -    Direct and Circumstantial Evidence

§ 12.05 -    Inferences from the Evidence

§ 12.07 -    Jury's Recollection Controls

§ 12.08 -    The Question Is Not Evidence

§ 12.12 -    Consider Each Count Separately

§ 14.01 -    Opinion Evidence -- The Expert Witness

§ 14.02 -    Charts and Summaries -- Not Admitted; Admitted [if applicable]

§ 14.06 -    False Exculpatory Statements

§ 15.01 -    Credibility of Witnesses -- Generally

§ 15.06 -    Credibility of Witnesses -- Inconsistent Statement

§ 15.07 -    Credibility of Witnesses -- Conviction of Felony

§ 15.12 -    Credibility of Witnesses -- The Defendant as a Witness [if applicable]

§ 15.14 -    Effect of Defendant's Failure to Testify [if applicable]

§ 17.04 -    "Knowingly" -- Defined

§ 17.07 -    Proof of Knowledge or Intent

§ 18.02 -    Common Scheme or Plan -- Evidence of Acts or Declarations of Confederates

§ 20.01 -    Verdict -- Election of Foreperson -- Duty to Deliberate -- Unanimity -- Punishment -- Form of Verdict -- Communication With the Court

The body of those requested pattern jury instructions is attached hereto, along with additional proposed special instructions, which the government requests that the Court include in its charge to the Jury. The government reserves the right to propose such other instructions as may become appropriate during the course of the trial.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:      _____/s/_____
Mark D. Lytle
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:   703-299-3700
Fax:     703-299-3981
Mark.Lytle@usdoj.gov

_____/s/_____
Rebeca H. Bellows
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:   703-299-3700
Fax:     703-299-3981
Becky.Bellows@usdoj.gov

_____/s/_____
Charles E. Duross
Special Assistant U.S. Attorney

3

Attorney for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:    703-299-3700
Fax:        703-299-3981
Charles.Duross@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of May, 2009, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:

Robert P. Trout, Esq.
Amy Berman Jackson, Esq.
Gloria B. Solomon, Esq.
Trout Cacheris, PLLC
1350 Connecticut Avenue, N.W.
Suite 300
Washington, D.C.  20036


_____/s/_____

Mark D. Lytle
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:    703-299-3768
Fax:        703-299-3981
Mark.Lytle@usdoj.gov

4

# TABLE OF CONTENTS

**Page No.**

**I.**    **General Instructions**

Identified in body of pleading. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-39

**II.**    **Special Instructions**

**A.**    **General**

1.    Presumption of Innocence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

2.    Burden of Proof and Reasonable Doubt.  . . . . . . . . . . . . . . . . . . . . . . 42

3.    "Willfully" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

4.    "Corruptly" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

5.    "On or About" or "In or About" -- Explained. . . . . . . . . . . . . . . . . . . . . 45

6.    Credibility of Witnesses -- Immunized Witnesses. . . . . . . . . . . . . . . . . . 46

7.    Credibility of Witnesses -- Accomplice . . . . . . . . . . . . . . . . . . . . . . . . . 47

8.    Ethical Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

9.    Deliberate Ignorance -- Explained. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

**B.**    **Conspiracy, Counts One and Two (18 U.S.C. § 371)**

10.    The Nature of the Offense Charged. . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

11.    Multiple Objects (for Use with General Conspiracy Charge). . . . . . . . . . 52

12.    The Statute Defining the Offense Charged. . . . . . . . . . . . . . . . . . . . . . . 53

13.    The Essential Elements of the Offense Charged. . . . . . . . . . . . . . . . . 54-55

14.    Conspiracy -- Existence of an Agreement. . . . . . . . . . . . . . . . . . . . . . 56-57

15.    Conspiracy -- Membership in an Agreement. . . . . . . . . . . . . . . . . . . . . 58

16.      Acts and Declarations of Co-Conspirators.. . . . . . . . . . . . . . . . . . . . . . . 59

17.      "Overt Acts" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

18.      Success of Conspiracy Immaterial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

19.      Unindicted, Unnamed or Separately Tried Co-Conspirators. . . . . . . . . . 62

20.      Relationship Between Substantive Offense and
            Conspiracy to Commit Offense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

21.      Conspiracy Venue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

**C.**      **Bribery, Counts Three and Four (18 U.S.C. § 201(b)(2)(A))**

22.      The Nature of the Offense Charged. . . . . . . . . . . . . . . . . . . . . . . . 66-67

23.      The Statute Defining the Offense Charged. . . . . . . . . . . . . . . . . . . . . . 68

24.      The Essential Elements of the Offense Charged. . . . . . . . . . . . . . . . . . 69

25.      "Public Official" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

26.      "Official Act" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

27.      "Any thing of value" -- Defined.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

**D.**      **Wire Fraud, Counts Five Through Ten (18 U.S.C. §§ 1343, 1346)**

28.      The Nature of the Offense Charged. . . . . . . . . . . . . . . . . . . . . . . . 74-75

29.      The Statute Defining the Offense Charged. . . . . . . . . . . . . . . . . . . . . . 76

30.      The Essential Elements of the Offense Charged. . . . . . . . . . . . . . . . 77-78

31.      "Scheme to Defraud or Deprive" and "Deprive Another of the
            Intangible Right to Honest Services" -- Defined. . . . . . . . . . . . . . . . 79-80

32.      "Duty to Disclose" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

33.      "Conflict of Interest" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

34.      "Scheme" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

35.    "Materiality" -- Defined.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

36.    "Intent to Defraud" -- Defined.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

37.    Dual Intent -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

38.    Use of Interstate Wire Communication.. . . . . . . . . . . . . . . . . . . . . . . . . . 87

39.    Official Action Was Lawful Is Not a Defense.. . . . . . . . . . . . . . . . . . . . . 88

**E.    Foreign Corrupt Practices Act ("FCPA"), Count Eleven (15 U.S.C. § 78dd-2(a))**

40.    The Nature of the Offense Charged.. . . . . . . . . . . . . . . . . . . . . . . . . . . 90-91

41.    The Statute Defining the Offense Charged. . . . . . . . . . . . . . . . . . . . . . . . 92

42.    The Essential Elements of the Offense Charged. . . . . . . . . . . . . . . . . 93-94

43.    "Domestic Concern" -- Defined.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

44.    "Interstate Commerce" -- Defined.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

45.    Promise or Authorization to Pay Sufficient -- Explained. . . . . . . . . . . . . 97

46.    Payments to Third Parties -- "Knowing" -- Defined. . . . . . . . . . . . . . . . 98

47.    Willful Blindness -- Foreign Corrupt Practices Act . . . . . . . . . . . . . . . . 99

48.    "Foreign Official" and "Instrumentality" -- Defined. . . . . . . . . . . . . . . 100

49.    "Obtaining or Retaining Business" -- Defined.. . . . . . . . . . . . . . . . . . . 101

50.    Solicitation of Bribe Not a Defense -- Explained. . . . . . . . . . . . . . . . . 102

**F.    Money Laundering, Counts Twelve Through Fourteen (18 U.S.C. § 1957)**

51.    The Nature of the Offense Charged.. . . . . . . . . . . . . . . . . . . . . . . . . . . 104

52.    The Statute Defining the Offense Charged. . . . . . . . . . . . . . . . . . . . . . 105

53.    The Essential Elements of the Offense Charged. . . . . . . . . . . . . . . . . . 106

54. "Monetary Transaction," "Financial Institution," and "Criminally Derived Property" -- Defined. . . . . . . . . . . . . . . . . . . . 107

**G.   Aiding and Abetting, Applicable to Counts Three Through Fourteen**

55. Aiding and Abetting -- Explained. . . . . . . . . . . . . . . . . . . . . . . . . . . 109-110

**H.   Obstruction of Justice, Count Fifteen (18 U.S.C. § 1512(c)(1))**

56. The Nature of the Offense Charged. . . . . . . . . . . . . . . . . . . . . . . . . . 112

57. The Statute Defining the Offense Charged. . . . . . . . . . . . . . . . . . . . . . 113

58. The Essential Elements of the Offense Charged. . . . . . . . . . . . . . . 114-115

59. "Official Proceeding" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

**I.   Racketeer Influenced Corrupt Organizations Act ("RICO"), Count Sixteen (18 U.S.C. § 1962(c))**

60. The Nature of the Offense Charged. . . . . . . . . . . . . . . . . . . . . . . . . . 118

61. The Statute Defining the Offense Charged. . . . . . . . . . . . . . . . . . . . . . 119

62. The Essential Elements of the Offense Charged. . . . . . . . . . . . . . . . . 120

63. An "Enterprise" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121-122

64. "Engaged in, or the Activities of Which Affect, Interstate Commerce" -- Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123-124

65. Defendant Was Employed By or Associated with the Enterprise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125-126

66. Conduct or Participate in the Conduct of the Affairs of the Enterprise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 127-128

67. Pattern of Racketeering Activity -- Defined. . . . . . . . . . . . . . . . . 129-131

68. Racketeering Activity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132-136

**J.   Proposed Verdict Form**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137-140

# **GENERAL INSTRUCTIONS**

**<u>Objections and Rulings</u>**

Testimony and exhibits can be admitted into evidence during a trial only if they meet certain criteria or standards.  It is the sworn duty of the attorney on each side of a case to object when the other side offers testimony or an exhibit which that attorney believes is not properly admissible under the rules of law.  Only by raising an objection can a lawyer request and obtain a ruling from the Court on the admissibility of the evidence being offered by the other side.  You should not be influenced against an attorney or his or her client because the attorney has made objections.

Do not attempt, moreover, to interpret my rulings on objections as somehow indicating how I think you should decide this case.  I am simply making a ruling on a legal question.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 11.03 (5th ed. 2000).)

**Court's Comments to Counsel**

It is the duty of the Court to admonish an attorney who, out of zeal for his or her cause, does something which I feel is not in keeping with the rules of evidence or procedure.

You are to draw absolutely no inference against the side to whom an admonition of the Court may have been addressed during the trial of this case.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 11.04 (5th ed. 2000).)

**Court's Questions to Witnesses**

During the course of a trial, I may occasionally ask questions of a witness.  Do not assume that I hold any opinion on the matters to which my questions may relate.  The Court may ask a question simply to clarify a matter -- not to help one side of the case or hurt another side.

Remember at all times that you, as jurors, are the sole judges of the facts of this case.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 11.05 (5th ed. 2000).)

**<u>Court's Comments on Certain Evidence</u>**

The law of the United States permits a federal judge to comment to the jury on the evidence in a case.  Such comments are, however, only expressions of my opinion as to the facts and the jury may disregard them entirely.  You, as jurors, are the sole judges of the facts in this case.  It is your recollection and evaluation of the evidence that is important to the verdict in this case.

Although you must follow the Court's instructions concerning the law applicable to this case, you are totally free to accept or reject my observations concerning the evidence received in the case.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 11.06 (5th ed. 2000).)

13

**Publicity During Trial**

I am advised that reports about this trial are appearing in the newspapers and on radio and television and the Internet.  The person who wrote or is reporting the story may not have listened to all of the testimony as you have, may be getting information from people who you will not see here in Court under oath and subject to cross-examination, may emphasize an unimportant point, or may simply be wrong.

Please do not read anything or listen to anything or watch anything with regard to this trial.  The case must be decided by you solely and exclusively on the evidence which will be received here in court.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 11.08 (5th ed. 2000).)

14

**Typewritten Transcripts of Recorded Conversations**

Recordings of conversations have been received in evidence and [*are about to be*] [*have been*] played for you.  Typewritten transcripts of these recorded conversations [*are about to be*] [*have been*] furnished to you.  These typewritten transcripts of the conversations are being given to you solely for your convenience in assisting you in following the conversation or in identifying the speakers.

The recordings themselves are evidence in the case and the typewritten transcripts are not evidence.  What you hear on the recordings is evidence.  What you read on the transcript is not.  If you perceive any variation between the two, you will be guided solely by the recordings and not by the transcripts.

If you cannot, for example, determine from the recording that particular words were spoken or if you cannot determine from the recording who said a particular word or words, you must disregard the transcripts insofar as those words or that speaker are concerned.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 11.10 (5th ed. 2000) (modified to reflect that the recordings were not made on "tapes," thus removing the word "tape" before the word "recording" and replacing the word "tapes" with the word "recording").)

**Introduction to the Final Charge**
**-- Province of the Court and of the Jury**

Members of the Jury:

Now that you have heard all of the evidence that is to be received in this trial and each of the arguments of counsel it becomes my duty to give you the final instructions of the Court as to the law that is applicable to this case. You should use these instructions to guide you in your decisions.

All of the instructions of law given to you by the Court -- those given to you at the beginning of the trial, those given to you during the trial, and these final instructions -- must guide and govern your deliberations.

It is your duty as jurors to follow the law as stated in all of the instructions of the Court and to apply these rules of law to the facts as you find them to be from the evidence received during the trial.

Counsel have quite properly referred to some of the applicable rules of law in their closing arguments to you. If, however, any difference appears to you between the law as stated by counsel and that as stated by the Court in these instructions, you, of course, are to be governed by the instructions given to you by the Court.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole in reaching your decisions.

Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base any part of your verdict upon any other view or opinion of the law than

that given in these instructions of the Court just as it would be a violation of your sworn duty, as the judges of the facts, to base your verdict upon anything but the evidence received in the case.

You were chosen as juror for this trial in order to evaluate all of the evidence received and to decide each of the factual questions presented by the allegations brought by the government in the Indictment and the plea of not guilty by the defendant.

In resolving the issues presented to you for decision in this trial you must not be persuaded by bias, prejudice, or sympathy for or against any of the parties to this case or by any public opinion.

Justice -- through trial by jury -- depends upon the willingness of each individual juror to seek the truth from the same evidence presented to all the jurors here in the courtroom and to arrive at a verdict by applying the same rules of law as now being given to each of you in these instructions of the Court.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.01 (5th ed. 2000).)

**Judging the Evidence**

There is nothing particularly different in the way that a juror should consider the evidence in a trial from that in which any reasonable and careful person would deal with any very important question that must be resolved by examining facts, opinions, and evidence. You are expected to use your good sense in considering and evaluating the evidence in the case. Use the evidence only for those purposes for which it has been received and give the evidence a reasonable and fair construction in the light of your common knowledge of the natural tendencies and inclinations of human beings.

If the defendant be proved guilty beyond a reasonable doubt, say so. If not proved guilty beyond a reasonable doubt, say so.

Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything other than the evidence received in the case and the instructions of the Court. Remember as well that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence because the burden of proving guilt beyond a reasonable doubt is always with the government.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.02 (5th ed. 2000).)

**Evidence Received in the Case --**
**Stipulations, Judicial Notice, and Inferences Permitted**

The evidence in this case consists of the sworn testimony of the witnesses -- regardless of who may have called them -- all exhibits received in evidence -- regardless of who may have produced them -- all facts which may have been agreed to or stipulated and all facts and events which may have been judicially noticed.

When the attorneys on both sides stipulate or agree as to the existence of a fact, you may accept the stipulation as evidence and regard that fact as proved. You are not required to do so, however, since you are the sole judge of the facts.

The Court has taken judicial notice of certain facts or events. When the Court declares that it has taken judicial notice of some fact or event, you may accept the Court's declaration as evidence and regard as proved the fact or event which has been judicially noticed. You are not required to do so, however, since you are the sole judge of the facts.

Any proposed testimony or proposed exhibit to which an objection was sustained by the Court and any testimony or exhibit ordered stricken by the Court must be entirely disregarded.

Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Questions, objections, statements, and arguments of counsel are not evidence in the case.

You are to base your verdict only on the evidence received in the case. In your consideration of the evidence received, however, you are not limited to the bald statements of the witnesses or to the bald assertions in the exhibits. In other words, you are not limited solely to what you see and hear as the witnesses testify or as the exhibits are admitted. You are permitted

to draw from the facts which you find have been proved such reasonable inferences as you feel

are justified in the light of your experience and common sense.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.03 (5th ed. 2000).)

**<u>Direct and Circumstantial Evidence</u>**

There are two types of evidence which are generally presented during a trial -- direct evidence and circumstantial evidence. Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact. The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.04 (5th ed. 2000).)

**Inferences from the Evidence**

Inferences are simply deductions or conclusions which reason and common sense lead the

jury to draw from the evidence received in the case.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.05 (5th ed. 2000).)

**Jury's Recollection Controls**

If any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

You are the sole judges of the evidence received in this case.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.07 (5th ed. 2000).)

## **The Question is Not Evidence**

The questions asked by a lawyer for either party to this case are not evidence. If a lawyer asks a question of a witness which contains an assertion of fact, therefore, you may not consider the assertion by the lawyer as any evidence of that fact. Only the answers are evidence.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.08 (5th ed. 2000).)

## Consider Each Count Separately

A separate crime is charged in each count of the Indictment.  Each charge, and the

evidence pertaining to it, should be considered separately by the jury.  The fact that you may find

the defendant guilty or not guilty as to one of the counts should not control your verdict as to any

other count.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.12 (5th ed.
2000).)

## Opinion Evidence -- The Expert Witness

The rules of evidence ordinarily do not permit witnesses to testify as to their own opinions or their own conclusions about important questions in a trial.  An exception to this rule exists as to those witnesses who are described as "expert witnesses."  An "expert witness" is someone who, by education or by experience, may have become knowledgeable in some technical, scientific, or very specialized area.  If such knowledge or experience may be of assistance to you in understanding some of the evidence or in determining a fact, an "expert witness" in that area may state an opinion as to a matter in which he or she claims to be an expert.

You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves.  You should consider the testimony of expert witnesses just as you consider other evidence in this case.  If you should decide that the opinion of an expert witness is not based upon sufficient education or experience, or if you should conclude that the reasons given in support of the opinion is outweighed by other evidence [*including that of other "expert witnesses"*], you may disregard the opinion in part or in its entirety.

As I have told you several times, you -- the jury -- are the sole judges of the facts of this case.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 14.01 (5th ed. 2000).)

26

**Charts and Summaries -- Not Admitted; Admitted**

**Not Admitted Into Evidence**

Charts or summaries have been prepared by the government [*and the defense*] and shown to you during the trial for the purpose of explaining facts that are allegedly contained in books, records, and other documents which are in evidence in the case.  Such charts or summaries are not evidence in this trial or proof of any fact.   If you find that these charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard the charts or summaries.  In other words, such charts or summaries are used only as a matter of convenience for you and to the extent that you find they are not, in truth, summaries of facts or figures shown by the evidence in the case, you can disregard them entirely.

**Admitted Into Evidence**

Charts or summaries have been prepared by the government [*and the defense*], have been admitted into evidence and have been shown to you during the trial for the purpose of explaining facts that are allegedly contained in books, records, or other documents which are also in evidence in the case.  You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight or importance, if any, as you feel they deserve.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 14.02 (5th ed. 2000).)

**<u>False Exculpatory Statements</u>**

Statements knowingly and voluntarily made by Defendant Jefferson upon being informed that a crime had been committed or upon being accused of a criminal charge may be considered by the jury.

When a defendant voluntarily offers an explanation or voluntarily makes some statement tending to show his innocence and it is later shown that the defendant knew that the statement or explanation was false, the jury may consider this as showing a consciousness of guilt on the part of a defendant since it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.

Whether or not evidence as to a defendant's explanation or statement points to a consciousness of guilt on his part and the significance, if any, to be attached to any such evidence, are matters exclusively within the province of the jury since you are the sole judges of the facts of this case.

In your evaluation of evidence of an exculpatory statement shown to be false, you may consider that there may be reasons -- fully consistent with innocence -- that could cause a person to give a false statement showing that he did not commit a crime.  Fear of law enforcement, reluctance to become involved, and simple mistake may cause a person who has committed no crime to give such a statement or explanation.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 14.06 (5th ed. 2000).)

28

**Credibility of Witnesses -- Generally**

You, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to testify in this case and only you determine the importance or the weight that their testimony deserves. After making your assessment concerning the credibility of a witness, you may decide to believe all of that witness' testimony, only a portion of it, or none of it.

In making your assessment of that witness you should carefully scrutinize all of the testimony given by that witness, the circumstances under which each witness has testified, and all of the other evidence which tends to show whether a witness, in your opinion, is worthy of belief. Consider each witness's intelligence, motive to falsify, state of mind, and appearance and manner while on the witness stand. Consider the witness's ability to observe the matters as to which he or she has testified and consider whether he or she impresses you as having an accurate memory or recollection of these matters. Consider also any relation a witness may bear to either side of the case, the manner in which each witness might be affected by your verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to disbelieve or discredit such testimony. Two or more persons witnessing an incident or a transaction may simply see or hear it differently. Innocent misrecollection, like failure of recollection, is not an uncommon human experience. In weighing the effect of a discrepancy, however, always consider whether it pertains to a matter of importance or an insignificant detail and consider whether the discrepancy results from innocent error or from intentional falsehood.

After making your own judgment or assessment concerning the believability of a witness, you can then attach such importance or weight to that testimony, if any, that you feel it deserves. You will then be in a position to decide whether the government has proven the charges beyond a reasonable doubt.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 15.01 (5th ed. 2000).)

**Credibility of Witnesses -- Inconsistent Statement**

The testimony of a witness may be discredited or, as we sometimes say, impeached by showing that he or she previously made statements which are different than or inconsistent with his or her testimony here in court. The earlier inconsistent or contradictory statements are admissible only to discredit or impeach the credibility of the witness and not to establish the truth of these earlier statements made somewhere other than here during this trial. It is the province of the jury to determine the credibility of a witness who has made prior inconsistent or contradictory statements.

If a person is shown to have knowingly testified falsely concerning any important or material matter, you obviously have a right to distrust the testimony of such an individual concerning other matters. You may reject all of the testimony of that witness or give it such weight or credibility as you may think it deserves.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 15.06 (5th ed. 2000).)

31

## Credibility of Witnesses -- Conviction of Felony

The testimony of a witness may be discredited or impeached by evidence showing that the witness has been convicted of a felony, a crime for which a person may receive a prison sentence of more than one year.

Prior conviction of a crime that is a felony is one of the circumstances which you may consider in determining the credibility of that witness.

It is the sole and exclusive right of the jury to determine the weight to be given to any prior conviction as impeachment and the weight to be given to the testimony of anyone who has previously been convicted of a felony.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 15.07 (5th ed. 2000).)

## **Credibility of Witnesses -- The Defendant as a Witness**

You should judge the testimony of Defendant Jefferson in the same manner as you judge

the testimony of any other witness in this case.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 15.12 (5th ed. 2000) (if defendant testifies).)

**<u>Effect of the Defendant's Failure to Testify</u>**

The defendant in a criminal case has an absolute right under our Constitution not to testify.

The fact that the Defendant Jefferson did not testify must not be discussed or considered in any way when deliberating and in arriving at your verdict. No inference of any kind may be drawn from the fact that a defendant decided to exercise his privilege under the Constitution and did not testify.

As stated before, the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or of producing any evidence.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 15.14 (5th ed. 2000) (if defendant does not testify).)

**"Knowingly" -- Defined**

The term "knowingly," as used in these instructions to describe the alleged state of mind of Defendant Jefferson, means that he was conscious and aware of his actions or omissions, realized what he was doing or what was happening around him, and did not act or fail to act because of ignorance, mistake, or accident.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 17.04 (5th ed. 2000).)

**<u>Proof of Knowledge or Intent</u>**

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind.  In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.  It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instruction*s, Section 17.07 (5th ed. 2000).)

**Verdict -- Election of Foreperson -- Duty to Deliberate**
**-- Unanimity -- Punishment -- Form of Verdict -- Communication with the Court**

Upon retiring to your jury room to begin your deliberations, you must elect one of your members to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict.

Remember at all times that you are not partisans. You are judges -- judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of this trial is intended in any way, to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in any form of verdict, which

has been prepared for your convenience, is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return.  What the verdict shall be is the exclusive duty and responsibility of the jury.  As I have told you many times, you are the sole judges of the facts.

The punishment provided by law for the offenses charged in the Indictment is a matter exclusively within the province of the Court and should never be considered by the jury in any way in arriving at an impartial verdict as to the offenses charged.

A form of verdict has been prepared for your convenience.

[*The form of verdict should be read to the jury.*]

You will take this form to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson write your verdict, date and sign the form, and then return with your verdict to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note, signed by your foreperson or by one or more members of the jury, through the bailiff.  No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing and the Court will never communicate with any member of the jury concerning the evidence, your opinions, or the deliberations other than in writing or orally here in open court.

You will note from the oath about to be taken by the bailiffs that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury concerning the evidence, your opinions, or the deliberations.

Bear in mind also that you are never to reveal to any person -- not even to the Court --

how the jury stands, numerically or otherwise, on the question of whether or not the government

has sustained its burden of proof until after you have reached a unanimous verdict.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 20.01 (5th ed. 2000).)

39

# SPECIAL INSTRUCTIONS: GENERAL

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 1

### Presumption of Innocence

I instruct you that you must presume Defendant Jefferson to be innocent of the crimes charged. Thus, the defendant, although accused of crimes in the Indictment, begins the trial with a "clean slate" -- with no evidence against him. The Indictment, as you already know, is not evidence of any kind. The law permits nothing but legal evidence presented before the jury in court to be considered in support of any charge against the defendant. The presumption of innocence alone, therefore, is sufficient to acquit the defendant.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.10 (5th ed. 2000) (first paragraph).)

41

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 2

### Burden of Proof and Reasonable Doubt

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government.

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt.

Unless the government proves, beyond a reasonable doubt, that Defendant Jefferson has committed each and every element of the offenses charged in the Indictment, you must find the defendant not guilty of the offenses. If the jury views the evidence in the case as reasonably permitting either of two conclusions -- one of innocence, the other of guilt -- the jury must, of course, adopt the conclusion of innocence.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 12.10 (5th ed. 2000) (last three paragraphs, except definition of "reasonable doubt" deleted to conform with Fourth Circuit law regarding definitions of reasonable doubt); *United States v. Williams*, 152 F.3d 294, 298 (4th Cir. 1998) (trial court is not required to define reasonable doubt as matter of course so long as jury is instructed that defendant's guilt must be proven beyond reasonable doubt); *see also United States v. Oriakhi*, 57 F.3d 1290 (4th Cir. 1995); *United States v. Reives*, 15 F.3d 42 (4th Cir. 1994).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 3**

**"Willfully" -- Defined**

The word "willfully," as that term is used in the Indictment or in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is with bad purpose either to disobey or disregard the law.  Now, the person need not be aware of the specific law or rule that his conduct may be violating.  But he must act with the intent to do something that the law forbids.

(*See* Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Basic Instruction No. 9.1 (2003); *see also Bryan v. United States*, 524 U.S. 184, 190-93 (1998); *United States v. Kay*, 4:01cr00914, Dkt. Entry 142 at 14-15 (S.D. Tex.) (jury instructions in FCPA prosecution), *aff'd*, No. 05-20604, 2007 WL 3088140, at *7-10 (5th Cir. Oct. 24, 2007) (discussing "willfully" in FCPA prosecution), *reh'g denied*, 2008 WL 96106, at *1-3 (5th Cir. Jan. 10, 2008).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 4

### "Corruptly" -- Defined

To act "corruptly" means to act knowingly and dishonestly for a wrongful purpose.

(Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 5.2 (2003): *see* 2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 27.09 (5th ed. 2000) (defining "corruptly" for bribery offense); 2A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions Criminal*, Section 48.04 (5th ed. 2000) (defining "corruptly" for obstruction of justice offense); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-06 (2005); *United States v. Liebo*, 923 F.2d 1308, 1312 (8th Cir. 1991) (defining "corruptly" in FCPA prosecution); *United States v. Mead*, Cr. No. 98-240-01-AET (D. N.J.) (same).)

44

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 5**

**"On or About" and "In or About" -- Explained**

The Indictment charges that the offenses alleged in Counts 1 through 16 of the Indictment were committed "on or about" a certain date or "in or about" a certain month.

Although it is necessary for the government to prove beyond a reasonable doubt that the offense was committed on a date reasonably near the dates alleged in Counts 1 through 16 of the Indictment, it is not necessary for the government to prove that the offense was committed precisely on the date charged.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 13.05 (5th ed. 2000) (modified to reflect Indictment also contains phrase "in or about").)

45

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 6

### Credibility of Witnesses -- Immunized Witness

The testimony of an immunized witness, someone who has been told either that his or her crimes will go unpunished in return for testimony or that his or her testimony will not be used against him or her in return for that cooperation, must be examined and weighed by the jury with greater care than the testimony of someone who is appearing in court without the need for such an agreement with the government.

James Creaghan, Dumebi Kachikwu, George Knost, Jean Michel-Malek, John Melton, and Noreen Griffin (f/k/a "Noreen Wilson") may be considered to be immunized witnesses in this case.

_____The jury must determine whether the testimony of an immunized witness has been affected by self-interest, or by the agreement he or she has with the government, or by his or her own interest in the outcome of this case, or by prejudice against the defendant.

_____

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 15.03 (5th ed. 2000) (modified to reflect names of immunized witnesses).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 7

### Credibility of Witnesses -- Accomplice

The testimony of an alleged accomplice, someone who said he or she participated in the commission of a crime, must be examined and weighed by the jury with greater care than the testimony of a witness who did not participate in the commission of that crime.

James Creaghan, Vernon Jackson, Dumebi Kachikwu, George Knost, John Melton, Brett Pfeffer, and Noreen Wilson, among others, may be considered to be alleged accomplices in this case.

The fact that alleged accomplices, namely, Vernon Jackson and Brett Pfeffer, have entered pleas of guilty to any of the offenses charged is not evidence of the guilt of any other person including the defendant.

The jury must determine whether the testimony of the accomplice has been affected by self-interest, or by an agreement he may have with the government, or by his own interest in the outcome of this case, or by prejudice against the defendant.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 15.04 (5th ed. 2000) (modified to reflect names of alleged accomplices likely to be called by the government in its case-in-chief, which may be amended depending on events at trial and if the defense calls any additional accomplices, such as Jennifer Douglas Abubakar, Andrea Jefferson, Mose Jefferson, and Phillip Jones).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 8

### Ethical Rules

There has been evidence presented in this trial that Defendant Jefferson may have violated certain ethical rules promulgated by the United States House of Representatives. You are instructed that, should you find that Defendant Jefferson violated these ethical rules, such a violation is not evidence, standing alone, that Defendant Jefferson committed the crimes charged. You may, however, consider evidence of ethical violations, along with all of the other evidence presented as trial, to determine whether the United States has proven all of the necessary elements of the crimes with which Defendant Jefferson has been charged.

(*See United States v. Harvey*, 3:06-CR-00023-NKM, Dkt. Entry 62 at 10 (W.D. Va.); *see also United States v. Diggs*, 613 F.2d 988 (D.C. Cir. 1979) (House Rules admitted as proof of materiality, motive, and intent ), *cert. denied*, 446 U.S. 982 (1980); *United States v. Harvard*, 103 F.3d 412, 414-22 (5th Cir. 1997); *United States v. Parks*, 68 F.3d 860, 866 (5th Cir. 1995); *United States v. DeLucca*, 630 F.2d 294, 296-97 (5th Cir. 1980); *United States v. Bailin*, No. 89 CR 668, 1990 WL 114741, at *10 (N.D. Ill. July 17, 1990); *United States v. Marker*, No. 94-40002-01-SAC, 1994 WL 192018, at *9-10 (D. Kan. Jul. 17, 1994).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 9

### Deliberate Ignorance -- Explained

The government may prove that Defendant Jefferson, in certain instances, acted "knowingly" by inferences drawn from proof beyond a reasonable doubt that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. Stated another way, a defendant's knowledge of a fact may be inferred upon willful blindness to the existence of a fact.

It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes and inferences to be drawn from any such evidence.

You may not conclude that Defendant Jefferson had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition. Instead, the government must prove beyond a reasonable doubt that the defendant purposely and deliberately contrived to avoid learning all of the facts.

(1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 17.09 (5th ed. 2000) (modified); *United States v. Ruhe*, 191 F.3d 376 (4th Cir. 1999); *United States v. Guay*, 108 F.3d 545 (4th Cir. 1997).)

49

# <u>SPECIAL INSTRUCTIONS:</u> CONSPIRACY INSTRUCTIONS

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 10

### The Nature of the Offense Charged

Count 1 of the Indictment charges that from in or about January 2001 until in or about August 2005, within the Eastern District of Virginia and elsewhere, Defendant Jefferson came to some type of agreement or understanding to commit certain offenses against the United States, namely, (a) to solicit and accept bribes, (b) to deprive United States citizens and the House of Representatives of their right to the defendant's honest services through wire fraud, and (c) to pay bribes to foreign officials, and then acted to achieve the goals of the alleged conspiracy or agreement or understanding in that one of its members thereafter undertook one or more acts in furtherance of the conspiracy, as described in the Overt Acts section of Count 1 of the Indictment.

Count 2 of the Indictment charges that from in or about August 2000 until in or about March 2005, in the Eastern District of Virginia and elsewhere, the defendant came to some type of agreement or understanding to commit an offense against the United States, namely, (a) to solicit and accept bribes and (b) to deprive United States citizens and the House of Representatives of their right to the defendant's honest services through wire fraud, and then acted to achieve the goals of the alleged conspiracy or agreement or understanding in that one of its members thereafter undertook one or more acts in furtherance of the conspiracy, as described in the Overt Acts section of Count 2 of the Indictment.

(*See* Indictment, Counts One and Two, ¶¶ 39-139, 140-205; 2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 31.01 (5th ed. 2000) (modified).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 11**

**Multiple Objects (for Use with General Conspiracy Charge)**

With regard to the alleged conspiracies charged in Count 1 and Count 2, the Indictment charges that the defendant conspired to violate more than one federal law. It is charged, in other words, in Count 1 that the defendant conspired to commit three separate, substantive crimes or offenses. In Count 2, it is charged that the defendant conspired to commit two separate, substantive crimes or offenses.

In such a case it is not necessary for the government to prove that Defendant Jefferson conspired to commit all of those substantive offenses. With regard to Count 1, it would be sufficient if the government proves, beyond a reasonable doubt, that Defendant Jefferson conspired with someone to commit one of those offenses in Count 1; but, in that event, in order to return a verdict of guilty, you must unanimously agree upon which of the offenses Defendant Jefferson conspired to commit in Count 1. Similarly, with regard to Count 2, it would be sufficient if the government proves, beyond a reasonable doubt, that Defendant Jefferson conspired with someone to commit one of those offenses in Count 2; but, in that event, in order to return a verdict of guilty, you must unanimously agree upon which of the offenses Defendant Jefferson conspired to commit in Count 2.

(Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 13.2 (2003) (modified); *see also* Sixth Circuit Pattern Jury Instructions, Instruction No. 3.02 (2005).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 12**

**The Statute Defining the Offense Charged**

Section 371 of Title 18 of the United States Code provides, in part, that:

> If two or more persons conspire . . . to commit any offense against the United States, or to defraud the United States, or any agency thereof . . . and one or more of such persons do any act to effect the object of the conspiracy, . . .

an offense against the United States has been committed.

(18 U.S.C. § 371; 2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 31.02 (5th ed. 2000).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 13

### The Essential Elements of the Offense Charged

Counts 1 and 2 of the Indictment each set forth a different conspiracy to commit a crime prohibited by various federal laws.  Count 1 alleges a conspiracy to violate: (a) the bribery provisions under 18 U.S.C. § 201(b); (b) the honest services provisions under 18 U.S.C. §§ 1343 and 1346; and (c) the Foreign Corrupt Practices Act under 15 U.S.C. § 78dd-2(a).  Count 2 alleges a conspiracy to violate: (a) the bribery provisions under 18 U.S.C. § 201(b); and (b) the honest services provisions under 18 U.S.C. §§ 1343 and 1346.  The specific elements of each of these crimes will be discussed later in these instructions.

It is a crime for two or more persons to conspire, or agree, to commit a criminal act, even if they never actually achieve their goal.  A conspiracy is a kind of criminal partnership.  For you to find the defendant guilty on Count 1 and Count 2, respectively, the government must prove the following three (3) essential elements beyond a reasonable doubt:

*First*:  that two or more persons conspired, or agreed, to commit the crimes identified in the particular count;

*Second*:  that the defendant knowingly and intentionally joined the conspiracy; and

*Third*:  that a member of the conspiracy did one of the overt acts described in the Indictment for the purpose of advancing, furthering, or helping the object or purpose of the conspiracy.

With regard to Count 1, you must be convinced that the government has proved all of these elements beyond a reasonable doubt in order to find the defendant guilty of the conspiracy charge alleged in Count 1.

With regard to Count 2, you must be convinced that the government has proved all of these elements beyond a reasonable doubt in order to find the defendant guilty of the conspiracy charge alleged in Count 2.

(*See* Sixth Circuit Pattern Criminal Jury Instructions, No. 3.01A (2005) (modified); *see also* 2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 31.03 (5th ed. 2000); *United States v. Anderson*, 611 F.2d 504, 510 (4th Cir. 1979).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 14

### Conspiracy -- Existence of an Agreement

A criminal conspiracy is an agreement or a mutual understanding knowingly made or knowingly entered into by at least two people to violate the law by some joint or common plan or course of action. A conspiracy is, in a very true sense, a partnership in crime.

A conspiracy or agreement to violate the law, like any other kind of agreement or understanding, need not be formal, written, or even expressed directly in every detail.

The government must prove that Defendant Jefferson and at least one other person knowingly and deliberately arrived at an agreement or understanding that they, and perhaps others, would violate some laws by means of some common plan or course of action as alleged in Count 1 and Count 2 of the Indictment. It is proof of this conscious understanding and deliberate agreement by the alleged members that should be central to your consideration of the charge of conspiracy.

To prove the existence of a conspiracy or an illegal agreement, the government is not required to produce a written contract between the parties or even produce evidence of an express oral agreement spelling out all of the details of the understanding. To prove that a conspiracy existed, moreover, the government is not required to show that all of the people named in the Indictment as members of the conspiracy were, in fact, parties to the agreement, or that all of the members of the alleged conspiracy were named or charged, or that all of the people whom the evidence shows were actually members of a conspiracy agreed to all of the means or methods set out in the Indictment.

Unless the government proves beyond a reasonable doubt that a conspiracy, as just explained, actually existed, then you must acquit Defendant Jefferson.

(2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 31.04 (5th ed. 2000) (modified); *United States v. Burgos*, 94 F.3d 849, 860-61 (4th Cir. 1996).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 15**

**Conspiracy -- Membership in an Agreement**

Before the jury may find that Defendant Jefferson, or any other person, became a member of the conspiracy charged in Count 1 and Count 2 of the Indictment, respectively, the evidence in the case must show beyond a reasonable doubt that Defendant Jefferson knew the purpose or goal of the agreement or understanding and deliberately entered into the agreement intending, in some way, to accomplish the goal or purpose by this common plan or joint action.

If the evidence establishes beyond a reasonable doubt that Defendant Jefferson knowingly and deliberately entered into an agreement to commit the offenses alleged in Count 1 and Count 2 of the Indictment, the fact that the defendant did not join the agreement at its beginning, or did not know all of the details of the agreement, or did not know all of his co-conspirators, or did not participate in each act of the agreement, or did not play a major role in accomplishing the unlawful goal, or had only a slight connection with the conspiracy is not important to your decision regarding membership in the conspiracy.

Merely associating with others and discussing common goals, mere similarity of conduct between or among such persons, merely being present at the place where a crime takes place or is discussed, or even knowing about criminal conduct does not, of itself, make someone a member of the conspiracy or a conspirator.

(2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 31.05 (5th ed. 2000) (modified); *Blumenthal v. United States*, 332 U.S. 539, 557 (1947); *United States v. Burgos*, 94 F.3d 849, 859-62 (4th Cir. 1996); *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 16

### Acts and Declarations of Co-Conspirators

Evidence has been received in this case that certain persons, who are alleged in Count 1 or Count 2 of the Indictment to be co-conspirators of Defendant Jefferson, have done or said things during the existence or life of the alleged conspiracy charged in Count 1 or Count 2 in order to further or advance its goals.

Such acts and statements of these other individuals may be considered by you in determining whether or not the government has proven the charges in Counts 1 and 2 of the Indictment against Defendant Jefferson.

Since these acts may have been performed and these statements may have been made outside the presence of Defendant Jefferson and even done or said without the defendant's knowledge, these acts or statements should be examined with particular care by you before considering them against the defendant who did not do the particular act or make the particular statement.

(2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 31.06 (5th ed. 2000).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 17**

**"Overt Acts" -- Defined**

In order to sustain its burden of proof under Count 1 and Count 2 of the Indictment, the government must prove beyond a reasonable doubt that one of the members of the alleged conspiracy or agreement knowingly performed at least one overt act and that this overt act was performed during the existence or life of the conspiracy and was done to somehow further the goals of the conspiracy or agreement.

The term "overt act" means some type of outward, objective action performed by one of the parties to or one of the members of the agreement or conspiracy which evidences that agreement.

Although you must unanimously agree that the same overt act was committed, the government is not required to prove more than one of the overt acts charged.

The overt act may, but for the alleged illegal agreement, appear totally innocent and legal.

(2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 31.07 (5th ed. 2000).)

60

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 18

### Success of Conspiracy Immaterial

The government is not required to prove that the parties to or members of the alleged agreement or conspiracy were successful in achieving any or all of the objects of the agreement or conspiracy.

(2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 31.08 (5th ed. 2000).)

**GOVERNMENT'S JURY INSTRUCTION NO. 19**

**Unindicted, Unnamed or Separately Tried Co-Conspirators**

Now, some of the people who may have been involved in these events are not on trial. This does not matter.  There is no requirement that all members of a conspiracy be charged and prosecuted, or tried together in one proceeding.

Nor is there any requirement that the names of the other conspirators be known.  An indictment can charge a defendant with a conspiracy involving people whose names are not known, as long as the government can prove that the defendant conspired with one or more of them.  Whether they are named or not does not matter.

(Sixth Circuit Pattern Criminal Jury Instructions, No. 3.06 (2005).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 20**

**Relationship Between Substantive Offense and Conspiracy to Commit Offense**

Under the law, conspiracy to commit a crime is an entirely separate and distinct charge from the actual violation or substantive charge which may be the object of a conspiracy. All of the elements of bribery, honest services fraud, or bribery of a foreign official need not be met in order for you to find that there was a conspiracy. All that you must find is that there was an agreement to commit those offenses and an overt act taken in furtherance of the conspiracy.

(*United States v. Bayer*, 331 U.S. 532, 542 (1947); *United States v. Warshawsky*, 20 F.3d 204, 208 (6th Cir. 1994); *see also* Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Basic Instruction No. 8.)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 21

### Conspiracy Venue

Some of the events that you have heard about happened in other places.  There is no requirement that the entire conspiracy take place here in the Eastern District of Virginia.  But for you to return a guilty verdict on a conspiracy charge, the government must convince you that either the agreement, or one of the overt acts, took place here in the Eastern District of Virginia.

Unlike all the other elements that I have described, this is a fact that the government only has to prove by a preponderance of the evidence.  This means the government only has to convince you that it is more likely than not that part of the conspiracy took place here. Remember that all the other elements I have described must be proved beyond a reasonable doubt.

This concludes my instructions on Count 1 and Count 2 of the Indictment.

(Sixth Circuit Pattern Criminal Jury Instructions, No. 3.07 (2005).)

# SPECIAL INSTRUCTIONS: BRIBERY INSTRUCTIONS

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 22

### The Nature of the Offense Charged

The conspiracy counts just discussed -- Counts 1 and 2 -- charge that one of the objects of those conspiracies was to violate Title 18, United States Code, Section 201(b)(2)(A), which makes it a federal crime for a public official to solicit or receive a bribe in return for being influenced in the performance of an official act. Counts 3, 4, and 16 charge substantive violations of Title 18, United States Code, Section 201(b)(2)(A), as described below. The nature of the conspiracies charged in Counts 1 and 2 has already been described.

Count 3 of the Indictment charges that from in or about January 2001 through in or about August 2005, within the Eastern District of Virginia and elsewhere, Defendant Jefferson, then a public official, corruptly demanded, sought, or received something of value personally, or for any other person or entity, in order to be influenced in the performance of official acts. Count 4 of the Indictment charges that from in or about June 2004 through in or about August 2005, within the Eastern District of Virginia and elsewhere, Defendant Jefferson, then a public official, corruptly demanded, sought, or received something of value personally, or for any other person or entity, in order to be influenced in the performance of official acts.

Count 16 of the Indictment charges that from in or about August 2000 through in or about August 2005, in the Eastern District of Virginia and elsewhere, Defendant Jefferson, through The Office of Congressman William J. Jefferson, engaged in a pattern of racketeering activity through the commission of Racketeering Acts 1 through 12, which will be discussed in detail later in these instructions. Those Racketeering Acts allege, among other things, that Defendant Jefferson participated in a pattern of criminal conduct that involved corruptly demanding, seeking, or

receiving something of value personally, or on behalf of various family members, in return for

Defendant Jefferson's agreement to use his office, The Office of Congressman William J.

Jefferson, in the performance of official acts to promote the business interests of various

companies and businesspersons.

(*See* Indictment, Counts One, Two, Three, Four, and Sixteen, ¶¶ 39-139, 140-205, 206-07, 208-09, 219-70; 2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 27.04 (5th ed. 2000) (modified).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 23

### The Statute Defining the Offense Charged

Section 201(b)(2)(A) of Title 18, United States Code provides, in part, that:

Whoever --

(2) being a public official . . . directly or indirectly, corruptly demands, seeks, receives, accepts or agrees to receive or accept anything of value personally or for any other person or entity, in return for:

(A) being influenced in the performance of any official act; . . .

shall be guilty of an offense against the United States.

(18 U.S.C. § 201(b); 2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 27.05 (5th ed. 2000).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 24**

**The Essential Elements of the Offense Charged**

In order to sustain its burden of proof for the crime of demanding, seeking, or receiving a bribe by a public official, the government must prove the following three (3) essential elements beyond a reasonable doubt:

*First*:    Defendant Jefferson directly or indirectly demanded, sought, received or accepted, or agreed to receive or accept, something of value personally or for any other person or entity;

*Second*:    Defendant Jefferson was, at that time, a public official of the United States; and

*Third*:    Defendant Jefferson demanded, sought, received, accepted or agreed to receive or accept the item of value corruptly in return for being influenced in the performance of any official act.

(2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 27.06 (5th ed. 2000) (modified); *see also* 18 U.S.C. § 201(b)(2)(A).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 25

### "Public Official" -- Defined

The term "public official" means Member of Congress, or an officer or employee or person acting for or on behalf of the United States, or any department, agency, or branch of Government thereof, in any official function, under or by authority of any such department, agency, or branch of government.

The term "public official" includes any employee of the United States government as well as any person who is performing work for or acting on behalf of the United States government.

(2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 27.07 (5th ed. 2000).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 26**

**"Official Act" -- Defined**

The term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

The term "official act" includes the decisions or actions generally expected of the public official. These decisions or actions do not need to be specifically prescribed by any law, rule, or job description to be considered to be an "official act." Thus, "official acts" include those duties and activities customarily associated with a particular position.

It is not a defense that the offer or promise, or the demand or receipt, of anything of value concerned an official act which was actually lawful, desirable, or even beneficial to the public. It is also not a defense that the public official did not have the authority, power, or ability to perform the act for which the thing of value was given, offered or promised, demanded, sought, or received or accepted.

(2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Sections 27.08, 27.11, 27.12 (5th ed. 2000) (modified); *see* 18 U.S.C. § 201(a); *see also United States v. Birdsall*, 233 U.S. 223, 230-31 (1914); *United States v. Biaggi*, 853 F.2d 89, 97 (2d Cir. 1988); *United States v. Traficant*, 4:01CR207 (N.D. Ohio 2001); *United States v. Bustamante*, Crim. Action No. SA-93-CR-39 (W.D. Tex. 1993). The jury instructions from *Traficant* and *Bustamante* were attached as Exhibits 1 and 2 to Government's Opposition to Defendant's Motion to Exclude Expert Testimony, Dkt. Entry 140.)

71

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 27**

**"Anything of value" -- Defined**

The phrase "anything of value" means any item, whether tangible or intangible, that the person giving or offering or the person demanding or receiving considers to be worth something. The phrase "anything of value" includes a sum of money, shares of stock, percentage of revenue, commissions, favorable treatment, a job, or special consideration.

(2 O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 27.10 (5th ed. 2000) (modified).)

# <u>SPECIAL INSTRUCTIONS:</u>
# HONEST SERVICES
# WIRE FRAUD INSTRUCTIONS

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 28**

**The Nature of the Offense Charged**

As mentioned before, the conspiracy counts -- Counts 1 and 2 -- charge that one of the objects of those conspiracies was to violate Title 18, United States Code, Sections 1343 and 1346, which make it a federal crime for anyone to use interstate wire communications facilities in carrying out a scheme to fraudulently deprive another of the intangible right of honest services. Counts 5 through 10 and Count 16 charge violations of Title 18, United States Code, Sections 1343 and 1346, as described below. The nature of the conspiracies charged in Counts 1 and 2 has already been described.

Counts 5 through 10 of the Indictment charge that, from approximately January 2001 until approximately August 2005, within the Eastern District of Virginia and elsewhere, Defendant Jefferson, aided and abetted by others, devised a scheme to defraud and deprive the citizens of the United States and the United States House of Representatives of their right to the honest and faithful services of Defendant Jefferson, a Member of the United States House of Representatives, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, concealment, and conflict of interest. Specifically, Counts 5 through 10 of the Indictment charge that, for the purpose of executing this scheme to defraud and deprive, Defendant Jefferson, aided and abetted by others, caused to be transmitted by means of wire communication in interstate commerce: [Count 5] a credit card charge of $14,885.95 at Dulles International Airport in Loudoun County, Virginia; [Count 6] one facsimile from New Orleans sent to McLean, Virginia; [Count 7] a facsimile from Washington, D.C., sent to McLean, Virginia; [Count 8] another facsimile from Washington, D.C., sent to McLean, Virginia; [Count 9] an electronic

74

funds transfer from a bank in McLean, Virginia to The ANJ Group's bank account in New

Orleans, Louisiana; and [Count 10] a telephone call from Ghana in West Africa to a co-

conspirator in Kentucky.

As mentioned before, Count 16 of the Indictment charges that from in or about August

2000 through in or about August 2005, in the Eastern District of Virginia and elsewhere,

Defendant Jefferson, through The Office of Congressman William J. Jefferson, engaged in a

pattern of racketeering activity through the commission of Racketeering Acts 1 through 12,

which will be discussed in detail later in these instructions.  Those Racketeering Acts allege,

among other things, that Defendant Jefferson participated in a pattern of criminal conduct that

also concealed his and his family's financial interests in various business ventures by, among

other things, using nominee companies, employing misleading business agreements, and omitting

material facts in public filings.

(*See* Indictment, Counts One, Two, Five through Ten, and Sixteen, ¶¶ 39-139, 140-205, 210-12,
219-70; 2A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 47.05
(5th ed. 2000) (modified).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 29**

**The Statute Defining the Offense Charged**

Title 18, United States Code, Sections 1346 and 1343 define the crime of honest services

wire fraud.  Section 1343 provides, in part, that:

> Whoever, having devised . . . any scheme or artifice to defraud . . .
> by means of false or fraudulent pretenses, representations, or
> promises, transmits or causes to be transmitted by means of wire . .
> . communication in interstate or foreign commerce, any writings,
> signs, signals, pictures, or sounds for the purpose of executing such
> scheme or artifice . . .

shall be guilty of an offense against the United States.

Section 1346, in turn, provides that:

> [T]he term "scheme or artifice to defraud" [in Section 1343]
> includes a scheme or artifice to deprive another of the intangible
> right of honest services.

(18 U.S.C. §§ 1346, 1343; 2A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 47.06 (5th ed. 2000) (modified).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 30**

**The Essential Elements of the Offense Charged**

In order to sustain its burden of proof for the crime of using a wire communication in interstate or foreign commerce to deprive another of the intangible right of honest services, the government must prove each of the following three (3) essential elements beyond a reasonable doubt:

*First*:    Defendant Jefferson knowingly devised or knowingly participated in a scheme to defraud or deprive the citizens of the United States or the United States House of Representatives of their intangible right to honest services;

*Second*:    Defendant Jefferson did so willfully and with an intent to defraud; and

*Third*:    In advancing, or furthering, or carrying out this scheme to defraud, Defendant Jefferson transmitted, or caused to be transmitted, any writing, signal, or sound by means of a wire communication in interstate or foreign commerce.

A person causes a wire communication to be transmitted when he knows that the wire communication will be used in the ordinary course of business or when he can reasonably foresee such use.   It does not matter whether the wire communication was itself false or deceptive so long as the wire communication was incident to an essential part of the scheme, nor does it matter whether the scheme or plan was successful or that any money or property was obtained.

It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme; or that the material transmitted by wire was itself false or fraudulent; or that the alleged scheme actually succeeded in defrauding anyone; or that the use of interstate wire communications facilities was intended as the specific or exclusive means of accomplishing the alleged fraud; or that the defendant personally used the

wire communication facility.

What must be proved beyond a reasonable doubt is that the defendant, with intent to defraud, knowingly and willfully devised, intended to devise, or participated in a scheme to defraud substantially the same as the one alleged in the Indictment; and that the use of the interstate wire communications facilities was closely related to the scheme because the defendant either used, or caused to be used, wire communications facilities in interstate commerce in an attempt to execute or carry out the scheme.

Each separate use of the interstate wire communications facilities in furtherance of a scheme to defraud constitutes a separate offense.

(2A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 47.07 (5th ed. 2000) (modified); Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 51.2 (2003). *See* Fifth Circuit Pattern Jury Instructions, Criminal Cases, Instruction No. 2.60 (2001); Ninth Circuit Pattern Jury Instructions – Criminal, Instruction No. 8.102, 8.103 (2003); Tenth Circuit Pattern Jury Instructions for Criminal Cases, Instruction No. 2.57 (2006); *Neder v. United States*, 527 U.S. 1, 25 (1999); *Schmuck v. United States*, 489 U.S. 705, 711 (1989); *United States v. Gibbs*, 132 Fed. Appx. 502, 503 (4th Cir. 2005) (unpublished); *United States v. ReBrook*, 58 F.3d 961, 966 (4th Cir. 1995);*United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001) (each use of wire constitutes separate violation). *See also United States v. Harvey*, 3:06-CR-00023-NKM, Dkt. Entry 62 at 21 (W.D. Va.).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 31**

**"Scheme to Defraud or Deprive" and "Deprive
Another of the Intangible Right to Honest Services" -- Defined**

Public officials inherently owe a duty to the public to act in the public's best interest.  If, instead, the official accepts something of value with an intent to be influenced -- such as when the official accepts a payment with the expectation that the official will be influenced in the performance of particular activities related to the official's position -- the official has defrauded the public of the official's honest services even though no tangible loss to the public has been shown because the public official deprived the public of its right to honest and faithful government.

In addition, when an official acting with the intent to defraud, fails to disclose a personal interest in a matter over which he or she has decision-making power, the public is deprived of its right to honest services because it is deprived of its right either to disinterested decision making itself or full disclosure as to the official's motivation behind an official act.  It is not enough for the government to prove that the defendant failed to disclose such a conflict of interest. Rather, the government must prove that the defendant acted with the intent to defraud.  The government proves intent to defraud if it proves that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension.  A public official's duty to disclose material information need not be expressly imposed by statute or code because a public official inherently owes a fiduciary duty to the public to make governmental decisions in the public's best interest.

The focus of honest services fraud is on the fraudulent and deceptive conduct of the public official who abuses a position of trust, and the government is not required to link any particular payment to a specific act on the part of the public official.

79

It is not necessary for the government to prove that the scheme actually succeeded. Also, the offense of "honest services" fraud is not concerned with the wisdom or results of the public official's decisions, but rather with the manner in which the public official makes his decisions. Thus, the decision-making process may be corrupted and the public is deprived of honest services even though the public official comes to the right decision for the wrong reason.

(Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 50.2 (2003); *see United States v. Mandel*, 591 F.2d 1347, 1362 (4th Cir. 1979); *United States v. Lopez-Luis,* 102 F.3d 1164, 1169 n.13 (11th Cir. 1997) ("That the result of the bribed commissioner's vote actually benefits the electorate would not change the fraudulent nature of her conduct. Sections 1341 and 1346 do not address the wisdom or results of a legislative decision; rather, they concern the manner in which officials make their decisions."); *United States v. Blamer*, 114 F.3d 758, 766 (8th Cir.), *cert. denied*, 522 U.S. 938 (1997) (irrelevant that legislation never passed; honest services fraud committed when public official pursues "dishonest ends, not merely when [he] achieves a  dishonest goal"); *see also United States v. Harvey*, 3:06-CR-00023-NKM, Dkt. Entry 62 at 22 (W.D. Va.).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 32**

**"Duty to Disclose" -- Defined**

A public official has an affirmative duty to disclose material information to the public employer.  When an official fails to disclose a personal interest in a matter over which he has decision-making power, the public is deprived of its right either to disinterested decision making itself or full disclosure as to the official's motivation behind an official act.

A public official's duty to disclose material information need not be expressly imposed by statute or code because a public official inherently owes a fiduciary duty to the public to make governmental decisions in the public's best interest.   Thus, illicit personal gain by a public official, such as when an official accepts a bribe or gratuities intended to coax official action, or personally benefits from an undisclosed conflict of interest, is prohibited by the law because it deprives the public of its right to the honest services of the public official.

(*United States v. Mandel*, 591 F.2d 1347, 1363 (4th Cir. 1979), *overruled on other grounds*, *United States v. Mandel*, 602 F.2d 653 (4th Cir. 1979) (en banc); *United States v. Woodward*, 149 F.3d 46, 62 (1st Cir. 1998), *cert. denied*, 525 U.S. 1138 (1999) (citing *United States v. Sawyer*, 85 F.3d 713, 724 (1st Cir. 1996)); *see United States v. Kincaid-Chauncey*, 2009 U.S. App. LEXIS 3591 (9th Cir. 2009).)

**GOVERNMENT'S PROPOSED JURY INSTRUTION NO. 33**

**"Conflict of Interest" -- Defined**

A conflict of interest is "any personal interest or profit a public official expects to derive or has derived from any transaction in which he participates in the course of his public employment."

It is sufficient that the public official participated in the matter without disclosing his conflict of interest, and with the intent to defraud. The government is not required to prove that the public official's influence or vote was decisive on the issue.

A conflict of interest may exist at any time a public official acts in his capacity as a public official, which may include not only voting on official matters, but also influencing or lobbying other public officials regarding official matters.

(*United States v. Mandel*, 591 F.2d 1347, 1363 (4th Cir. 1979), *overruled on other grounds*, *United States v. Mandel*, 602 F.2d 653 (4th Cir. 1979) (en banc)); Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 51.2 (2003); *United States v. Kincaid-Chauncey*, 2009 U.S. App. LEXIS 3591 (9th Cir. 2009); *United States v. Lopez-Luis*, 102 F.2d 1164, 1169 (11th Cir. 1997) (bribery of single official in multi-member decision-making body where public official took steps to ensure that majority of commissioners voted with her); *Shushan v. United States*, 117 F.2d 110, 115 (5th Cir. 1941) (in case involving bribery of two commissioners who attempted to influence other commissioners, court held that "the fact that the official who is bribed is only one of several and could not award the contract by himself does not change the character of the [fraudulent] scheme"); *United States v. Waymer*, 55 F.3d 564, 572 (11th Cir. 1995) (honest services conviction upheld where public official had undisclosed financial interest in city contractor, even though defendant "did nothing to help [the contractor] procure or retain the school board contracts and virtually nothing to help [it] perform on the contracts").)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 34

### "Scheme" -- Defined

The word "scheme" includes any plan or course of action intended to deceive or cheat someone.

(Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 51.2 (2003).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 35

### "Materiality" -- Defined

A statement, representation, or omission is "material" if it has a natural tendency to influence or is capable of influencing a decision or action of the person or governmental agency to whom it is addressed.  There is no requirement that the statement, representation, or omission actually influence or affect the decision making process of the person or governmental agency to whom it is addressed.

(*See* 1A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 16.11 (6th ed. 2008) (modified); *United States v. Norris*, 749 F.2d 1116, 1122 (4th Cir. 1984), *cert. denied*, 471 U.S. 1065 (1985); s*ee also United States ex rel. Berge v. Board of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1460 (4th Cir. 1997) (citing *Norris* definition of materiality with approval).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 36

### "Intent to Defraud" -- Defined

To act with intent to defraud means to act knowingly and with the specific intent to deceive or to cheat, ordinarily for the purpose of causing some deprivation or loss to another of money, property, or the right to an employee's honest services.

The intent of a person or the knowledge that a person possesses at any given time is not ordinarily proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or omitted or act done or omitted by that person, together with all other acts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.  It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

(1A O'Malley, Grenig, & Lee, *Federal Jury Practice and Instructions*, Sections 16.07, 17.07 (5th ed. 2000) (modified); *see also* Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 51.2 (2003); *United States v. Harvey*, 3:06-CR-00023-NKM, Dkt. Entry 62 at 23 (W.D. Va.).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 37**

**Dual Intent -- Defined**

A public official does not commit honest services fraud if his intent was limited to the cultivation of a business or political friendship. If instead, or in addition, there is an intent on the part of the public official to be improperly influenced in his official duties, then you may find a violation of the law prohibiting honest services fraud. If there is both the intent to cultivate a business or political relationship *and* the intent to be improperly influenced in official duties, then in that case as well you may find a violation of the law prohibiting honest services fraud.

In other words, you may find the defendant guilty of honest services fraud if you find, beyond a reasonable doubt, that he had dual intent, that is, that he intended both a lawful and an unlawful purpose to some degree.

(*United States v. Woodward*, 149 F.3d 46, 71 (1st Cir. 1998), *cert. denied*, 525 U.S. 1138 (1999).)

86

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 38**

**Use of Interstate Wire Communication**

The phrase "transmits by means of wire communication in interstate or foreign commerce" means to send from one state to another, or to send from one country to the United States or from the United States to another country, by means of telephone or telegraph lines. This includes, among other things, the sending of facsimiles (*i.e.*, faxes), the use of credit cards, the electronic transfer of funds, and telephone calls, as long as the communication is between states or is between the United States and a foreign country.

It is not necessary for the United States to prove that the information transmitted by means of wire communication in interstate or foreign commerce was itself false or fraudulent. Nor does the United States have to prove that Defendant Jefferson actually used a wire communication in interstate or foreign commerce or that they even intended that anything be transmitted in interstate or foreign commerce by means of a wire communication.

Instead, the United States must prove beyond a reasonable doubt that a wire communication in interstate or foreign commerce was, in fact, used in some manner to further, or to advance, or to carry out that scheme to defraud or deprive, and that Defendant Jefferson knew of this or could reasonably foresee the use of the wire communication in interstate or foreign commerce would follow in the ordinary course of business or events.

Each separate use of wire communications in interstate or foreign commerce in furtherance of a scheme to defraud or deprive constitutes a separate offense.

(2A O'Malley, Grenig, & Lee, *Federal Jury Practice and Instructions*, Sections 47.08 (5th ed. 2000) (modified); *see also United States v. Harvey*, 3:06-CR-00023-NKM, Dkt. Entry 62 at 24 (W.D. Va.).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 39**

**Official Action Was Lawful Is Not a Defense**

The crime of honest services fraud addresses the manner in which officials make their decisions and not the wisdom of the official action itself.  Therefore, once the decision-making process has been corrupted, it does not matter whether a public official's actions actually benefitted the government agency or the public-at-large.  In other words, it is not a defense to honest services wire fraud that a public official would have performed the same official action absent the payments he received.

(*See United States v. Quinn*, 359 F.3d 666, 675 (4th Cir. 2004); *United States v. Antico*, 275 F.3d 245, 263 (3d Cir. 2001); *United States v. Lopez-Lukis*, 102 F.3d 1164, 1169 n.13 (11th Cir. 1997); *see also United States v. Harvey*, 3:06-CR-00023-NKM, Dkt. Entry 62 at 25 (W.D. Va.).)

# SPECIAL INSTRUCTIONS: FOREIGN CORRUPT PRACTICES ACT INSTRUCTIONS

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 40

### The Nature of the Offense Charged

Count 1 of the Indictment charges that one of the objects of the conspiracy charged in that count was to violate Title 15, United States Code, Section 78dd-2(a), the Foreign Corrupt Practices Act, which makes it a federal crime to offer to pay, pay, promise to pay, or authorize the payment of money or anything of value to a foreign official for purposes of influencing any act or decision of such foreign official in his official capacity or securing any improper advantage. Count 11 charges a violation of the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(a), as described below.

Count 1 of the Indictment charges that, within the Eastern District of Virginia and elsewhere, Defendant Jefferson came to some type of agreement or understanding, among others, to pay bribes to foreign officials, and then acted to achieve the goals of the alleged conspiracy in that Defendant Jefferson or one of his co-conspirators thereafter undertook one or more acts in furtherance of this object of the conspiracy, as described in the Overt Acts section of Count 1 of the Indictment. The nature and purpose of this object of the conspiracy was to offer, promise, authorize, or make bribe payments to foreign officials of the Federal Republic of Nigeria, including the then-Vice President of Nigeria, Atiku Abubakar, in order to advance the business interests of the Nigerian Joint Venture, its members and stockholders, and others who had agreed to pay Defendant Jefferson and his family things of value in return for his official acts.

Count 11 charges that, from in or about April 2005 through on or about August 3, 2005, in the Eastern District of Virginia and elsewhere, Defendant Jefferson did willfully use and cause to be used the mails and means and instrumentalities of interstate commerce corruptly in

90

furtherance of an offer, payment, promise to pay, or authorization of the payment of money or anything of value, namely, (1) an up-front monetary payment, including an immediate payment of $100,000.00 in cash, and (2) a later payment that would consist of a share of the Nigerian Joint Venture's profits, both to the then-Vice President of Nigeria, Atiku Abubakar, to influence Vice President Abubakar's acts and decisions in his official capacity and to secure an improper advantage, among other things.  In so doing, Count 11 alleges that, on or about July 30, 2005, Defendant Jefferson drove his car with $100,000.00 in cash from Arlington, Virginia, in the Eastern District of Virginia, to Washington, D.C.; and on the same day, Defendant Jefferson drove his car from Alexandria, Virginia, in the Eastern District of Virginia, to the Rayburn House Office Building in Washington, D.C., to prepare a package to be delivered to then-Vice President Abubakar.

(*See* Indictment, Counts One and Eleven, ¶¶ 39-139, 213-14.)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 41**

**The Statute Defining the Offense Charged**

Section 78dd-2(a) of Title 15, United States Code, which codifies the Foreign Corrupt

Practices Act, prohibits payments to any foreign official for purposes of:

> (A) (i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage, or (B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist [the person or company making the payment] in obtaining or retaining business for or with, or directing business to, any person.

(15 U.S.C. § 78dd-2(a)(1). *See United States v. Kay*, et al., 4:01cr00914, Dkt. Entry 142 at 14-15 (S.D. Tex.) (jury instructions in FCPA prosecution), *aff'd*, 513 F.3d 432, 446-52 (5th Cir. 2007), *reh'g denied*, 513 F.3d 461 (5th Cir.), *cert. denied*, ___ U.S. ___, 129 S. Ct. 42 (2008).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 42

### The Essential Elements of the Offense Charged

To sustain its burden of proof for the offense of violating the Foreign Corrupt Practices Act, as charged in the Indictment, the government must prove the following seven (7) essential elements beyond a reasonable doubt:

*First*: Defendant Jefferson is a "domestic concern," or an officer, director, employee, or agent of a "domestic concern," or a stockholder thereof acting on behalf of such domestic concern, all concepts that I will define for you shortly;

*Second*: Defendant Jefferson acted corruptly and willfully;

*Third*: Defendant Jefferson made use of the mails or any means or instrumentality of interstate commerce in furtherance of an unlawful act under this statute;

*Fourth*: Defendant Jefferson offered, paid, promised to pay, or authorized the payment of money or of anything of value;

*Fifth*: That the payment or gift was to a foreign public official or to any person, while knowing that all or a portion of the payment or gift would be offered, given, or promised, directly or indirectly, to a foreign public official;

*Sixth*: That the payment was for one of four purposes:

-- to influence any act or decision of the foreign public official in his official capacity;

-- to induce the foreign public official to do or omit to do any act in violation of that official's lawful duty;

-- to induce that foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality; or

-- to secure any improper advantage; and

*Seventh*:     That the payment was made to assist Defendant Jefferson in obtaining or retaining business for or with, or directing business to, any person.

(15 U.S.C. § 78dd-2(a). *See Kay*, 4:01cr00914, Dkt. Entry 142 at 15-16; *aff'd*, 513 F.3d 432, 446-52 (5th Cir. 2007), *reh'g denied*, 513 F.3d 461 (5th Cir.), *cert. denied*, ___ U.S. ___, 129 S. Ct. 42 (2008); *United States v. Mead*, Cr. No. 98-240-01-AET (D. N.J.) (jury instructions in FCPA prosecution).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 43**

**"Domestic Concern" -- Defined**

For purposes of the Foreign Corrupt Practices Act, a "domestic concern" is --

(a)     any individual who is a citizen, national, or resident of the United States; and

(b)     any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States or a territory, possession, or commonwealth of the United States.

In this case, the Indictment charges that Defendant Jefferson was both a domestic concern and an "agent of a domestic concern," because he is alleged to have been a citizen of the United States and a *de facto* officer, director, employee, or agent of The ANJ Group, LLC, Global Energy & Environmental Services, LLC, and Multi-Media Broad Band Services, Inc., which are each further alleged to be domestic concerns. The Indictment also charges that Jennifer Douglas Abubakar, a wife of the then-Nigerian Vice President Atiku Abubakar, was a "domestic concern," because she is alleged to have been a citizen of the United States.

(15 U.S.C. § 78dd-2(h)(1). *See Kay*, 4:01cr00914, Dkt. Entry 142 at 16-17; *Mead*, Cr. No. 98-240-01-AET.)

95

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 44

### "Interstate Commerce" -- Defined

The term "interstate commerce" means trade or conducting business or travel between one state in the United States and another state or the District of Columbia, or between any foreign country and a state or the District of Columbia, and such term includes the intrastate use of (a) a telephone or other interstate means of communication or (b) any other interstate instrumentality. If such mechanisms as trade, transportation, or communication are utilized by persons and goods passing between the various states, they are instrumentalities of interstate commerce.

I instruct you that, as a matter of law, the driving of an automobile or traveling in such automobile from the District of Columbia to the Commonwealth of Virginia, or *vice versa*, constitutes the use of a means or instrumentality of interstate commerce. So if you find that those things occurred, you may find that this element has been proved.

(15 U.S.C. § 78dd-2(h)(5). *See Kay*, 4:01cr00914, Dkt. Entry 142 at 18-19; *Mead*, Cr. No. 98-240-01-AET.)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 45**

**Promise or Authorization to Pay Sufficient -- Explained**

As I previously told you, one of the elements that the government must prove beyond a reasonable doubt for you to convict Defendant Jefferson of violating the Foreign Corrupt Practices Act ("FCPA") is that the defendant offered, paid, promised to pay, or authorized the payment of money or of anything of value.

It is not required that the payment actually be made.  A promise to pay and the authorization of payment by a domestic concern are each also prohibited by the FCPA.  Indeed, a domestic concern, or an officer, director, or shareholder of a domestic concern, that engages in bribery of a foreign official indirectly through any other person or entity is liable under the FCPA, just as if the person had engaged in the bribery directly.  Thus, if you find that Defendant Jefferson is a domestic concern, that is, a United States citizen, or that he was an officer, director, employee, agent, or shareholder of a domestic concern, and that he authorized another person to pay a bribe, that authorization alone is sufficient for you to find that this element has been proven.

To repeat, it is not necessary that the payment actually take place.  Instead, it is the *offer* or the *authorization* that completes the crime.  You may find this element satisfied if you find that the defendant promised or authorized an unlawful payment, even if you believe that the payment was not actually made.  It is sufficient simply if Defendant Jefferson believed that a bribe would be paid and that he promised or authorized the bribe to be paid.

(*See Kay*, 4:01cr00914, Dkt. Entry 142 at 19-20; *Mead*, Cr. No. 98-240-01-AET.)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 46

### Payments to Third Parties -- "Knowing" -- Defined

Provided all the other elements are present, an offer to pay, payment, promise to pay, or authorization of payment is unlawful under the Foreign Corrupt Practices Act if it is made to "any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official." For the purposes of this section, a person's state of mind is "knowing" with respect to conduct, a circumstance, or a result if --

    i.        such person is aware that the recipient of the payment or gift is engaging in such conduct, that is the unlawful offering, giving, promise, or payment, that such circumstance exists, or that such result is substantially certain to occur; or

    ii.       such person has a firm belief that such circumstance exists or that such result is substantially certain to occur.

A person is deemed to have such knowledge if the evidence shows that he was aware of a high probability of the existence of such circumstance, unless he actually believes that such circumstance does not exist.

(15 U.S.C. § 78dd-2(h)(3)(A). *See Kay*, 4:01cr00914, Dkt. Entry 142 at 20-21; *Mead*, Cr. No. 98-240-01-AET.)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 47**

**Willful Blindness – Foreign Corrupt Practices Act**

The element of knowledge may be satisfied by inferences you may draw if you find that Defendant Jefferson deliberately closed his eyes to what otherwise would have been obvious to him.  When knowledge of the existence of a particular fact is an element of the offense, such knowledge may be established if a person is aware of a high probability of its existence and then fails to take action to determine whether it is true or not.

If the evidence shows you that Defendant Jefferson actually believed the transaction was legal, he cannot be convicted.  Nor can he be convicted of being stupid or negligent or mistaken; more is required than that.  But a defendant's knowledge of a fact may be inferred from *willful blindness* to the knowledge or information indicating that there was a high probability that there was something forbidden or illegal about the contemplated transaction and payment.  It is the jury's function to determine whether or not Defendant Jefferson deliberately closed his eyes to the inferences and the conclusions to be drawn from the evidence here.

(*Mead*, Cr. No. 98-240-01-AET; *see also* Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Special Instruction No. 8.)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 48**

**"Foreign Official" and "Instrumentality" -- Defined**

The term "foreign official" means any officer or employee of a foreign government or any department, agency, or instrumentality thereof, or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality.  In this case, the Indictment charges that the then-Vice President of Nigeria, Atiku Abubakar, was a foreign official.

An "instrumentality" of a foreign government includes government-owned or government-controlled companies, such as certain commercial carriers (*e.g.*, airlines, railroads), utilities (*e.g.*, electricity, gas), and telecommunications companies (*e.g.*, Internet, telephone, television).  The Indictment in this case alleges that Nigerian Telecommunications, Limited, also known as "NITEL," was a Nigerian government-controlled company.

(15 U.S.C. § 78dd-2(h)(2)(A).  *See Kay*, 4:01cr00914, Dkt. Entry 142 at 22; *Mead*, Cr. No. 98-240-01-AET.)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 49

### "Obtaining or Retaining Business" -- Defined

The Foreign Corrupt Practices Act prohibits offers, payments, promises to pay, or authorization of payments made by a domestic concern in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person or company.  It is therefore not necessary for the government to prove that the domestic concern itself obtained or retained any business whatsoever as a result of an unlawful offer, payment, promise, or gift.

Moreover, the Act's prohibition of corrupt payments to assist in obtaining or retaining business is not limited to the obtaining or renewal of contracts or other business, but also includes a prohibition against corrupt payments related to the execution or performance of contracts or the carrying out of existing business, such as a payment to a foreign official for the purpose of obtaining more favorable tax treatment.

(15 U.S.C. § 78dd-2(a)(1).  *See Mead*, Cr. No. 98-240-01-AET.)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 50

### Solicitation of Bribe Not a Defense -- Explained

It does not matter who suggested that a corrupt offer, payment, promise or gift be made. The Act prohibits any payment or gift intended to influence the recipient, regardless of who first suggested it. It is not a defense that the payment was demanded on the part of a government official as a price for gaining entry into a market or to obtain a contract or other benefit. That the offer to pay, payment, promise to pay, or authorization of payment may have been first suggested by the recipient is not deemed an excuse for a domestic concern's decision to make a corrupt payment, nor does it alter the corrupt purpose with which the offer to pay, payment, promise to pay, or authorization of payment was made.

(*See Kay*, 4:01cr00914, Dkt. Entry 142 at 23; *Mead*, Cr. No. 98-240-01-AET.)

# SPECIAL INSTRUCTIONS: MONEY LAUNDERING INSTRUCTIONS

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 51**

**The Nature of the Offense Charged**

Counts 12 through 14 of the Indictment charge that on the dates mentioned below, Defendant Jefferson knowingly participated in the transfer of the proceeds of bribe money he had received in violation of Title 18, United States Code, Section 201(b)(2)(A), from the Eastern District of Virginia to the Eastern District of Louisiana, and there and then did knowingly engage or cause another to engage in monetary transactions in criminally derived property that was of a value greater than $10,000.00 and was derived from bribe money, and that affected interstate or foreign commerce: (1) on June 24, 2005, the transfer of Check No. 1121 for $25,015 written from ANJ's account at Dryades Savings Bank payable to the Jefferson Committee, which was deposited on the same day into the Jefferson Committee's account at Liberty Bank and Trust [Count 12]; (2) on June 27, 2005, a wire transfer for $25,000 from ANJ's account at Dryades Savings Bank to iGate's account at Bank of America [Count 13]; and (3) on July 26, 2005, the transfer of Check No. 1122 for $25,000 written from ANJ's account at Dryades Savings Bank payable to Andrea Jefferson, which was deposited on July 26, 2005 in the Dryades Savings Bank account held in the name of Defendant Jefferson and Andrea Jefferson [Count 14].

(*See* Indictment, Counts Twelve to Fourteen, ¶¶ 215-216.)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 52**

**The Statute Defining the Offense Charged**

Title 18, United States Code, Section 1957 is a part of the federal money laundering statute.   This statute reads, in pertinent part:

> (a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be [guilty of an offense].
>
>            \*    \*    \*
>
> (c) In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity.
>
> (d) The circumstances referred to in subsection (a) are --
>
> > (1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States; or
> > (2) that the offense under this section takes place outside the United States and such special jurisdiction, but the defendant is a United States person (as defined in section 3077 of this title, but excluding the class described in paragraph (2)(D) of such section).

Pursuant to Title 18, United States Code, Section 1956(c)(6)(B)(iv), the term "specified unlawful activity" includes, among other things, bribery of a public official.

(18 U.S.C. §§ 1957, 1956(c)(6)(B)(iv).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 53**

**The Essential Elements of the Offense Charged**

In order to sustain its burden of proof for the crime of money laundering, the government must prove the following five (5) essential elements beyond a reasonable doubt:

*First*:    That the Defendant knowingly engaged or attempted to engage in a monetary transaction;

*Second*:    That the Defendant knew the transaction involved criminally derived property;

*Third*:    That the property had a value of greater than $10,000;

*Fourth*:    That the property was, in fact, derived from bribery; and

*Fifth*:    That the transaction occurred in the United States.

Although the government must prove that at least $10,000 of the property at issue was criminally derived property, the government does not have to prove that all of the property at issue was criminally derived.

(Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 70.6 (2003) (modified); 18 U.S.C. § 1957; *see* Sixth Circuit Pattern Criminal Jury Instructions, Instruction No. 11.06 (2005); Seventh Circuit Pattern Criminal Jury Instructions, Instruction No. 1957[1] (1999); *see also United States v. Najjar*, 300 F.3d 466, 481 (4th Cir. 2002).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 54

### "Monetary Transaction," "Financial Institution," and "Criminally Derived Property" -- Defined

The term "monetary transaction" means the deposit, withdrawal, transfer or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means, among other things, an insured bank, a commercial bank or trust company, a credit union, and a thrift institution.

The term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense. The government must prove only that the Defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The government does not have to prove that the Defendant knew the precise nature of that criminal offense, or that the Defendant knew that the property involved in the transaction represented the proceeds of bribery.

(Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 70.6 (2003) (modified to identify relevant financial institutions per 31 U.S.C. § 5312); 18 U.S.C. § 1957(f)(1); *see also* Sixth Circuit Pattern Criminal Jury Instructions, Instruction No. 11.06.)

# SPECIAL INSTRUCTION: AIDING AND ABETTING

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 55**

**Aiding and Abetting Explained**

In addition to bribery, honest services wire fraud, violating the Foreign Corrupt Practices Act, and money laundering, Defendant Jefferson is charged with aiding and abetting others in the commission of these crimes. Aiding and abetting liability reflects the principle that a person may violate the law even though he or she does not personally do each and every act constituting the offense if that person "aided and abetted" the commission of the offense.

Section 2(a) of Title 18 of the United States Code provides:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Before a defendant may be held responsible for aiding and abetting others in the commission of a crime, it is necessary that the government prove beyond a reasonable doubt that the defendant knowingly and deliberately associated himself in some way with the crime charged and participated in it with the intent to commit the crime.

In order to be found guilty of aiding and abetting the commission of the crimes charged in Counts 3 through 15 of the Indictment, the government must prove beyond a reasonable doubt that the defendant:

*First*:    Knew that the crime charged was to be committed or was being committed,

*Second*:    Knowingly did some act for the purpose of aiding the commission of that crime, and

*Third*:    Acted with the intention of causing the crime charged to be committed.

Before the defendant may be found guilty as an aider or an abettor to the crime, the government must also prove, beyond a reasonable doubt, that someone committed each of the essential elements of the offense charged.

Merely being present at the scene of the crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that the defendant aided and abetted the commission of that crime.

The government must prove that the defendant knowingly and intentionally associated himself with the crime in some way as a participant -- someone who wanted the crime to be committed -- not as a mere spectator.

(1A O'Malley, Grenig, and Lee; *Federal Jury Practice and Instructions*, Section 18.01 (5th ed. 2000); *United States v. Irwin*, 149 F.3d 565 (7th Cir. 1998); *United States v. Washington*, 12 F.3d 1128 (D.C. Cir. 1994); *United States v. Horton*, 921 F.2d 540 (4th Cir. 1990).)

110

# SPECIAL INSTRUCTIONS: OBSTRUCTION OF JUSTICE INSTRUCTIONS

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 56**

**The Nature of the Offense Charged**

Count 15 charges that on or about August 3, 2005, in New Orleans, Louisiana, the Defendant Jefferson knowingly and corruptly attempted to conceal from law enforcement agents, during a court-approved search of Defendant Jefferson's New Orleans, Louisiana residence, an August 3, 2005 facsimile addressed to Defendant Jefferson with the intent to impair the document's availability for use in official proceedings, namely, an investigation being conducted by the Federal Bureau of Investigation in the Eastern District of Virginia and elsewhere and the present criminal prosecution through this Indictment and court proceeding.

(Indictment, Count Fifteen, ¶¶ 217-218.)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 57

### The Statute Defining the Offense Charged

Title 18, United States Code, Section 1512(c)(1) is part of a statute that makes it illegal to obstruct justice.  That statute reads in pertinent part:

(c) Whoever corruptly --

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding . . . shall be [guilty of an offense].

\* \* \*

(f) For the purposes of this section --

(1) an official proceeding need not be pending or about to be instituted at the time of the offense; and
(2) the testimony, or record, document, or other object need not be admissible in evidence or free of a claim of privilege.

(g) In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance --

(1) that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate, . . . a Federal grand jury, or a Federal Government agency . . . .

(h) There is extraterritorial Federal jurisdiction over an offense under this section.

(i) A prosecution under this section . . . may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

(18 U.S.C. § 1512(c)-(i).)

113

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 58**

**The Essential Elements of the Offense Charged**

In some cases it is a crime for anyone to attempt the commission of an offense even though the attempt fails and the intended offense is not actually carried out or fully committed. So, in this instance Defendant Jefferson is charged with attempting to obstruct justice through the concealment of a document to make that document unavailable for use in an official proceeding. The specific facts the government must prove beyond a reasonable doubt to establish the offense of obstruction of justice are: (1) that Defendant Jefferson knowingly and corruptly attempted to conceal a record or document; and (2) that Defendant Jefferson intended to make the document unavailable for use in an official proceeding.

Defendant Jefferson can be found guilty of an attempt to commit that offense only if both of the following facts are proved beyond a reasonable doubt:

*First*:     Defendant Jefferson intended to commit the crime of obstruction of justice; and

*Second*:     Thereafter, Defendant Jefferson did an act constituting a substantial step towards the commission of that crime.

In establishing the offense of obstruction of justice, the government need not prove that an official proceeding was pending or was about to be instituted. Moreover, the government does not have to prove that the record or document was admissible in evidence or free from a claim of privilege. The government also does not need to prove that Defendant Jefferson knew that the official proceeding was, or would be, before a judge or court, grand jury, or government agency was or would be before a judge or court of the United States, a Federal grand jury, or a Federal Government agency.

114

Because prosecutions under this section have extraterritorial jurisdiction, the conduct that is the subject of this charge need not have occurred in the Eastern District of Virginia. Instead, a prosecution under this section may be brought either in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

A "substantial step" means some important action leading to the commission of a crime as distinguished from some inconsequential or unimportant act. It must be something beyond mere preparation; it must be an act which, unless frustrated by some condition or event, would have resulted, in the ordinary and likely course of things, in the commission of the crime being attempted.

(18 U.S.C. § 1512(c)-(i); Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Special Instruction No. 11 (2003); *see also* 2 O'Malley, Grenig, and Lee; *Federal Jury Practice and Instructions*, Sections 21.03, 21.04 (5th ed. 2000).)

115

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 59**

**"Official Proceeding" -- Defined**

As the term is used in these instructions, the term "official proceeding" means a

proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy

judge, a federal grand jury, or a federal government agency.

(18 U.S.C. § 1512(g).  2A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions Criminal*, Section 49.05 (5th ed. 2000) (modified).)

# SPECIAL INSTRUCTIONS: RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT INSTRUCTIONS

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 60**

**The Nature of the Offense Charged**

Count 16 of the Indictment charges that, from in or about August 2000 through in or about August 2005, within the Eastern District of Virginia and elsewhere, Defendant Jefferson did knowingly and unlawfully conduct and participate, directly and indirectly, in the conduct of the affairs of an enterprise (The Office of Congressman William J. Jefferson) through a pattern of racketeering activity consisting of racketeering acts One through Twelve, and that the enterprise engaged in, and its activities affected, interstate and foreign commerce, all in violation of 18 U.S.C. § 1962(c).  That section is commonly referred to as a "substantive" RICO offense.

(*See* Indictment, Count Sixteen, ¶¶ 219-23; 2B O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 56.01 (5th ed. 2000).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 61**

**The Statute Defining the Offense Charged**

Title 18, United States Code, Section 1962(c), provides, in pertinent part, that:

> It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity . . . .

(*See* 18 U.S.C. § 1962(c); 2B O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 56.02 (5th ed. 2000).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 62

### The Essential Elements of the Offense Charged

In order to sustain its burden of proof for the crime of participating in the affairs of an interstate enterprise through a pattern of racketeering activity as charged in Count 16 of the Indictment, the government must prove the following five (5) essential elements beyond a reasonable doubt:

*First*:    An enterprise, as described in the Indictment, existed on or about the time alleged in the Indictment;

*Second*:    The enterprise engaged in, or its activities affected, interstate or foreign commerce;

*Third*:    Defendant Jefferson was employed by or was associated with the enterprise;

*Fourth*:    Defendant Jefferson participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and

*Fifth*:    Defendant Jefferson knowingly participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the Indictment, that is, through the commission of at least two of the charged racketeering acts within ten years of each other, or through causing or aiding and abetting the commission of two such racketeering acts.

Some of the terms used in this instruction will be defined and explained for you now.

(2B O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 56.03 (5th ed. 2000); *Sedima, S.P.R.L. v. Imrex, Co., Inc.*, 473 U.S. 479, 496-97 (1985); *United States v. Smith*, 413 F.3d 1253 (10th Cir. 2005); *United States v. Pipkins*, 378 F.3d 1281, 1288 (11th Cir. 2004); *United States v. Posada-Rios*, 158 F. 3d 832, 855 (5th Cir. 1998); *United States v. Hoyle*, 122 F.3d 48, 50 (D.C. Cir. 1997); *United States v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995); *United States v. Console*, 13 F.3d 641, 652-53 (3d Cir. 1993); *United States v. Alvarez*, 860 F.2d 801, 818 (7th Cir. 1988).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 63

### An "Enterprise" -- Defined

As used in these instructions the term "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  18 U.S.C. § 1961(4).

The term "enterprise," as used in these instructions, may include a group of people associated in fact, even though this association is not recognized as a legal entity.  A group or association of people can be an "enterprise" if these individuals have joined together for the purpose of engaging in a common course of conduct.  Such an association of persons may be established by evidence showing an ongoing organization, formal or informal, and by evidence that the people making up the association functioned as a continuing unit.

Therefore, in order to establish the existence of such an enterprise, the government must prove that:  (1) there is an ongoing organization with some sort of framework for making or carrying out decisions; (2) the various members and associates of the association function as a continuing unit to achieve a common purpose; and (3) the enterprise is separate and apart from the pattern of activity in which it engages; in other words, it has a "separate existence" from the pattern of racketeering acts.

Regarding "organization," it is not necessary that the enterprise have any particular or formal structure, but it must have sufficient organization that its members functioned and operated in a coordinated manner in order to carry out the alleged common purpose or purposes of the enterprise.

"Continuing membership" exists even where the membership changes by adding or

121

losing individuals during the course of its existence.  Therefore, such an association of individuals may retain its status as an "enterprise" even though the membership of the association changes by adding or losing individuals during the course of its existence.

"Separate existence" means that the enterprise has an existence beyond that which is necessary merely to commit each of the charged racketeering acts; that is, that the organization continued to exist in the intervals between the alleged racketeering activities.  It is not necessary, however, to find that the enterprise had some function wholly unrelated to the racketeering activity.  Common sense dictates that the existence of an association-in-fact enterprise is oftentimes more readily proven by what it does than by an abstract analysis of its structure.  Moreover, you may consider proof of the racketeering acts to determine whether the evidence establishes the existence of the charged enterprise.  Thus, evidence of the function of overseeing and coordinating the commission of several different predicate racketeering acts and other activities on an ongoing basis may satisfy the "separate existence" of the enterprise requirement.

The government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated.

(2B O'Malley, Grenig, Lee, *Federal Jury Practice and Instructions*, Section 56.04 (5th ed. 2000);  *United States v. Turkette*, 452 U.S. 576, 583 (1981); *United States v. Patrick*, 248 F.3d 11, 18-19 (1st Cir. 2001);  *United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999); *United States v. Pelullo*, 964 F.2d 193, 211 (3d Cir. 1992); *United States v. Riccobene*, 709 F.2d 214, 221-24 (3d Cir.1983);  *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir. 1991); *United States v. Perholtz*, 842 F.2d 343, 362-64 (D.C. Cir. 1988);  *United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 64**

**"Engaged in, or the Activities of Which Affect, Interstate Commerce" -- Defined**

As I stated previously, the government must prove beyond a reasonable doubt that the RICO enterprise engaged in, or its activities affected, interstate or foreign commerce. Interstate commerce means trade or conducting business or travel between one state and another state or the District of Columbia; and foreign commerce means such trade, business or travel between the United States and another country. Therefore, interstate and foreign commerce may include the movement of money, goods, services, or persons from one state to another state or the District of Columbia or between the United States and another country. This may include, among other matters, the purchase or sale of goods or supplies from outside the United States or the state in which the enterprise was located, the use of interstate or international mail or wire facilities, or the causing of any of those things.

An enterprise is generally "engaged in commerce" when it is itself directly engaged in the production, distribution or acquisition of goods or services in interstate commerce. If you find that the evidence is sufficient to prove that the enterprise was "engaged in" interstate commerce or foreign commerce, the required nexus to interstate or foreign commerce is established, and therefore the government is not required to prove the alternative that the activities of the enterprise affected interstate or foreign commerce.

Regarding that alternative method of satisfying this element, to establish the requisite effect on interstate or foreign commerce, the government is not required to prove a significant or substantial effect on interstate or foreign commerce. Rather, a minimal effect on interstate or foreign commerce is sufficient.

It is not necessary for the government to prove that the individual racketeering acts themselves affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have that effect. On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the individual racketeering acts.

Moreover, it is not necessary for the government to prove that the defendant knew that the enterprise would affect interstate or foreign commerce, that the defendant intended to affect interstate or foreign commerce, or that each defendant engaged in, or his activities affected, interstate or foreign commerce.

The government is not required to prove all the circumstances outlined above. To satisfy this element, the government need only prove beyond a reasonable doubt either that the activities of the enterprise considered in their entirety had some minimal effect on interstate or foreign commerce, or that the enterprise was "engaged in" interstate or foreign commerce.

(2B O'Malley, Grenig, Lee, *Federal Jury Practice and Instructions*, Section 56.05 (5th ed. 2000); *United States v. Robertson*, 514 U.S. 669, 671-72 (1995); *United States v. Gardiner*, 463 F.3d 445, 458 (6th Cir. 2006); *United States v. Johnson*, 440 F.3d 832, 841-42 (6th Cir. 2006); *United States v. Smith*, 413 F.3d 1253, 1274 (10th Cir. 2005); *United States v. Delgado*, 401 F.3d 290, 297 (5th Cir. 2005); *United States v. Fernandez*, 388 F.3d 1199, 1248-49 (9th Cir. 2004); *United States v. Pipkins*, 378 F.3d 1281, 1294-95 (11th Cir. 2004); *United States v. Shryock*, 342 F.3d 948, 985 (9th Cir. 2003); *United States v. Chance*, 306 F.3d 356, 373-374 (6th Cir. 2002); *United States v. Marino*, 277 F.3d 11, 34-35 (1st Cir. 2002); *United States v. Riddle*, 249 F.3d 529, 537 (6th Cir. 2001); *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001); *United States v. Frega*, 179 F.3d 793, 800-01 (9th Cir. 1999); *United States v. Miller*, 116 F.3d 641, 673-74 (2d Cir. 1997); *United States v. Beasley*, 72 F.3d 1518, 1526 (11th Cir. 1996); *United States v. Farmer*, 924 F.2d 647, 651 (7th Cir. 1991); *United States v. Norton*, 867 F.2d 1354, 1359 (11th Cir. 1989) (collecting cases); *United States v. Doherty*, 867 F.2d 47, 68 (1st Cir. 1989); *United States v. Muskovsky*, 863 F.2d 1319, 1325 (7th Cir. 1988); *United States v. Qaoud*, 777 F.2d 1105, 1116-17 (6th Cir. 1985); *United States v. Conn*, 769 F.2d 420, 423-24 (7th Cir. 1985); *United States v. Bagnariol*, 665 F.2d 877, 892-93 (9th Cir. 1981); *United States v. Long*, 651 F.2d 239, 241-42 (4th Cir. 1981); *United States v. Stratton*, 649 F.2d 1066, 1075 (5th Cir. 1981); *United States v. Rone*, 598 F.2d 564, 573 (9th Cir. 1979).)

124

## GOVERNMENT PROPOSED JURY INSTRUCTION NO. 65

### Defendant was Employed By or Associated With the Enterprise

The government must also prove beyond a reasonable doubt that the defendant was "employed by" or "associated with" the enterprise about which I have already instructed you. The government need not prove both; either one is sufficient to establish this element. The term "employed by" should be given its common, plain meaning. Thus, a person is "employed by" an enterprise when, for example, he is on the payroll of the enterprise and performs services for the enterprise, holds a position in the enterprise, or has an ownership interest in the enterprise.

"Associated with" also should be given its plain meaning. As stated in Webster's Third New International Dictionary (1971 ed.), "associate" means "to join, often in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally . . . to join or connect with one another." Therefore, a person is "associated with" an enterprise when, for example, he joins with other members of the enterprise and he knowingly aids or furthers the activities of the enterprise, or he conducts business with or through the enterprise.

It is not required that the defendant have been "employed by" or "associated with" the enterprise for the entire time the enterprise existed. The government also is not required to prove that the defendant had a formal position in the enterprise, or participated in all the activities of the enterprise, or had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members of the enterprise. Rather, it is sufficient that the government prove beyond a reasonable doubt that at some time during the existence of the enterprise as alleged in the Indictment, the defendant was "employed by" or "associated with" the enterprise within the meaning of those terms as I have just explained and that he knew of the

125

general nature of the enterprise, and that the enterprise extended beyond his own role in the enterprise.

(*United States v. Marino*, 277 F.3d 11, 33 (1st Cir. 2002); *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000); *United States v. Tocco*, 200 F.3d 401, 424-25 (6th Cir. 2000); *United States v. Gabriele*, 63 F.3d 61, 68 (1st Cir. 1995); *United States v. Console*, 13 F.3d 641, 653 (3d Cir. 1993); *United States v. Mokol*, 957 F.2d 1410, 1416-17 (7th Cir. 1992); *United States v. Eufrasio*, 935 F.2d 553, 577 n.29 (3d Cir. 1991); *United States v. Rastelli*, 870 F.2d 822, 827-28 (2d Cir. 1989) (collecting cases); *United States v. Yonan*, 800 F.2d 164, 167 (7th Cir. 1986); *United States v. Tille*, 729 F.2d 615, 620 (9th Cir. 1984); *United States v. Bright*, 630 F.2d 804, 829-30 (5th Cir. 1980);  *United States v. Forsythe*, 560 F.2d 1127, 1136 nn.14-15 (3d Cir. 1977).)

## GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 66

### Conduct or Participate in the Conduct of the Affairs of the Enterprise

The government must prove beyond a reasonable doubt that the defendant conducted or

participated, directly or indirectly, in the conduct of the affairs of the enterprise.  Such proof may

include evidence that the defendant intentionally performed acts, functions or duties which are

necessary to, or helpful in, the operation of the enterprise.  Thus, the government must prove that

the defendant participated in the operation or management of the enterprise itself or that he had

some part in directing the enterprise's affairs.  However, the government need not prove that the

defendant exercised significant control over or within the enterprise, or that he had a formal

position in the enterprise, or that he had primary responsibility for the enterprise's affairs.

Rather, "[a]n enterprise is 'operated' not just by upper management but also by lower-rung

participants in the enterprise who are under the direction of upper management" or carry out

upper management's orders.  Therefore, you may find guilty "all who participate in the conduct

of [the] enterprise, whether they are generals or foot soldiers."  An enterprise also might be

operated or managed by one "who exerts control over [the enterprise]."

(2B O'Malley. Grenig, Lee, *Federal Jury Practice and Instructions*, Section 56.08 (5th ed. 2000)
(modified); *Reves v. Ernest & Young*, 507 U.S. 170, 177-86 (1993); *Williams v. Mohawk Indus.,
Inc.*, 465 F.3d 1277, 1285 (11th Cir. 2006); *United States v. Urban*, 404 F.3d 754, 769-70 (3d
Cir. 2005); *United States v. Delgado*, 401 F.3d 290, 297-98 (5th Cir. 2005); *First Capital Asset
Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175-78 (2d Cir. 2004); *United States v. Cianci*, 378
F.3d 71, 95-96 (1st Cir. 2004); *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003); *United
States v. Shryock*, 342 F.3d 948, 985-86 (9th Cir. 2003); *United States v. Warneke*, 310 F.3d 542,
548 (7th Cir. 2002); *United States v. Swan*, 250 F.3d 495, 498-99 (7th Cir. 2001); *Slaney v. The
Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 598 (7th Cir. 2001); *DeFalco v. Bernas*, 244 F.3d
286, 309-10 (2d Cir. 2001); *BancOklahoma Mortgage Corp. v. Capital Tile Co., Inc.*, 194 F.3d
1089, 1100-02 (10th Cir. 1999); *United States v. Diaz*, 176 F.3d 52, 92-93 (2d Cir. 1999); *United
States v. Owens*, 167 F.3d 739, 753-54 (1st Cir. 1999); *United States v. Parise*, 159 F.3d 790,
796-97 (3d Cir. 1998); *United States v. Hurley*, 63 F.3d 1, 11 (1st Cir. 1995); *United States v.
Wong*, 40 F.3d 1347, 1373 (2d Cir. 1994); *United States v. Viola*, 35 F.3d 37, 40-41 (2d Cir.

1994); *United States v. Oreto*, 37 F.3d 739, 750 (1st Cir. 1994); *United States v. Weiner*, 3 F.3d 17, 24 (1st Cir. 1993); *Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538-39 (3d Cir. 1993).)

---

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 67**

**Pattern of Racketeering Activity**

The government must prove beyond a reasonable doubt that the defendant engaged in a pattern of racketeering activity.

As I have already stated, the Indictment alleges that the defendant and his alleged co-conspirators committed twelve Racketeering Acts including bribery, deprivation of honest services through wire fraud, and money laundering.  To establish a "pattern of racketeering activity," as alleged in Count 16 of the Indictment, the government must prove three (3) essential elements beyond a reasonable doubt:

|  |  |
|---|---|
| ***First***: | The defendant intentionally committed, or caused, or aided and abetted the commission of, two or more of the racketeering acts alleged in the Indictment.[1]  These two or more racketeering acts must have been committed within ten years of each other.  Your verdict must be unanimous as to which specific racketeering acts you find that the defendant committed, caused or aided and abetted.  Shortly, I will instruct you on the elements regarding each of the charged racketeering acts. |
| ***Second***: | The racketeering acts have a "nexus" to the enterprise and the racketeering acts are "related."   A racketeering act has a "nexus" to the enterprise if it has a meaningful connection to the enterprise.  To be "related," the racketeering acts must have the same or similar purposes, results, participants, victim, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated events.  Two racketeering acts may be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts |

---

[1] RICO does not require any *mens rea* or *scienter* element beyond what the predicate offenses require.  *See, e.g.*, *United States v. Baker*, 63 F.3d 1478, 1492-93 (9th Cir. 1995); *United States v. Blinder*, 10 F.3d 1468, 1477 (9th Cir. 1993); *United States v. Biasucci*, 786 F.2d 504, 512-13 (2d Cir. 1986); *United States v. Pepe*, 747 F.2d 632, 675-76 (11th Cir. 1984); *United States v. Scotto*, 641 F.2d 47, 55-56 (2d Cir. 1980); *United States v. Boylan*, 620 F.2d 359, 361-62 (2d Cir. 1980).

are related to the same enterprise.  For example, for both "nexus" and "relatedness" purposes, the requisite relationship between the RICO enterprise and a predicate racketeering act may be established by evidence that the defendant was enabled to commit the racketeering act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that the defendant's position in the enterprise facilitated his commission of the racketeering act, or by evidence that the racketeering act benefitted the enterprise, or by evidence that the racketeering act was authorized by the enterprise or by evidence the racketeering act promoted or furthered the purposes of the enterprise.

**Third:**  The racketeering acts themselves either extended over a substantial period of time *or* they pose a threat of continued criminal activity. The government need not prove such a threat of continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways.  For example, the threat of continued unlawful activity may be established when the evidence shows that the racketeering acts are part of a long-term association that exists for criminal purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against the defendant; rather, in addition to considering such acts you also may consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.

(2B O'Malley. Grenig, Lee, *Federal Jury Practice and Instructions*, Section 56.07 (5th ed. 2000) (modified); *H.J., Inc. v. Nw. Bell Tele. Co.*, 492 U.S. 229, 242-43 (1989); *United States v. Hively*, 437 F.3d 752, 761-62 (8th Cir. 2006); *United States v. Smith*, 413 F.3d 1253, 1269-72 (10th Cir. 2005); *United States v. Delgado*, 401 F.3d 290, 298 (5th Cir. 2005); *United States v. Cianci*, 378 F.3d 71, 88-89 (1st Cir. 2004); *United States v. Irizarry*, 341 F.3d 273, 302 (3d Cir. 2003); *United States v. Connolly*, 341 F.3d 16, 30 (1st Cir. 2003); *United States v. Marino*, 277 F.3d 11, 26-28 (1st Cir. 2002); *United States v. Torres*, 191 F.3d 799, 807-08 (7th Cir. 1999); *United States v. Diaz*, 176 F.3d 52, 93-94 (2d Cir. 1999); *United States v. Richardson*, 167 F.3d 621, 625-26 (D.C. Cir. 1999); *United States v. Posada-Rios*, 158 F.3d 832, 856-57 (5th Cir. 1998);

*United States v. Polanco*, 145 F.3d 536, 541 (2d Cir. 1998);  *United States v. Wong*, 40 F.3d 1347, 1374-75 (2d Cir. 1994); *United States v. Grubb*, 11 F.3d 426, 440 (4th Cir. 1993); *United States v. Eufrasio*, 935 F.2d 553, 564-66 (3d Cir. 1991); *United States v. Gonzalez*, 921 F.2d 1530, 1540 (11th Cir. 1991); *United States v. Tillem*, 906 F.2d 814, 824 (2d Cir. 1990); *United States v. Angiulo*, 897 F.2d 1169, 1179-80 (1st Cir. 1990); *United States v. Salerno*, 868 F.2d 524, 533 (2d Cir. 1989); *United States v. Indelicato*, 865 F.2d 1370, 1382-84 (2d Cir. 1989) (en banc);  *United States v. Pieper*, 854 F.2d 1020, 1026-27 (7th Cir. 1988); *United States v. Horak*, 833 F.2d 1235, 1239-40 (7th Cir. 1987); *United States v. Robilotto*, 828 F.2d 940, 947-48 (2d Cir. 1987); *United States v. Qaoud*, 777 F.2d 1105, 1115 (6th Cir. 1985); *United States v. Carter*, 721 F.2d 1514, 1526-27 (11th Cir. 1984); *United States v. Provenzano*, 688 F.2d 194, 200 (3d Cir. 1982); *United States v. Phillips*, 664 F.2d 971, 1011-12 (5th Cir. 1981); *United States v. Weisman*, 624 F.2d 1118, 1121-23 (2d Cir. 1980); *United States v. Elliott*, 571 F.2d 880, 899 (5th Cir. 1978).)

**GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 68**

**Racketeering Activity**

Count 16 of the Indictment alleges 12 acts of racketeering.  These alleged acts committed,

caused, or aided and abetted by Defendant Jefferson are listed below:

| Act No. | Racketeering Act |
|---------|------------------|
| 1 | **Telecommunications Deals in Nigeria, Ghana, and Elsewhere: Defendant Jefferson's Solicitation of Bribes from iGate (Vernon Jackson)**<br>- 1(a) Bribery of a Public Official<br>- 1(b) Deprivation of Honest Services by Wire Fraud |
| 2 | **Telecommunications Deal in Nigeria:  Defendant Jefferson's Solicitation of Bribes from Netlink Digital Television, a/k/a "NDTV," (Dumebi Kachikwu)**<br>- 2(a) Bribery of a Public Official<br>- 2(b) Deprivation of Honest Services by Wire Fraud |
| 3 | **Telecommunications Deals in Nigeria, Ghana, and Elsewhere: Defendant Jefferson's Solicitation of Bribes from W-2, W2-IBBS, and IBBS (Lori Mody**)<br>- 3(a) Bribery of a Public Official<br>- 3(b) Deprivation of Honest Services by Wire Fraud |
| 4 | **Oil Concessions in Equatorial Guinea: Defendant Jefferson's Solicitation of Bribes from Noah Samara**<br>- 4(a) Bribery of a Public Official<br>- 4(b) Deprivation of Honest Services by Wire Fraud |
| 5 | **Satellite Transmission Contracts in Botswana, Equatorial Guinea, and the Republic of Congo: Defendant Jefferson's Solicitation of Bribes from WorldSpace, Inc. (Noah Samara)**<br>- 5(a) Bribery of a Public Official<br>- 5(b) Deprivation of Honest Services by Wire Fraud |
| 6 | **Offshore Oil Rights in Sao Tome and Principe: Defendant Jefferson's Solicitation of Bribes from Procura Financial (Noreen Wilson)**<br>- 6(a) Bribery of a Public Official<br>- 6(b) Deprivation of Honest Services by Wire Fraud |

| 7 | **Promotion and Sale of Waste Recycling Systems in Nigeria and Equatorial Guinea: Defendant Jefferson's Solicitation of Bribes from Life Energy Technology Holdings, a/k/a "LETH," (Noreen Wilson)**<br>- 7(a) Bribery of a Public Official<br>- 7(b) Deprivation of Honest Services by Wire Fraud |
| 8 | **Development of Sugar Plant in Jigawa State, Nigeria: Defendant Jefferson's Solicitation of Bribes from Arkel International and Arkel Sugar (George Knost and others)**<br>- 8(a) Bribery of a Public Official<br>- 8(b) Deprivation of Honest Services by Wire Fraud |
| 9 | **Development of Various Facilities in Kaduna State, Nigeria: Defendant Jefferson's Solicitation of Bribes from Arkel International and Arkel Sugar (George Knost and others)**<br>- 9(a) Bribery of a Public Official<br>- 9(b) Deprivation of Honest Services by Mail Fraud |
| 10 | **Marginal Oil Fields in Akwa Ibom State, Nigeria: Defendant Jefferson's Solicitation of Bribes from Arkel Oil & Gas (George Knost and others)**<br>- 10(a) Bribery of a Public Official<br>- 10(b) Deprivation of Honest Services by Wire Fraud |
| 11 | **Marginal Oil Fields, a Fertilizer Plant, and Other Projects in Nigeria: Defendant Jefferson's Solicitation of Bribes from TDC Overseas Limited, LLC, a/k/a "TDC-OL," (John Melton, James Creaghan, and others)**<br>- 11(a) Bribery of a Public Official<br>- 11(b) Deprivation of Honest Services by Wire Fraud |
| 12a - 12i | **Monetary Transactions in Amounts over $10,000.00 from Bribe Schemes: Defendant Jefferson and Family Members Further Distributed the Money** |

In determining whether or not Defendant Jefferson has committed any of the alleged acts of racketeering, you are to be guided by the following instructions:

The racketeering acts of bribery of a public official and the deprivation of honest services by wire fraud, as alleged in Racketeering Acts 1 through 11 of Count 16 of the Indictment, contain several essential elements. In order to find that Defendant Jefferson committed these

racketeering acts, the government must prove certain essential elements beyond a reasonable doubt. For each act of racketeering involving the bribery of a public official (or the solicitations of bribes by a public official) and the deprivation of honest services by wire fraud, the elements of the offense and any appropriate definitions or explanations have been previously given in these instructions. Similarly, the racketeering act of money laundering, as alleged in Racketeering Act 12 of Count 16 of the Indictment, also contains several essential elements that must be proved by the government beyond a reasonable doubt. You have also been instructed previously concerning the essential elements of money laundering. I will not instruct you again on the elements of the offenses for which you have already received instruction.

The only exception is the racketeering act concerning the deprivation of honest services by mail fraud, in violation of Title 18, United States Code, Sections 1341, 1346, as alleged in Racketeering Act 9(b). In order to find that Defendant Jefferson committed this racketeering act, the government must prove the following three (3) essential elements beyond a reasonable doubt:

*First*:  Defendant Jefferson knowingly devised or knowingly participated in a scheme to defraud or deprive the citizens of the United States or the United States House of Representatives of their intangible right to honest services;

*Second*:  Defendant Jefferson did so willfully and with an intent to defraud; and

*Third*:  In advancing, or furthering, or carrying out this scheme to defraud, Defendant Jefferson used the mails or caused the mails to be used.

The use of the mails is an essential element of the offense of mail fraud as charged in Count 16, Racketeering Act 9(b), of the Indictment, whether by mailing or causing to be mailed with the United States Postal Service or a private or commercial interstate carrier by depositing or causing to be deposited with such carrier. A "private or commercial interstate carrier"

includes any business engaged in the transmission, transportation, or delivery of messages or other articles in interstate commerce, that is, from any place in one state to any place in another state. If a message or other article is deposited with such a carrier it need not be proved that the message or article thereafter moved in interstate commerce from one state to another.

The government is not required to prove that the defendant actually mailed anything or that the defendant even intended that the mails would be used to further, or to advance, or to carry out the scheme or plan to defraud or deprive another of the intangible right to honest services. The government must prove beyond a reasonable doubt, however, that the mails were, in fact, used in some manner to further, or to advance, or to carry out the defraud or deprive another of the intangible right to honest services. The government must also prove that the use of the mails would follow in the ordinary course of business or events or that the use of the mails by someone was reasonably foreseeable. It is not necessary for the government to prove that the item itself mailed was false or fraudulent or contained any false or fraudulent statement, representation, or promise, or contained any request for money or thing of value. The government must prove beyond a reasonable doubt, however, that the use of the mails furthered, or advanced, or carried out, in some way, the scheme or plan to defraud or deprive another of the intangible right to honest services.

The terms "scheme to defraud or deprive," "deprive another of the intangible right to honest services," "duty to disclose," "conflict of interest," "scheme," "materiality," "intent to defraud," and "dual intent" have already been defined for you as part of the instructions concerning the deprivation of honest services by wire fraud. I will not read them to you again.

(2B O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 56.06 (5th ed. 2000) (modified); 2A O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions*, Section 47.03, 47.04 (5th ed. 2000) (mail fraud instructions); Eleventh Circuit Pattern Jury Instructions for Criminal Cases, Offense Instruction No. 50.1 (2003) (mail fraud instruction).)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA     )
          )
     v.           )     Criminal No. 1:07CR209
          )
WILLIAM J. JEFFERSON,     )     Hon. T.S. Ellis, III
          )
     Defendant.     )

## **<u>VERDICT</u>**

1.     As to Count 1 of the Indictment, we, the jury, find Defendant William J. Jefferson:

       —————         —————
       Guilty          Not Guilty

2.     As to Count 2 of the Indictment, we, the jury, find Defendant William J. Jefferson:

       —————         —————
       Guilty          Not Guilty

3.     As to Count 3 of the Indictment, we, the jury, find Defendant William J. Jefferson:

       —————         —————
       Guilty          Not Guilty

4.     As to Count 4 of the Indictment, we, the jury, find Defendant William J. Jefferson:

       —————         —————
       Guilty          Not Guilty

5.      As to Count 5 of the Indictment, we, the jury, find Defendant William J. Jefferson:

        _____                    _____
        Guilty                       Not Guilty

6.      As to Count 6 of the Indictment, we, the jury, find Defendant William J. Jefferson:

        _____                    _____
        Guilty                       Not Guilty

7.      As to Count 7 of the Indictment, we, the jury, find Defendant William J. Jefferson:

        _____                    _____
        Guilty                       Not Guilty

8.      As to Count 8 of the Indictment, we, the jury, find Defendant William J. Jefferson:

        _____                    _____
        Guilty                       Not Guilty

9.      As to Count 9 of the Indictment, we, the jury, find Defendant William J. Jefferson:

        _____                    _____
        Guilty                       Not Guilty

10.     As to Count 10 of the Indictment, we, the jury, find Defendant William J. Jefferson:

        _____                    _____
        Guilty                       Not Guilty

11.     As to Count 11 of the Indictment, we, the jury, find Defendant William J. Jefferson:

        _____                    _____
        Guilty                       Not Guilty

12.     As to Count 12 of the Indictment, we, the jury, find Defendant William J. Jefferson:

         _____           _____

         Guilty               Not Guilty

13.     As to Count 13 of the Indictment, we, the jury, find Defendant William J. Jefferson:

         _____           _____

         Guilty               Not Guilty

14.     As to Count 14 of the Indictment, we, the jury, find Defendant William J. Jefferson:

         _____           _____

         Guilty               Not Guilty

15.     As to Count 15 of the Indictment, we, the jury, find Defendant William J. Jefferson:

         _____           _____

         Guilty               Not Guilty

16.     As to Count 16 of the Indictment, we, the jury, find Defendant William J. Jefferson:

         _____           _____

         Guilty               Not Guilty

In reaching our verdict with respect to Count 16, we find that the defendant committed, caused, or aided and abetted the commission of at least two of the following Racketeering Acts:

- Racketeering Act 1     Proven _____     Not Proven _____
- Racketeering Act 2     Proven _____     Not Proven _____
- Racketeering Act 3     Proven _____     Not Proven _____
- Racketeering Act 4     Proven _____     Not Proven _____
- Racketeering Act 5     Proven _____     Not Proven _____
- Racketeering Act 6     Proven _____     Not Proven _____

- Racketeering Act 7      Proven _____      Not Proven _____

- Racketeering Act 8      Proven _____      Not Proven _____

- Racketeering Act 9      Proven _____      Not Proven _____

- Racketeering Act 10     Proven _____      Not Proven _____

- Racketeering Act 11     Proven _____      Not Proven _____

- Racketeering Act 12     Proven _____      Not Proven _____

**SO SAY WE ALL.**


Signed and dated at the United States Courthouse, Alexandria, Virginia, this _____ day of July, 2009.


_____          _____

Foreperson's Signature                                  Foreperson's Printed Name