IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
       v.                          )    CRIMINAL ACTION
                                   )
WILLIAM J. JEFFERSON,              )    1:07 CR 209
                                   )
                    Defendant.     )
_____  )


REPORTER'S TRANSCRIPT

JURY TRIAL

Thursday, July 30, 2009


---


BEFORE:        THE HONORABLE T.S. ELLIS, III
               Presiding

APPEARANCES:   OFFICE OF THE UNITED STATES ATTORNEY
               BY:  MARK LYTLE, AUSA
                    REBECCA BELLOWS, AUSA
                    CHARLES DUROSS, SAUSA

                 For the Government

               TROUT CACHERIS, PLLC
               BY:  ROBERT P. TROUT, ESQ.
                    AMY B. JACKSON, ESQ.
                    GLORIA B. SOLOMON, ESQ.

                 For the Defendant

                        ---

               MICHAEL A. RODRIQUEZ, RPR/CM/RMR
                   Official Court Reporter
               USDC, Eastern District of Virginia
                    Alexandria, Virginia


MICHAEL A. RODRIQUEZ, RPR/CM/RMR

INDEX


PRELIMINARY MATTERS                                          3

JURY INSTRUCTIONS BY THE COURT                              15


        (Court recessed)


                                ---


MICHAEL A. RODRIQUEZ, RPR/CM/RMR

<u>PROCEEDINGS</u>

(Court called to order at 9:36 a.m.)

THE COURT:  All right.  Good morning.  The record will reflect that this is United States against Jefferson, 07- 209, and that counsel and the defendant are present and prepared to proceed.

PRELIMINARY MATTERS

THE COURT:  One matter before we proceed -- we are missing a juror anyway -- I will not, of course, recite the overt acts.  I will simply tell them they will have the overt acts.

The parties have reviewed these.  I won't review each of the monetary transactions.  They will have those.  Or the communicate for Counts 5 through 10.

Now, the racketeering acts, I don't plan to read, either.  But I am a little puzzled by what has been submitted, because this will go back to the jury room. These are allegations, which I will make clear to them.  But it only covers 1B, 2B, 3B, not a.

What's the rationale for that?

ATTORNEY LYTLE:  There were two racketeering acts.  Each racketeering act was broken into a and B.  A was the bribery count, and B was the wire or mailing.  So the a did not a wire or mailing associated with it, because it was

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

just bribery.

Your Honor, we could change that, and add --

THE COURT:  They need to find a pattern of racketeering activity.

ATTORNEY LYTLE:  That's right.

THE COURT:  I don't want to read to them all the allegations relating to racketeering activity.  But they need to know what the government has alleged to be racketeering activity, so they can decide whether it's proven or not proven, as the jury verdict form indicates.

This doesn't describe it -- maybe the parties thought I was going to read the racketeering acts to them, but I don't plan to do that.

ATTORNEY LYTLE:  I thought the Court was -- in the jury instructions were another table that listed each one, A and B, and the Court was interested in just the wires and mailings for --

THE COURT:  Just a moment.  I think I could have easily given that impression.

But let me ask you, Mr. Trout -- let's see. What page is that on?

ATTORNEY TROUT:  Your Honor, could I ask Ms. Solomon to address this?

THE COURT:  Yes, of course.

ATTORNEY LYTLE:  If the Court please, we could

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

easily adjust that fairly quickly, your Honor.

THE COURT:  All right.  Let me be more explicit.  Where is -- the chart is where now?

The chart is on --

ATTORNEY LYTLE:  I think it's on Court's 125.

THE COURT:  It's on 125.

Now, I had not planned to read this, but rather to refer -- to tell them that the alleged racketeering acts will be submitted to them; will give each of these a court exhibit number, and they will have those.  They will have to follow the Court's instructions.

Ms. Solomon, what's your view?

(Pause.)

THE COURT:  I take it you are not eager to have me read all of them, either.

ATTORNEY SOLOMON:  No, your Honor, definitely not.  Certainly not -- not with the way it's drafted currently.  We had objected to the argumentative nature of the heading.

THE COURT:  Well, that's the way the indictment is framed.

Now, I will tell them that these are allegations from the indictment.  But that's what they have.  That's what they have to prove.

What would you suggest, Ms. Solomon, about --

in other words, when I get to page 125 I will state that the indictment alleges 12 acts of racketeering, and that these will be set forth in a Court Exhibit Number -- whatever it is -- 8 or 9 or 4 or 5, whatever it is; and that rather than my reading to them these allegations that come from the indictment, they are in these documents in this court exhibit, and that's the description of the government's allegations of racketeering acts; and then not read them, but go on to give them instructions with respect to that.

ATTORNEY SOLOMON:  Yes, your Honor.  We would maintain our objection to the chart going the way it is, but with that objection, this -- what you propose you are going to read to them --

THE COURT:  What chart going the way it is?

ATTORNEY SOLOMON:  The chart of the racketeering acts, which recites in everything, "defendant's solicitation of bribes from," "defendant's solicitation of bribes from."

THE COURT:  All right.

Mr. Lytle, we can simply say those are the allegations.

ATTORNEY LYTLE:  Yeah.  I think that's what we have been over before, your Honor.

Your Honor, I could suggest, I can take this chart and block and move the wires from right under 1B, 2 B,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

and so forth.  That would make it easier.

THE COURT:  Well, you've got Count 16.  It's not complete, because it only has B, right?

ATTORNEY LYTLE:  Correct, your Honor.

THE COURT:  But what you can do is to say, where it says "The government alleges that for the purpose of executing a scheme and artifice to defraud" -- you see at the beginning of each?

ATTORNEY LYTLE:  Are you referring -- is the Court referring to 125 or --

THE COURT:  The one that's here.  I don't want to read -- the one on 125 isn't adequate.

ATTORNEY LYTLE:  All right.

THE COURT:  So, in other words, do this --

ATTORNEY LYTLE:  I just don't have a copy of the submission with me right now.

THE COURT:  All right.  I'm going to show it to both of you.  And at the beginning of each one, where it says "for the purpose," it will say, "The government alleges that for the purpose..."

ATTORNEY LYTLE:  All right.

THE COURT:  And then you will have to stick in a, too, and put, "The government alleges..."

ATTORNEY SOLOMON:  Your Honor, my understanding of that submission was that the government was providing a

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

list of the wires it understood it had to prove for each of the honest services portion of each racketeering act.  I did not understand that to be a summary of each of the racketeering acts.

ATTORNEY LYTLE:  I think that's what our understanding was, too.  But --

THE COURT:  All right.

ATTORNEY LYTLE:  -- your Honor, if that's the only thing going back to the jury, then that ought to have each act in it, so that it shows what they choose from.

THE COURT:  Well, it at least ought to say that one of the racketeering acts on each of these is the alleged bribery.

Shouldn't it, Ms. Solomon?

They have to consider whether the government has proved the racketeering act.  And for each one, part of it was bribery, the other part was honest services wire fraud.

ATTORNEY SOLOMON:  Yes.  And it was my impression that the Court was going to take care of that through the instruction, rather than through --

THE COURT:  All right.  Tell me how you thought I was going to do that, and I will be glad -- perhaps I can do it that way.  It just means reading pages 125 and 126, which seems to me to be tedious, but --

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

ATTORNEY LYTLE:  I'm just concerned that if the one document that's going back to the jury just only has the B's, and that's all they have, they might not recognize that there is A's.  I think that makes sense, to have it complete.  And it wouldn't that but a second to add those in.

THE COURT:  Well, all it has to say would be "the alleged bribery of a public official."

ATTORNEY LYTLE:  Yes, your Honor.

THE COURT:  For a on each one.

ATTORNEY LYTLE:  Yes.

THE COURT:  The other one would say, "The government alleges that," and then I would tell the jury that they essentially come from the indictment, which is neither proof nor evidence, and the government, in accordance with the instructions, has to prove those.

That would save me from reading essentially that material, pointing out that they are allegations as I read them.

Any problem with that, Ms. Solomon?

They have to have the racketeering acts if they are required to prove them.  In most cases, the indictment goes back to the jury.  I typically try not to do that, and I granted your motion not to do that in this case.

But they have to have some of this material,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

because that's -- it would be unfair to the government if they had all these overt acts and these racketeering acts and they are required to have them proven, and then the jury gets back there and says, "Wait a minute.  What are all these overt act and racketeering acts?"

ATTORNEY SOLOMON:  Your Honor, may I have one minute to confer.

THE COURT:  Yes.

(Counsel conferring.)

THE COURT:  Do we have everybody, Mr. Wood?

THE MARSHAL:  Yes, sir.

THE COURT:  All right.

ATTORNEY SOLOMON:  Your Honor, our position would be that the simplest thing would be for the jury to get a list essentially like the chart that's on page 125, without extensive descriptions of the bribery or the wire fraud schemes alleged.

With the Court's instructions to the jury that these are the allegations of the government and are not proof, we would be satisfied with that, maintaining the objection that we have to the language of the chart.

THE COURT:  Mr. Lytle, how about the list that's on 125 and 126?

ATTORNEY LYTLE:  Yes, we would agree to that, but we would ask that we could add the wire that's alleged.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

I could add that underneath 1B or 2B of each one, and I think that would --

THE COURT:  All right.  Do it that way.

ATTORNEY LYTLE:  -- that would formalize it, so that the jury understands what they have to decide.

THE COURT:  Right.

ATTORNEY LYTLE:  One thing that I would ask --

THE COURT:  Wait a minute.  Let's deal with this.

ATTORNEY LYTLE:  All right.

THE COURT:  All right.  I think -- I am either going to read all of these or we will find so shorthand way of doing it.  And right now, I think what's on page 125 and 126, if they add what the specific wire is for each of these, that the government is otherwise -- is otherwise okay with it, except at the top, Mr. Lytle, instead of "racketeering act" put "alleged racketeering acts," "alleged racketeering acts."  And I think that would be sufficient.

Any objection to that, Ms. Solomon?

ATTORNEY SOLOMON:  Your Honor, we would request also the word "alleged" before the word "solicitation" in each title.

THE COURT:  No, I don't -- it's all alleged. And I am going to tell them it comes from the indictment, which isn't proof or evidence of guilt of any kind

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

whatsoever.

Anything else?

ATTORNEY LYTLE:  Just to clarify, your Honor, the way it's alleged in the indictment for each racketeering act, it says, "for each racketeering act" -- one, for instance, says, "any one of which alone constitutes the commission of racketeering act 1."

So they could find a or B to satisfy one racketeering act.  So I would ask that we reflect that in the specific verdict form, just adjust that, so it says they could find a or B to satisfy one racketeering act.

THE COURT:  And I can say that in the instructions, as well.

ATTORNEY LYTLE:  That's, that's, that's the only follow -up we would have.

THE COURT:  Mr. Trout?

ATTORNEY TROUT:  Your Honor, the only other thing we would ask with respect to the list of overt acts, I think the Court is aware of our concerns about that going back to the jury, but we would ask that the Court instruct them --

THE COURT:  You are already fortunate the whole indictment isn't going back.

ATTORNEY TROUT:  I understand that, your Honor.

THE COURT:  The law permits that.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

ATTORNEY TROUT:  I understand that, your Honor.

What I am asking for is that the jury be instructed that they should only consult the list of overt acts if they first find unanimously that there was a conspiracy, and that they are not to consult the list as a guide to the evidence --

THE COURT:  No, they can consider all the evidence.

ATTORNEY TROUT:  Well, I understand they can consider all the evidence, but --

THE COURT:  And I don't tell them in what step they have to do it, what steps.  I don't tell them to do this or that first.  I gave the parties an opportunity to have a lengthy juror questionnaire, which would give them an analytical path.

No, I won't do that.  Your objection is noted.  It's overruled.

ATTORNEY TROUT:  Would the Court instruct them that the list of overt act is not evidence?

THE COURT:  Oh, yes.  I told you that ten minutes ago.

ATTORNEY TROUT:  Thank you your Honor.

THE COURT:  All right.

Bring the jury in.

Oh, and the -- just a moment, Mr. Wood.  Just a

moment.

Do I have all the redacted stipulations?

ATTORNEY LYTLE:  Yes, your Honor.  There is [sic] five of them, I believe; one, and the supplemental one, five and six and nine.  Those are the redacted ones.  The other ones required no redaction.

THE COURT:  All right.  So there are a total of nine stipulations?

ATTORNEY LYTLE:  Yes, your Honor.

THE COURT:  All right.

And you all have seen those, Ms. Solomon?

ATTORNEY SOLOMON:  Yes, your Honor.

THE COURT:  All right.

Bring the jury in.

(Jury impaneled at 9:52 a.m.)

THE COURT:  Good morning, ladies and gentlemen.

All right.  We will begin, as always, with the taking of the roll.

(Roll call, all jurors present.)

THE COURT:  Good morning again.

Let me once again confirm that you were all successful in avoiding discussion or investigation of this matter in any way.

(Jurors indicating.)

THE COURT:  Good.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Now, this morning I will give you instructions and then permit you to retire and deliberate on your verdict. And you may deliberate as long or as little as you like.

Now, these instructions will not be provided to you in written form because they are simply not in a written form that is decipherable. But they will be tape recorded. And I may make an effort later to do this -- they are quite lengthy, and I think they will take me about an hour and a half, perhaps a bit longer. And they will be tape recorded, and you will have the tape recordings with you, together with all the exhibits and the jury verdict form.

JURY INSTRUCTIONS BY THE COURT

THE COURT: Members of the jury, now that you have heard the evidence and the arguments of counsel, it becomes my duty to give you instructions as to the law applicable to this case.

And all of the instructions of law given to you by the Court -- those given to you at the beginning of the trial, those given to you during the trial, and these final instructions -- must guide and govern your deliberations.

It is your duty to follow the law as stated by the Court and to apply the law to the facts as you find them from the evidence in the case.

Now, as I told you yesterday, counsel have

quite properly referred to some of the governing rules of law in their arguments.  However, if any difference appears to you between the law as stated by counsel and that stated by the Court in these instructions, of course you are to be governed by the Court's instructions to you on the law.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case, or what that opinion is.  It's not my function to determine the facts; it's your function to do that.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  Neither are you to be concerned with the wisdom of any rule of law stated in these instructions.

Regardless -- Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what you think the law ought to be, it would be a violation of your sworn duty if you ignore the law as I give it to you and applies some other law.

It would also be a violation of your sworn duty as jurors of the facts to base a verdict upon anything but the evidence in the case.

Now, you have been chosen as jurors for this trial in order to evaluate all of the evidence received and

to decide each of the factual questions presented by the allegations brought by the government in the indictment and the plea of not guilty by the defendant.

In deciding the issues presented to you for decision in this trial, you must not be persuaded by bias, prejudice or sympathy for or against either of the parties in this case, or by any public opinion. You should not be influenced by any persons race, color, religion, national ancestry or sex.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors, and to arrive at a verdict by applying the same rules of law given to you by the Court.

Now, as I told you at the outset, the law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins a trial with a clean slate, with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of the charge against the accused.

So the presumption of innocence alone is sufficient to acquit a defendant -- the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

of all the evidence in the case.

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. And the jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.

The burden is always on the prosecution to prove guilt beyond a reasonable doubt. And this burden never shifts to a defendant, for the law never imposes on a defendant a criminal case the burden or duty of calling any witnesses or producing any evidence.

So if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that the defendant is guilty of a charge, they must acquit as to that charge.

There is nothing particularly different in the way that a juror should consider the evidence in a trial from that in which any reasonable and careful person would treat any very important question that must be resolved by examining facts, opinions and evidence. You are expected to use your good sense in considering and evaluating the evidence in the case, for only those purposes for which it has been received, and to give such evidence a reasonable and fairly construction in the light of your common knowledge of the natural tendencies and inclinations of

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

human beings.

If a defendant be proved guilty beyond a reasonable doubt, say so; if not proved guilty beyond a reasonable doubt, say so.

Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything other than evidence received in the case and the instructions by the Court.  And remember, as I just told you a minute ago, that the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence, because the burden of proving guilt beyond a reasonable doubt is always with the government.

Now the evidence in this case consists of the sworn testimony of the witnesses regardless of who may have called them, all exhibits received in evidence regardless of who may have produced them, all facts which may have been agreed or stipulated to, and all facts and events which may have been judicially noticed.

And you will recall that I did take judicial notice of some facts relating to geography, as to whether they were within the Eastern District of Virginia.  And you will have all of the exhibits in the jury room, and you will have -- all of the admitted exhibits, and you will have all of the stipulations in the jury room.

Now, when the attorneys on both sides stipulate

or agree as to the existence of a fact, you may accept the stipulation as evidence and regard the fact as proved.  You are not required to do so, however, since you are the sole judges of the facts of the case.

And the Court took judicial notice of certain facts and events.  And when the Court declares that it has taken judicial notice of some fact or event, you may accept the Court's declaration as evidence and regard as proved the fact or event which ha been judicially noticed.  You are not required to do so, however, again, since you are the sole judges of the facts.

Now, any proposed testimony or proposed exhibit to which an objection was sustained by the Court, and any testimony or exhibit ordered stricken by the Court, must be entirely disregarded.

And anything you may have seen or heard outside the courtroom, of course, is not proper evidence and must be entirely disregarded.

Questions, objections, statements or arguments of counsel are not evidence in the case.

And you are to base your verdict only on the evidence received in the case.

Now, in your consideration of the evidence received, however, you are not limited to the bald statements of the witnesses or to the bald assertions in the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

exhibits.  In other words, you are not limited solely to what you see and hear as the witnesses testify or as the exhibits are admitted.  You are permitted to draw, from the facts that you find have been proved, such reasonable inferences as you feel are justified in the light of your experience and common sense.

There are two types of evidence, as I told you at the outset, which are generally received or presented during a trial.  There is direct evidence and circumstantial evidence.

Now, direct evidence is the testimony of a person who asserts or claims to have actual acknowledge of a fact, such as an eyewitness.  Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact.

The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence, nor is a greater degree of certainty required of circumstantial evidence than of direct evidence.

You should weigh all the evidence in the case, and after weighing all the evidence, if you are not convinced of the guilt of this defendant beyond a reasonable doubt, you must find the defendant not guilty.

Now, inferences which you may draw are simply deductions or conclusions which reason and common sense lead

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

the jury to draw from the evidence in the case.

Testimony and exhibits can be admitted into evidence during a trial only if certain criteria or standards are met.  It's the sworn duty of the attorney on each side of the case to object when the other side offers testimony or an exhibit which that attorney believes is not properly admissible under the rules of law.

Only by raising an objection can a lawyer request and obtain a ruling from the Court on the admissibility of the evidence being offered by the other side.

You should not be influenced against an attorney or his or her client because an attorney has made objections.

Do not attempt, moreover, to interpret my rulings on objections as somehow indicating how I think you should decide the case.  I am simply making a ruling on a legal question.

By allowing testimony or other evidence to be introduced over the objections of an attorney, the Court does not, unless I expressly stated, indicate any opinion as to the weight or effect of such evidence.

As stated before, you as jurors are the sole judges of the credibility all of the witnesses and the weight and effect of all the evidence.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

On the other hand, where the Court has sustained an objection to a question addressed to a witness, jurors must disregard the statement entirely.  You may draw no inference from the wording of the question or speculate as to what the witness would have said had he or she been permitted to answer the question.

Now, it's the duty of the Court to admonish an attorney who, out of zeal for his or her cause, does something which I feel is not in keeping with the rules of evidence or procedure.  You are to draw absolutely no inference against the side to whom an admonition of the Court may have been addressed during the trial of this case.

And as I told you during the trial, I occasionally asked questions of a witness.  Do not assume that I hold any opinion on the matters to which my questions may relate.  The Court may ask a question simply to clarify a matter, not to help one side of the case or hurt the other.

Remember at all times, you as jurors are the sole judges of the facts of the case.

In certain instances, evidence may have been admitted only for a particular purpose, and not generally for all purposes.  For the limited purpose for which this evidence has been received, you may give it such weight as you may feel it deserves.  You may not, however, use this

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

evidence for any other purpose or against any party not specifically mentioned.

Now, recordings of conversations have been received in evidence and have been played for you. Typewritten transcripts of these recorded conversation have been furnished to you. And you'll have those in the jury room, as well. These typewritten transcripts of the conversations are being given to you solely for your convenience in assisting you in following the conversation or in identifying the speakers.

The recordings themselves are evidence in the case, and the typewritten transcripts are not evidence. What you hear on the recordings is evidence. What you read on the transcript is not.

If you perceive any variation between the two, you will be guided solely by the recordings and not by the transcripts.

If you cannot, for example, determine from the recordings that particular words were spoken, or if you cannot determine from the recording who said a particular word or words, you must disregard the transcripts insofar as those words or what the speaker -- or that speaker are concerned.

Now, the rules of evidence ordinarily do not permit a witness -- or do not permit witnesses to testify as

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

to their own opinions or their own conclusions about issues in the case.

Now an exception to this rule exists as to those witnesses who are described as expert witnesses. An expert witness is someone who, by education or by experience, may have become knowledgeable in some technical, scientific or very specialized area. And if such acknowledge or experience may be of assistance to you in understanding some of the evidence or in determining a fact, an expert witness in that area may state an opinion as to the relevant and material matter in which he claims to be an expert.

You should consider the expert opinion received in evidence in this case and give it such weight as you may think it deserves. You should consider the testimony of the expert witness just as you consider the other evidence in the case.

If you should decide that the opinion of an expert is not based on sufficient education or experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you should conclude that the opinion is outweighed by other evidence, you may disregard the opinion in part or in its entirety.

And as I have said to you many times, you are the sole judges of the facts in this case.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Now, charts and summaries, some were admitted into evidence and some were not.  Charts or summaries have been prepared, either by the defendant or the government, and shown to you during the trial for purposes of explaining facts that are allegedly contained in books, records or other documents which are in evidence in the case.

Such charts or summaries are not evidence in the case, or proof of any fact, if they haven't been admitted.  Some were admitted some were not.  The ones that were not admitted, they are not evidence.

If you find that these charts, the ones that are not evidence, do not correctly reflect the facts or figures shown by the evidence in the case, the jury should disregard the charts or summaries.

In other words, such charts or summaries are used only as a matter of convenience for you, and to the extent that you find that they are not, in truth, summary of facts and figures shown by the evidence in the case, you can disregard them entirely.

Now, other charts and summaries were admitted into evidence.  And charts or summaries have been prepared, either by defendant or by the government, have been admitted into evidence, and have been shown to you during the trial for purpose of explaining facts that are already contained in books, records or other documents which are evidence in

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

the case.  You may consider the charts and summaries as you would any other evidence admitted during the trial, and give it such weight or importance, if any, as you feel it deserves.

Now, as I also mentioned to you yesterday, if any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations, and not the statements of the Court or counsel.  You are the sole judges of the evidence received in this case.

Your decision on the facts of this case should not be determined by the number of witnesses testifying for or against the party.  You should consider all the facts and circumstances in evidence to determine which of the witnesses you choose to believe or not believe.

You may find that the testimony of a smaller number of witnesses by one side is more credible than the testimony of a greater number of witnesses on the other.

And as I have told you before, the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Now you, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to testify in this case, and only you determine the importance

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

or the weight that their testimony deserves.  And after making your assessment concerning the credibility of a witness, you may decide to believe all of that witness' testimony, only a portion of it, or none of it.

In making your assessment, you should carefully scrutinize all of the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show a witness' intelligence, motive to falsify, state of mind, and appearance and manner while on the stand.

Consider the witness' ability to observe the matters as to which he or she has testified, and consider whether he or she impresses you as having an accurate memory or recollection of these matters.

Consider also any relation a witness may bear to either side of the case, the manner in which each witness might be affected by your verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies and discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to disbelieve or discredit such testimony.

Two or more persons witnessing an incident or transaction may simply see or hear it differently.  Innocent

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

misrecollection, like failure of recollection, is not an uncommon experience.

In weighing the effect of a discrepancy, however, always consider whether it pertains to a matter of importance or an insignificant detail, and consider whether the discrepancy results from innocent error or from intentional falsehood.

And after making your own judgment or assessment concerning the believability of a witness, you can then attach such importance or weight to that testimony, if any, that you feel it deserves.  You will then be in a position to decide whether the government has proven the charges beyond a reasonable doubt.

Now, the testimony of a witness may be discredited or, as we sometimes say, impeached by showing that he or she previously made statements which are different from or consistent with his or her testimony here in court.

The earlier inconsistent or contradictory statements are admissible only to discredit or impeach the credibility of the witness, and not to establish the truth of these earlier statements made somewhere other than here during this trial.

It is the province of the jury to determine the credibility, if any, to be given the testimony of a witness

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

who has made prior inconsistent or contradictory statements.

And as I mentioned to you, if a person is shown to have knowingly testified falsely concerning any important or material matter, you obviously have the right to distrust the testimony of such individual concerning other matters. You may reject all of the testimony of that witness, or give it such weight or credibility as you may think it deserves.

Now the testimony of a witness may be discredited or impeached by evidence showing that th witness has been convicted of a felony, a crime for which a person may receive a prison sentence of more than one year.  Prior conviction of a crime that is a felony is one of the circumstances which you may consider in determining the credibility of that witness.  It's the sole and exclusive right of the jury to determine the weight to be given to any prior conviction as impeachment, and the weight to be given to the testimony of anyone who has previously been convicted of a felony.

Now, the testimony of certain witnesses must be examined and weighed by the jury with greater care.  This includes, for example, the testimony of an informant, someone who provides evidence against someone else for money or another benefit from the government, or to escape punishment for his or her own misdeeds or crimes, or for other personal reasons or advantage, as well as the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

testimony of an immunized witness, someone who has been told either that his or her crimes will go unpunished in return for testimony, or that his or her testimony will not be used against him or her in return for that cooperation.

You must also examine with greater care the testimony of an alleged accomplice, someone who said he or she participated with another person in the commission of a crime, as well as the testimony of a witness who is testifying pursuant to a plea agreement under which he or she has agreed to cooperate with the government in the hope of obtaining a sentence reduction.

The testimony of these particular witnesses must be examined and weighed by the jury with greater care than the testimony of witnesses who are not so motivated or who are appearing in court without the need for such an agreement with the government.

The jury must also determine whether the particular witness' testimony has been affected by self-interest or by the agreement he or she has with the government, or by his or her own interest in the outcome of the case, or by prejudice against the defendant.

The fact that a witness has entered into a plea of guilty to an offense is not evidence of the guilt of any other person, including the defendant.

The defendant in a criminal case has an

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

absolute right under our Constitution not to testify.  The fact that the defendant did not testify must not be discussed or considered by the jury in any way when deliberating in and arriving at your verdict.  No inference of any kind may be drawn from the fact that the defendant decided to exercise his privilege under the Constitution and did not testify.

Now, statements knowingly and voluntarily made by a defendant upon being informed that a crime has been committed or upon being accused of a criminal charge may be considered by a jury.

When a defendant voluntarily offers an explanation or voluntarily makes some statement tending to show his or her innocence, and it is later shown that the defendant knew that the statement or explanation was false, the jury may consider this as a showing of consciousness of guilt on the part of the defendant, since it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.

Whether or not evidence as to a defendant's explanation or statement points to a consciousness of guilt on his or her part, and the significant if any to be attached to any such evidence, are matters exclusively within the province of the jury as the sole judges of the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

facts of this case.

In your evaluation of evidence of an exculpatory statement shown to be false, you may consider that there may be reasons fully consistent with innocence that could cause a person to give a false statement showing their innocence.  Fear of law enforcement, reluctance to become involved, and simple mistake may cause a person who has committed no crime to give such a statement or explanation.

Now, the indictment which I described to you earlier will not be in the jury room with you.  Portions of it will, as I will describe to you in a moment.  But you should always have in mind that the indictment is but a formal method used by the government to accuse a defendant of a crime.  It is not evidence of any kind against a defendant.

The defendant is presumed to be innocent of the crimes charged.  Even though the indictment has been returned against the defendant, the defendant begins with absolutely no evidence against him, and he has pled not guilty to this indictment and therefore denies that he is guilty of the charges.

The defendant is not on trial for any acts or conduct not specifically charged in the indictment.  And you are here to determine whether the government has proven the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

guilt of the defendant for the charges in the indictment beyond a reasonable doubt. You are not called upon to return a verdict as to the guilt or innocence of any other person or persons.

So if the evidence in the case convinces you beyond a reasonable doubt of the guilt of the defendant for the crimes charged in the indictment, you should so find, even though you may believe that one or more other unindicted persons are also guilty.

But if any reasonable doubt remains in your mind after an impartial consideration of all the evidence in the case, it is your duty to find this defendant not guilty.

A separate crime is charged in each of the counts of the indictment. Each charge and the evidence pertaining to it should be considered separately by the jury. The fact that you may find the defendant guilty or not guilty as to one of the offenses charged should not control your verdict as to the other offenses charged.

Now, when I describe the charges to you from the indictment, it charges that the offense alleged were committed on or about a certain date.

Although it is necessary for the government to prove beyond a reasonable doubt that the offenses were committed on a dated reasonably near the dates alleged in the indictment, it is not necessary for the government to

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

prove that the offenses were committed precisely on the date charged.

The term "knowingly," as used in these instructions to describe the alleged state of mine of the defendant, means that he was conscious and aware of his action or omission, realized what he was doing or what was happening around him, and did not act or fail to act because of ignorance, mistake or accident.

The word "willfully," as that term is defined -- or used in the indictment, rather, or in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is, with a bad purpose, either to disobey or disregard the law.

Now, the person need not be aware of the specific law or rule that his conduct may be violating, but he must act with the intent to do something the law forbids.

To act corruptly, as used in these instructions, means to act knowingly and dishonestly for a wrongful purpose.

Now, the intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly, because there is no way of directly scrutinizing or fathoming the workings of the human mind.

So in determining the issue of what a person

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

knew or what a person intended at a particular time, you may consider any statements made or acts done by that person, and all other facts and circumstances received in evidence which may aid you in your determine of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.  It's entirely up to you, however, to decide what facts to find from the evidence received during the trial.

Now, intent and motive are different concepts and should never be confused.  Motive is what prompts a person to act or fail to act.  Intent refers only to the state of mind with which the act is done or omitted.

Personal advancement, financial gain, for example, are two well-recognized motives of human conduct. These praiseworthy motives may, however, prompt one person to voluntary acts of good, while prompting another person to voluntary acts of crime.

Good motive alone is never a defense where the act done or omitted is a crime.  The motive of the defendant is, therefore, immaterial, except insofar as evidence of motive may aid in the determination of the state of mind or intent of the defendant.

There has been evidence presented in this trial

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

concerning certain ethical rules promulgated by the US House of Representatives.  You are instructed that should you find that the defendant violated these ethical rules, such a violation is not a crime; nor is it, standing alone, evidence that the defendant committed the crimes charged.

You may, however, consider evidence of ethical violations along with all the other evidence presented at trial to determine whether the United States has proven the element of intent required to prove the crimes with which the defendant has been charged.

Now, at the outset I gave you a brief description or summary of the indictment.  You will not have the indictment with you in the jury room, so I am going to remind you of that.

There are 16 counts in the indictment.  And the government charges the defendant in the indictment with the following crimes.

Count 1 is conspiracy to solicit bribes, to deprive citizens of honest services by wire fraud, and to violate the Foreign Corrupt Practices Act.  So Count 1 has those three objects.  And I'll give you further instructions in a few moments.

Count 2 is alleged conspiracy to solicit bribes and to deprive citizens of honest services, wire fraud.

Counts 3 and 4 are the substantive counts of

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

solicitation of bribes by a public official.

Counts 5 through 10 are allegations of devising a scheme to defraud citizens of honest services by wire fraud.  That's 5 through 10.

Count 11 is an allegation that the defendant violated the Foreign Corrupt Practices Act.

And Counts 12 through 14 are allegations that the defendant committed violations of money laundering.

And Count 15 is an obstruction of justice allegation.

And Count 16 is a count alleging racketeering acts.

And I'll, I'll describe these to you in greater detail.

The government's charges are based on events that took place between August 2000 and August 2005.  And the defendant has pled not guilty to all of those charges.

Now we start with Count 1.

Count 1 of the indictment charges that from in or about January 2001, through in or about August 2005, within the Eastern District of Virginia, and elsewhere, the defendant did knowingly combine, conspire, confederate and agree, together with Vernon Jackson, Brett Pfeffer and others, known and unknown to the grand jury, to commit the following three offense against the United States.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

First, bribery; that is, it is alleged that as a public official, the defendant conspired to corruptly demand, seek, receive, accept or agree to receive and accept something of value in return for being influenced in the performance of an official act or acts, in violation of Title 18 US Code, Section 201(b)(2)(A).

That's the first object of the conspiracy.

The second object of the conspiracy is honest services wire fraud; that is, it is alleged that the defendant conspired to devise a scheme and artifice to defraud and deprive United States citizens and the House of Representatives of their right to the defendant's honest services, through wire fraud, in violation of Title 18, Sections 1343 and 1346 of the US Code.

And the third object of the conspiracy charge in Count 1 is an allegation of bribery of a foreign official in violation of the Foreign Corrupt Practices Act, Title 15, US Code, Section 78(dd)(2)(A).

Count 1 of the indictment also alleges that the defendant or coconspirator performed an overt act in furtherance of the conspiracy. And I'll define "further" and "overt act" later in these instructions.

Although you will not have the entire indictment with you in the jury room, you will have the portion of the indictment that sets out the overt act

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

alleged -- overt acts alleged to have been taken in furtherance of the conspiracy in Count 1.

That will be marked as Court Exhibit 1.  And as you will see, the overt acts allege that the following persons or entities were involved in the conspiracy the government charges the defendant as being part of in Count 1:  Andrea Jefferson and ANJ, Vernon Jackson and iGate, Dumebi Kachikwu and NDTV, Brett Pfeffer and W2-IBBS, and IBBS, and Suleiman Yahyah and Rosecom, and Atiku Abubakar and Jennifer Douglas Abubakar.

Now, the conspiracy that is alleged is a conspiracy in violation of Section 3371 of Title 18, which provides, in pertinent part that, if two or more persons conspire to commit any offense against the United States, and one or more such persons do any act to effect the object of the conspiracy, then an offense against the United States has been committed.

Now, Count 1 alleges that the defendant conspired to commit three separate substantive crimes or offenses.

Specifically, Count 1 alleges a conspiracy to violate the bribery provisions under Title 18, Section 201, and to violate -- that's number one; number two, to violate the honest services provision under 18 USC, Sections 1343 and 1346; and the third object of the conspiracy is to

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

violate the Foreign Corrupt Practices Act under 15 USC, Section 78(dd)(2)(A).

The elements of each of those crimes will be discussed later in these instructions.

In this case, it is not necessary for the government to prove that the defendant conspired to commit all of the substantive crimes or offense.  Rather, with regard to Count 1, it would be sufficient for the government to prove beyond a reasonable doubt that the defendant conspired with someone to commit one of the three offense. But in that event, in order to return a verdict of guilty on Count 1, you must unanimous agree upon which of the offenses the defendant conspired for commit.

Now, in order to sustain its burden of proof for the offense of conspiracy to commit bribery, honest services wire fraud, and a Foreign Corrupt Practices Act violation as charged in Count 1, the government must prove the following three essential elements beyond a reasonable doubt:

First, that the conspiracy, agreement, or understanding to commit bribery as charged in the indictment, honest services wire fraud as alleged in the indictment, or Foreign Corrupt Practices Act violation as alleged in the indictment, was formed or reached or entered into by two or more persons.  That's the first element.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Second, that the -- that at some time during the existence of or life of the conspiracy, agreement or understanding, that the defendant knowingly and intentionally joined the conspiracy;

And third, that at sometime during the existence or life of the conspiracy, agreement or understanding, a member, a member one -- a member of the conspiracy did one of the overt acts described in Count 1 of the indictment for the purpose of advancing, furthering or helping the object or purpose of the conspiracy.

If the government fails to prove any of these essential elements beyond a reasonable doubt, then you must find the defendant not guilty of Count 1.

Now, under the law conspiracy to commit a crime is an entirely separate and distinct charge from the actual violation or substantive charge which may be the object of a conspiracy. All of the elements of bribery, honest services wire fraud, or bribery of a foreign official, need not be met in order for you to find that there was a conspiracy to commit those acts; that is, the government not required to prove that the parties to the alleged agreement were successful in achieving any of the objects of the conspiracy.

But you must find that the government has proved beyond a reasonable doubt that there was an agreement

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

or conspiracy to violate the law, that the defendant knowingly and intentionally participated in the conspiracy to violate of law, and that an overt act was taken in furtherance of the conspiracy.

Now, a criminal conspiracy is an agreement or a mutual understanding, knowingly made or knowingly entered into by at least two people, to violate the law by some joint or common plan or course of action.  A conspiracy is, in a very true sense, a partnership in crime.

A conspiracy or agreement to violate the law, like any other kind of agreement or understanding, need not be formal, written or even expressed directly in every detail.

For Count 1, the government must prove that the defendant and at least one other person, who was not a government agent, knowingly and deliberately arrived at an agreement or understanding that they, and perhaps others, would violate the Bribery Statute, the Wire Fraud Statute, or Foreign Corrupt Practices Act by means of some common plan or course of action.

It is proof of this conscious understanding and deliberate agreement by the alleged members that should be central to your consideration of the charged conspiracy.

To prove the existence of a conspiracy or an illegal agreement, the government is not required to produce

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

a written contract between the parties, or even produce evidence of an express oral agreement spelling out all the details of the understanding.

To prove that a conspiracy existed, moreover, the government is not required to show that all of the people named in the indictment as members of a conspiracy were in fact parties to the agreement, or that all the members of the alleged conspiracy were named or charged, or that all of the people whom the evidence shows were actually members of the conspiracy agreed to all of the conspiracy's means or members.

Unless the government proves beyond a reasonable doubt that a conspiracy as just explained actually existed, then you must acquit the defendant.

Now, before the jury may find that the defendant or any other person became a member of a conspiracy as charged in Count 1 of the indictment, the evidence in the case must show beyond a reasonable doubt that the defendant knew the purpose or goal of the agreement, understanding -- or understanding, and deliberately entered into the agreement, intending in some way to accomplish the goal or purpose by this common plan or joint action.

And if the evidence establishes beyond a reasonable doubt that the defendant knowingly and

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

deliberately entered into an agreement to commit the offenses charged or alleged in Count 1, the fact that the defendant did not join the agreement in its beginning, or did not know all the details of the agreement, or did not know all of his coconspirators, or did not participate in each act of the agreement, or did not play a major role in accomplishing the unlawful goal, or had only a slight connection with the conspiracy, is not important to your decision regarding membership in the conspiracy.

Merely associating with others and discussing common goals, mere similarity of conduct between or among such persons, merely being present at a place where a crime takes place or is discussed, or even knowing about criminal conduct, does not, of itself, make someone a member of the conspiracy or a conspirator.

And you are further instructed that a defendant cannot conspire with a government agent. And for purposes of this case, Lori Mody was a government agent.

Therefore, if you find that the defendant did not have an agreement to violate the law as described in Count 1 with anyone other than Ms. Mody, you must find him not guilty on Count 1.

Evidence has been received in this case that certain persons who are alleged in Count 1 of the indictment to be coconspirators of the defendant have done or said

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

things during the existence or life of the alleged conspiracy charged in Count 1 in order to further or advance its goals.

Such acts and statements of these other individuals may be considered by you in determining whether or not the government have proven the charges in Count 1 of the indictment.

Since these acts may have been performed and these statements may have been made outside the presence of the defendant, and even done or said without defendant's knowledge, these acts and statements should be examined with particular care by you before considering them against the defendant, who did do the particular act or make the particular statement.

Now, in order to sustain its burden of proof under Count 1 of the indictment, the government must prove beyond a reasonable doubt that one of the members of the alleged conspiracy or agreement knowingly performed at least one overt act, and that this overt act was performed during the existence or life of the conspiracy, and was done somehow to further the goals of the conspiracy or agreement.

Now, the term "overt act" means some type of outward, objective action performed by one of the parties to, or one of the members of, the agreement or conspiracy which evidences that agreement.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Although you must unanimously agree that the same overt act was committed, the government is not required to prove more than one of the overt acts charged. The overt act may, but for the alleged illegal agreement, appear totally innocent and legal.

Now, you will have with you in the jury room, marked as Court Exhibit 1, a list of the overt acts that are alleged in the indictment. Now, remember, that list is not evidence itself. But it tells you what the alleged overt acts are.

You need -- as I have just instructed you, the government is only required to prove one of them, but you must be unanimous as to which one you find has been proved. And if you find that none of them have been proved, you must acquit on that count.

Now, some of the people who may have been involved in these events are not on trial. This does not matter. There is no requirement that all members of a conspiracy she charged and prosecuted or tried together in one proceeding.

Nor is there any requirement that the names of the other conspirators be known. An indictment can charge a defendant with a conspiracy involving people whose names are not known, as long as the government can prove that the defendant conspired with one or more of them. Whether they

be named or not does not matter.

Now, some of the events that you have heard about happened in other places.  There is no requirement that the entire conspiracy take place here in the Eastern District of Virginia.  But for you to return a verdict -- a guilty verdict on the conspiracy charged in Count 1, the government must convince you that either the alleged agreement, or one of its overt acts in furtherance of the agreement, took place here in the Eastern District of Virginia.

But unlike all of the other elements that I have described, this is a fact that the government has to prove by a preponderance of the evidence.  This means that the government only has to convince you that it is more likely than not that part of the conspiracy took place here.  But if the government does not establish by a preponderance of the evidence that the agreement or one of the overt acts in furtherance of the agreement took place in the Eastern District of Virginia, you must find the defendant not guilty of Count 1.

Now we turn to Count 2.  Count 2 of the indictment alleges a separate and distinct conspiracy from the conspiracy alleged in Count 1.  Count 2 alleges that: From on or about August 2002 to in or about March 2005, within the Eastern District of Virginia and elsewhere, the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

defendant did knowingly combine, conspire, confederate and agree, together with others known and unknown to the grand jury, to commit the following two offenses against the United States:  First, bribery; that is, it is alleged that as a public official the defendant conspired to corruptly demand, seek, receive, accept or agree to receive and accept something of value in return for being influenced in the performance of an official act, in violation of Title 18, US Code, Section 201(b)(2)(A); and secondly, honest services wire fraud; that is, it is alleged that the defendant conspired to devise a scheme and artifice to defraud, deprive United States citizens and the House of Representatives of their right to the defendant's honest services to wire fraud, in violation of Title 18 US Code, Sections 1343 and 1346.

Count 2 of the indictment also alleges that the defendant or a coconspirator performed an overt act in furtherance of the conspiracy.  And although you will not have the indictment in the jury room with you, you will have portions of the indictment that set out the overt acts alleged to have been taken in furtherance of the conspiracy charged in Count 2.  That will be Court Exhibit 2.

As you will see, the overt acts allege that the following persons and entities were involved in a conspiracy the government charges the defendant as being a part of in

Count 2:  Mose Jefferson and BEP, George Knost, Bradley Kimbrough and Arkel, John Melton, Ramon Jarrell, and TDC-OL, and James Creaghan, Noreen Griffin, Wilson Griffin, and LETH --

Counsel, what's that single word there?

ATTORNEY LYTLE:  "Procura"?

THE COURT:  Yes.

ATTORNEY LYTLE:  That's another company.

THE COURT:  -- Procura and LETH, and Philip Jones and Global Energy and Environmental Services.

Now, in order to sustain its burden of proof for the offense of conspiracy to commit bribery and honest services wire fraud as charged in Count 2 of the indictment, the government must prove the following three essential elements beyond a reasonable doubt:

First, that the conspiracy, agreement or understanding to commit bribery as charged in the indictment or honest services wire fraud as charged in the indictment was formed or reached or entered into by two or more persons;

Second, that at sometime during the existence or life of the conspiracy, agreement or understanding, the government knowingly and intentionally joined the conspiracy; and

Three, that at sometime during the existence or

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

life of the conspiracy, agreement or understanding, a member of the conspiracy did one of the overt acts described in Count 2 of the indictment for the purpose of advancing, furthering or helping the object or purpose of the conspiracy.

If the government fails to prove any of these three essential elements beyond a reasonable doubt, then you must find the defendant not guilty of Count 2.

You must use the instructions on what constitutes the existence of an agreement, understanding or conspiracy, what is required to show membership in an agreement, what constitutes an overt act, and what must be shown to prove venue, and the other conspiracy instructions I gave you in connection with Count 1, to determine whether the government has established each of these three elements beyond a reasonable doubt for Count 2.

Now, while the government need not prove that the defendant conspired to violate both the bribery provisions under 18 USC 201(b)(2)(A) and honest services wire fraud under 18 USC Sections 1343 and '46, you must unanimously agree upon which of the offense the defendant conspired to commit in order to return a verdict of guilty on Count 2.

Now, I have already described Count 2 for you.

In order to sustain its burden of proof or the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

charge in Count 2, the government must show that the single overall conspiracy alleged in Count 2 of the indictment existed.

Proof of separate or independent conspiracies is not sufficient. In determining whether or not a single conspiracy has been shown by the evidence or -- in the case, you must decide whether common, master, or overall goals or objectives existed, which served as a focal point for the efforts and actions of any members to the agreement.

And in arriving at this decision, you may consider the length of time the alleged conspiracy existed, mutual dependence or assistance between various persons alleged to have been its members, and the complexity of the goals or shown.

A single conspiracy may involve various people at different levels and various different persons over time, and may involve numerous transactions which are conducted over some period of time and at various places.

In order to establish a single conspiracy, however, the government need not prove that an alleged coconspirator knew each of the other alleged members of the conspiracy, nor need it establish that an alleged coconspirator was aware of each of the transactions alleged in the indictment.

Even if the evidence in the case shows that the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

defendant was a member of some conspiracy, but that this conspiracy is not the single conspiracy charged in the indictment in Count 2, then you must acquit defendant of this charge.

Unless the government proves the existence of a single overall conspiracy described in Count 2 of the indictment beyond a reasonable doubt, you must acquit defendant of this charge.

However, if the government proves the existence of the single overall conspiracy as alleged in Count 2 of the indictment beyond a reasonable doubt, then you may find defendant -- you may convict defendant of this charge, if you also find that the government has proved the other elements of the offense as I have described them to you in these instructions.

Now, during the course of the trial you heard evidence of acts of the defendant with respect to ePrime Aerospace Corporation, which may be similar to those charged in the indictment, but which he did on other occasion.

You must not consider any of this evidence in deciding if Defendant Jefferson committed the acts in the indictment. However, you may consider this evidence for other, very limited, purposes.

If you find beyond a reasonable doubt from other evidence in the case that the defendant did commit

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

acts charged in the indictment, then you may consider evidence of similar acts allegedly undertaken on other occasions to determine whether Defendant Jefferson had the state of mind or intent necessary to commit the crimes charged in the indictment; whether defendant acted according to a plan or in preparation for commission of a crime; whether defendant committed the acts for which the defendant is on trial by accident or mistake.

In other words -- let me make that clearer. If you find beyond a reasonable doubt from other evidence in the case that the defendant did commit the acts charged in the indictment, and in doing that you must not consider the evidence of ePrime.

But if you find from other evidence that he did commit the acts charged in the indictment, then you may consider evidence of similar acts, ePrime, allegedly undertaken, if you find those have been proven beyond a reasonable doubt, to determine whether he had the state of mind or intent necessary to commit the crimes charged in the indictment, or whether he acted according to a plan or in preparation or commission of the crime, or whether he committed the crimes by accident or mistake.

Now, as I have told you, the conspiracy counts just discussed, Counts 1 and 2, charge that one of the objects of those conspiracies was to violate Section

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

201(b)(2)(A) of Title 18, which makes it a crime for a public official to solicit or receive anything of value in return for being influenced in the performance of an official act.

Counts 3 and 4 charged substantive violations of Counts -- I beg your pardon -- of that code section. In other words, Counts 1 and 2 charge a conspiracy to do that, and I have instructed you on that. Now Counts 3 and 4 charge substantive violations of the Bribery Statute.

Count 3 of the indictment charges that: Beginning in or about January 2001, through in or about August 2005, within the Eastern District of Virginia and elsewhere, the defendant, then a public official, corruptly demanded, sought or received things of value from Vernon Jackson and iGate for ANJ, a Jefferson family-controlled company, in return for being influenced in the performance of official acts, to advance iGate's business ventures.

Count 4 of the indictment charges that: Beginning in or about June 2004 through in or about August 2005, within the Eastern District of Virginia and elsewhere, the defendant, then a public official, corruptly demanded, sought or received things of value from Lori Mody and Lori Mody's companies, W2-IBBS and IBBS, in return for being influenced in the performance of official acts to advance Lori Mody's business ventures.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Now, Section 201 of Title 18 provides, in pertinent part, that:  Whoever, being a public official, directly are indirectly, corruptly demands, seeks, receives, accepts or agrees to receive or accept anything of value personally or for any other person or entity, in return for being influenced in the performance of any official act, shall be guilty of an offense against the United States.

So in other words to sustain its burden of proof for the crimes of demanding, seeking or receiving a bribe by a public official as charged in Counts 3 and 4, the government must prove the following three essential elements beyond a reasonable doubt:

First, that the defendant directly or indirectly demanded, sought, received or accepted, or agreed to receive or accept, anything of value, personally or for another person or entity;

Two, that defendant was at that time a public official of the United States; and

Three, that the defendant demanded, sought, received, accepted or agreed to receive or accept the item of value corruptly in return for being influenced in the performance of any official act.

If the government fails to prove any of these essential elements beyond a reasonable doubt for either Count 3 or Count 4, or both, then you must find the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

defendant not guilty of that count or counts.

Now, with respect to the first essential element, the phrase "anything of value" means any item, whether tangible or intangible, that a person -- that the person giving or offering or the person demanding or receiving considers to be worth something.

The phrase "anything of value" includes a sum of money, shares of shock, percentage of revenue, commissions, favorable treatment, a job, or special consideration.

Now, with regard to the second essential element, the term "public official" includes a member of Congress.

With respect to the third element, the term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy which may at any time be pending or which may by law be brought before any public official in such official's official capacity or such official's place of trust or profit.

In order to violate to Bribery Statute, the defendant must have corruptly sought, received or agreed to receive a thing of value in return for being influenced in his own performance of an official act; that is, a decision or action on any question, matter, cause, suit, proceeding or controversy that may at any time be pending or which may

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

by law be brought before the defendant in his official capacity.

An act may be official even if it was not taken pursuant to responsibilities explicitly assigned by law. Rather, official acts include those activities that have been clearly established by settled practice as part a public official's position.

Moreover, an act on a particular question or matter may still be official even if the public official did not have authority to make a final decision or take binding action on the issue.

It is not a defense that the offer or promise or demand or receipt of anything of value concerned an official act that was actually lawful, desirable, or even beneficial to the public.

The third essential element also requires that the government prove beyond a reasonable doubt that the defendant corruptly sought, received, or agreed to receive an item of value in return for being influenced in the performance of an official act.

And as I had have previously instructed you, to act corruptly means to act knowingly and dishonestly for a wrongful purpose.

The offense -- the offense of bribery requires the intent to be influenced in the performance of an

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

official act.  In other words, for bribery there must be a quid pro quo, a specific intent to receive something of value in exchange for being influenced in the performance of an official act.

Yet each individual payment need not be correlated with a specific official act.  Rather, it is sufficient to show that the defendant intended for each payment to induce him to adopt a specific course of official action.  In other words, the intended exchange in bribery can be this for these, or these for these; not just this for that.

Further, it is necessary for the government to prove that the defendant intended to perform a set number of official -- I'm sorry.

Further, it is not necessary for the government to prove that the defendant intended to perform a set number of official acts in return for payments.  The quid pro quo requirement is satisfied if you find the evidence shows a course of conduct of things of value flowing to the defendant in exchange for a pattern of official actions favorable to the donor.

What must be shown is that the defendant sought, received or agreed to receive payments with the intention of providing a specific type of official action in return.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

For example, the quid pro quo requirement is satisfied if you find that the government has established beyond a reasonable doubt that the defendant agreed to accept things of value in exchange for performing official acts on an as-needed basis, so that whatever the opportunity presented itself, he would take specific action on the payor's behalf.

Thus, you may convict defendant only if you find that the govern- -- that he solicited or accepted something of value in exchange for some specific official act or course of action.

The government is not required to prove an express intention or agreement to engage in a quid pro quo; rather, such an intent may be established by circumstantial evidence.

Now, in order for you to return a verdict of guilty on the bribery charges in Counts 3 and 4, the government must prove -- must convince you that the offense, or any part of it, took place in the Eastern District of Virginia.

Unlike all of the other elements I have described, this is a fact the government only has to prove by a preponderance of the evidence.  That means the government only has to prove that it is more likely than not that the crime or some part of the offense conduct took

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

place here in the Eastern District of Virginia.

Now we turn to Counts 5 through 10. As I mentioned before, the conspiracy counts, Counts 1 and 2, charge that the objects -- that one of the objects of those conspiracies was to violate Title 18, Sections 1343 and 1346, which make it a federal crime for anyone to use interstate wire communications facilities in carrying out a scheme to fraudulently deprive another of the intangible right to honest services.

Counts 5 through 10 charge violations of Title 18, 1343 and 1346.

Specifically, Counts 5 through 10 of the indictment charge that: From in or about January 2001, through in or about August 2005, within the Eastern District of Virginia and elsewhere, the defendant knowingly devised a scheme and artifice to defraud and deprive the citizens of the United States and the United States House of Representatives of their honest right or -- or of their right to the honest services of the defendant, a member of the US House of Representatives, performed free from deceit, fraud, concealment, bias, conflict of interest, self-enrichment and self-dealing, by knowingly and corruptly demanding, seeking, receiving, accepting and agreeing to receive and accept things of value from Vernon Jackson and iGate, and -- number one; and number two, from Lori Mody and

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

W2-IBBS, in return for the defendant's performance of official duties; and secondly, by intentionally failing to disclose material conflicts of interest in connection with the performance of his official acts.

Now, Counts 5 through 10 also charge that for the purpose of executing this scheme to defraud, the defendant knowingly transmitted, or caused to be transmitted, wire communications.

Is this one of the exhibits that goes back?

It is, isn't it?

ATTORNEY LYTLE:  It is, your Honor.

THE COURT:  All right.

This will be Court Exhibit 3, states what the government alleges to be those wire communications.  So I will not read those for you here.

But going on, with respect to what must be shown, Title 18 US Code, Sections 1343 and 1346 define the crime of honest services wire fraud, and 1343 provides, in pertinent part, that:  Whoever, having devised any scheme or artifice to defraud by means of false or fraudulent pretenses, representation or promises, transmits or causes to be transmitted by means of wire communications in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be guilty of an offense

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

against the United States.

And 1346, in turns, provides that the scheme or artifice to defraud includes a scheme or artifice to deprive another of the intangible right of honest services.

So in order to sustain its burden of proof for the crimes alleged, of using wire communication in interstate and foreign commerce to further a scheme or plan to fraudulently deprive another of the intangible right of honest services, the government has to prove the following four essential elements beyond a reasonable doubt:

First, that the defendant knowingly devised or knowingly participated in a scheme to defraud the citizens of the United States and the United States House of Representatives of their intangible right to his honest services;

Two, that the scheme or artifice to defraud involved a material misrepresentation or concealment of material fact;

Three, that the defendant acted with intent to defraud; and

Four, that in advancing or furthering or carrying out this scheme to defraud, the defendant transmitted or caused to be transmitted any writing, signal or sound by means of a wire communication in interstate and foreign commerce.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

If the government fails to prove any of these essential elements beyond a reasonable doubt for any one of Counts 5 through 10, then you must find the defendant guilty of any such count.

Now, a person causes a wire communication to be transmitted when he knows that the wire communication will be used in the ordinary course of business and when he can reasonably foresee such use.  It does not matter whether the wire communication was itself false or deceptive, so long as the wire communication was incident to an essential part of the scheme.

Nor does it matter whether the scheme or plan was successful, or that any money or property was obtained.

It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme, or that the material transmitted by wire was itself false or fraudulent, or that the alleged scheme actually succeeded in defrauding anyone, or that the use of interstate wire communications facilities was intended as the specific or exclusive means of accomplishing the fraud -- the alleged fraud, or that the defendant personally used the wire communication facility.

What must be proved beyond a reasonable doubt is that the defendant, with the intently to defraud, knowingly and willfully devised, intended to devise or

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

participated in a scheme to defraud substantially the same as the one alleged in the indictment, and that the use of the interstate wire communications facilities was closely related to the scheme because the defendant either used or caused to be used wire communications facilities in interstate commerce in an attempt to execute or carry out the scheme.

Each separate use of the interstate wire communications facilities in furtherance of a scheme to defraud constitutes a separate offense.

Now, Counts 5 through 10 of the indictment charge the defendant with knowingly devising a scheme to defraud -- I beg your pardon -- to deprive the citizens of the United States and the US House of Representatives of their intangible right to honest services in two separate ways. In other words, these counts allege two theories of honest services wire fraud.

The first theory is that the defendant devised a scheme to defraud citizens of the United States and the US House of Representatives of their intangible right to his honest services through bribery, that is, by corruptly demanding, seeking, receiving, accepting or agreeing to receive or accept, something of value in return for being influenced in the performance of an official act.

Honest services wire fraud may be based on

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

bribery because the public official who solicits or receives bribes deprives the public of his or her honest services. Thus, the government may show the first element of honest services wire fraud, that the defendant devised a scheme to defraud or deprive the public of its intangible right to honest services, by showing that the defendant devised a scheme to solicit or receive bribes.

To determine whether the government has done so, you must consider the bribery instructions that I have previously provided to you with respect to Counts 3 and 4, including the instructions regarding the meaning of the term "official act," the meaning of "corruptly," and the quid pro quo requirement.

Now, the second theory the government has charged is that the defendant committed honest services wire fraud by intentionally failing to disclose material conflicts of interest in connection with his performance of official acts.

It is sufficient that the public official performed official acts -- It is sufficient that the public official performed official acts without disclosing his conflict of interest, and with the intent to defraud.

The government is not required to prove that the public official's influence or vote was decisive on the issue. A conflict of interest may exist at any time a

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

public official acts in his capacity as a public official, which may include not only voting on official matters, but also influencing or lobbying other public officials regarding official matters.

Thus, the government may show the first element of honest services wire fraud, that the defendant devised a scheme to defraud or deprive the public of its intangible right to honest services, by proving beyond a reasonable doubt that the defendant had a direct and material interest in iGate, W2-IBBS and IBBS; two, that as a public official he passed on or made decisions regarding matters affecting iGate, W2-IBBS and IBBS; three, that he received personal gain as a result; and four, that he intentionally, with the intent to defraud, failed to disclose his direct interest in iGate, W2-IBBS and IBBS, in connection with the performance of official acts.

To determine whether the government has done so, you must consider the instructions I have given you regarding the meaning of "official acts."

Now, as I have instructed you, Counts 5 through 10 charge two theories of how defendant committed honest services wire fraud.  The government is not required to prove for each count that the defendant violated the Wire Fraud Statute by a scheme to defraud involving both bribery and the intentional failure to disclose material conflicts

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

of interest in connection with the performance of an official act.

However, each juror must agree with all of the other jurors -- in other words, you must be unanimous -- that the crime was committed in the same ways.

In other words, in order to convict on any wire fraud count, you must unanimously agree upon at least one means or method by which the defendant committed honest services wire fraud.

Furthermore, with regard to the bribery theory of honest services wire fraud, each of the jurors must agree with each of the other juror that the same conduct constituting bribery was knowingly and corruptly engaged in by the defendant.

With regard to the conflict of interest theory, each of the jurors must agree with each of the other jurors that the same conduct constituting intentional failure to disclose a material conflict of interest in connection with official acts was engaged in by the defendant with the intent to deceive and defraud.

In addition, Counts 5 through 10 allege a separate wire communication transmitted for the purpose of -- that each allege a separate wire communication transmitted for the purpose of advancing or furthering or carrying out a scheme to defraud.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

In order to convict on any of these counts, the jury must unanimously agree that the particular wire communication was used to advance, further or carry out the scheme to defraud on which the jury unanimously agrees.

Now, the phrase "any scheme or artifice to defraud" means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another, or by which someone intends to deprive another of something of value by mean of deceit.

A scheme or artifice to defraud includes a scheme to deprive another person of intangible property rights, including the right to honest services.  Public officials owe a duty to the public to perform the responsibilities of their office free from deceit, fraud, concealment, bias, conflict of interest, self-enrichment and self-dealing.

The focus of honest services wire fraud is on the fraudulent and deceptive conduct of the public official who abuses the position of trust.  It is not necessary for the government to prove that the scheme actually succeeded.

Also, the offense of honest services fraud is not concerned with the wisdom or results of the public official's decisions, but rather with the manner in which the public official makes his decisions.  Thus, the decision-making process may be corrupted and the public is

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

deprive of honest services, even though the public official comes to a good decision for the wrong reason.

Now, as part of its burden of proof on Counts 5 through 10, the government must prove beyond a reasonable doubt that the scheme or artifice to defraud involved a material misrepresentation or a concealment of a material fact that the defendant was under a duty to disclose.

A statement or representation is material if it has a natural tendency to influence or is capable of influencing a decision or action of the person or entity to which it is addressed.  And a public official's duty to disclose material information need not be expressly imposed by statute or code.  Rather, a public official has a fiduciary duty to his employer, the public, to disclose material information.

A member of Congress has no legal duty to disclose information to foreign government officials.

To act with intent to defraud means to act knowingly and with the specific intent to cheat -- deceive or cheat, ordinarily for the purpose of causing some deprivation or loss to another of money, property, or the right to an employee's honest services.

The intent of a person or knowledge that a person possesses at any given time is not ordinarily proven directly, because there is no way of directly scrutinizing

the workings of the human mind.

In determining the issue of what a person knew or what a person intended at a specific time, as I told you before, you may consider any statements made or omitted or acts done or omitted by this person, together with all other acts and circumstances received into evidence which may aid you in your determination of that person's knowledge or intent.

Additionally, the government must prove beyond a reasonable doubt that defendant had a specific intent to deprive the public of his honest services.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during the trial.

Now, a public official does not commit honest services fraud if his intent was limited to the cultivation of a business or political friendship. If, instead or in addition there is an intent on the part of the public official to be improperly influenced in his official duties, then you may find a violation of the law prohibiting honest services fraud.

If there is both the intent to cultivate business or political relationship and the intent to be

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

improperly influenced in official duties, then in that case you may find a violation of the law prohibiting honest services fraud.

In other words, you may find the defendant guilty of honest services fraud if you find beyond a reasonable doubt that he had dual intent; that is, that he intended both the lawful and an unlawful purpose to some degree.

But if you do not find that the government has proven beyond a reasonable doubt that the defendant had the requisite specific intent to defraud, you must acquit the defendant.

Now the phrase, transmits by means of wire communications in interstate or foreign commerce "means to send from one state to another, or from one country to the United States, or from the United States to another country, by means of telephone, telegraph lines -- and this includes, among other things, faxes, use of credit cards, electronic transfer of funds, telephone calls, as long as the communication is between states or between the United States and a foreign country.

And it is not necessary that the government prove that the information transmitted by means of wire communications in interstate or foreign commerce was itself false or fraudulent, nor does it mean -- nor does the United

States have to prove that the defendant actually used the wire communication in interstate or foreign commerce, or that the defendant intended that anything be transmitted in interstate or foreign commerce by means of a wire transfer.

Instead, the government must prove beyond a reasonable doubt that a wire communication in interstate and foreign commerce was, in fact, used in some manner to further or to advance or to carry out that scheme to defraud or deprive, and that the defendant knew of this and could reasonably foresee the use of the wire communication -- of the wire communication in interstate or foreign commerce would follow in the ordinary course of business or events.

Each separate use of wire communications in interstate commerce in furtherance of a scheme to defraud or deprive constitutes a separate offense.

Now, you will have in the jury room a list of the specific wires that the government alleges were part of the scheme and artifice to defraud.  That will be Court Exhibit 3.

And remember, those are allegation by the government, and you may not consider that list as proof. You have to consider the evidence, to see whether it proves that it was a wire fraud used in connection with the alleged scheme.

The crime of honest services wire fraud

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

addresses the manner in which officials make their decisions, not the wisdom of the official action. Therefore, if the decision-making process has been corrupted, it does not matter whether a public official's actions actually benefited the government agency or the public at large.  In other words, it's not a defense to honest services wire fraud that a public official would have performed the same official action absent any payments he is shown to have received.

Now, the good faith of the Defendant Jefferson is a complete defense of the charges of wire fraud contained in Counts 5 through 10 of the indictment, because good faith on the part of the defendant is simply inconsistent with the intent to defraud alleged in those charges.

A person who acts or causes another person to act on belief or opinion honestly held is not punishable under the Wire Fraud Statute merely because the belief or opinion turns out to be inaccurate, incorrect or wrong.  And honest mistake in action or an error in management does not rise to the level of intent to defraud.

A defendant does not act in good faith if, even though he honestly holds a certain opinion or belief, that defendant also knowingly makes false, fraudulent or -- false or fraudulently pretenses, representations or promises to others.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

The Wire Fraud Statute is written to subject to criminal punishment only those people who knowingly defraud or attempt to defraud.

While the term "good faith" has no precise definition, it means, among other things, a belief or opinion honestly held, an absence of malice or ill will, and an intention to avoid taking unfair advantage of another.

In determining whether or not the government has proven that the defendant acted with intent to defraud or whether the defendant acted in good faith, the jury must consider all the evidence in the case bearing on the defendant's state of mind.

The burden of proving good faith does not rest with the defendant, because the defendant does not have any obligation to prove anything in this case; it's the government's burden to prove to you beyond a reasonable doubt that the defendant acted with the intent to defraud.

If the evidence in the case leaves the jury with a reasonable doubt as to whether defendant acted with the intent to defraud or in good faith, the jury must acquit defendant of these counts.

Now, Count 1 of the indictment, as you will recall, charges that one of the objects of the conspiracy was to violate Title 15 of the US Code, Section 78, the Foreign Corrupt Practices Act, which makes it a federal

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

crime to offer to pay, to pay, to promise to pay, or to authorize the payment of money or anything of value to a foreign official for the purpose of influencing any act or decision of such foreign official in his official capacity or securing any improper value -- improper advantage.

Count 11 -- and that's where we are up to now -- charges a substantive violation of the Foreign Corrupt Practices Act as described below.

Count 11 charges that: From in or about April 2005, through on or about August 3rd, 2005, in the Eastern District of Virginia, the defendant willfully used or caused to be used the mails and means and instrumentalities of interstate commerce corruptly, in furtherance of an offer to pay, promise to pay, or authorization of the payment of money, or anything of value, namely: One, an up-front monetary payment, including an immediate payment of $100,000 in cash; and two, a later payment that would consist of a share of the Nigerian joint venture's profits, both to the then-vice-president of Nigeria, Atiku Abubakar, to influence the Vice-President Abubakar's acts and decisions in his official capacity, and to secure an improper advantage, among other things.

In so -- excuse me. In so doing, Count 11 alleges that on or about July 30th, 2005, Defendant Jefferson drove his car with $100,000 in cash from

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Arlington, Virginia, in the Eastern District of Virginia, to Washington, DC, and on the same day drove his car from Alexandria, Virginia, in the Eastern District of Virginia, to the Rayburn Office -- House Office Building in Washington, DC, to prepare a package to be delivered to the then-Vice-President Abubakar.

Now, Section 78(dd)(2)(A) of Title 15, which codifies the Foreign Corrupt Practices violation, prohibits payments to any foreign official for purposes of influencing any act or decision of such foreign official in his official capacity, number one; number two, inducing such foreign official for do or omit to do any act in violation of the lawful duty of such official, or -- it's in the disjunctive -- or securing any proper advantage; or B, inducing such foreign official to use his influence with a foreign government or instrumentality thereof to effect or influence any act or decision of such government or instrumentality in order to assist the person or company making the payment or obtaining business for or with, or directing business to any person.

So in order to sustain its burden of proof for this offense, that is, the offense of violating the Foreign Corrupt Practices Act as charged in the indictment, the government has to prove the following seven elements beyond a reasonable doubt:

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

First, the government has to prove that the defendant is a domestic concern; that is, or an officer, director, employee or agent of a domestic concern, or a stockholder thereof, acting on behalf of such domestic concern -- all of these comments -- or concepts I'll define for you shortly;

Second, that the defendant acted corruptly and willfully, as I have previously defined these terms for you;

Third, that the defendant made use of the mails or any means or instrumentality of interstate commerce in furtherance of an unlawful act under this statute;

Fourth, that the defendant offered, paid, promises to pay or authorized the payment of money or anything of value;

Five, that the payment or gift was to a foreign official or any person while knowing that all or a portion of the payment or gift would be offered, given, promised, directly or indirectly, to a foreign public official -- let me read that one again.

That the payment or gift was to a foreign public official, or to any person, while knowing that all or a portion of the payment or gift would be offered, given or promised, directly or indirectly, to a foreign official -- foreign public official;

Six, that the payment was for one of four

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

purposes:  To influence any act or decision of the foreign public official in his official capacity; second, to influence the foreign public official to do any act in violation of that official's public duty; or three, to induce that foreign public -- that foreign official to use his influence with a foreign government or instrumentality thereof to effect or influence any act or decision of such government or instrumentality, or to secure any improper advantage.

The seventh element that the government must prove beyond a reasonable doubt is that the payment was made to assist the defendant in obtaining or retaining business for or with or directing business to any person.

If the government fails to prove any of these essential elements beyond a reasonable doubt, then you must find the defendant not guilty of Count 11.

Now, for purposes of the Foreign Corrupt Practices Act, a domestic concern is any individual who is a citizen or national resident of the United States, and any corporation, partnership, association, joint stock company, business, trust, unincorporated organization sole proprietorship which has its principal place of business in the United States or which is organized under the laws of a state of the United States or a territory, possession or commonwealth of the United States.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Now, in this case the indictment charges that the Defendant Jefferson was both a domestic concern and an agent of the domestic concern, because he is alleged to have been a citizen of the United States and an agent of the ANJ Group, LLC, Global Energy and Environmental Services, LLC, and the Multimedia Broadband Services, Inc., which are each further alleged to be domestic concerns.

The indictment also charges that Jennifer Douglas Abubakar, wife of the then-Nigerian vice-president, Atiku Abubakar, was a domestic concern because she is alleged to have been a citizen of the United States.

The term "interstate commerce" means trade or conducting business or travel between one state in the United States and another state, or the District of Columbia, or between any foreign country and a state or the District of Columbia.  And such term includes the intrastate use of a telephone or other interstate means of communication or, B, any other interstate instrumentality.

If such mechanisms as trade, transportation or communications are utilized by a person and goods passing between various states, they are instrumentalities of interstate commerce.

I instruct you as a matter of law, the driving of an automobile or traveling in such an automobile from the District of Columbia to the Commonwealth of Virginia, or

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

vice versa, constitutes the use of a means or instrumentality of interstate commerce.

So if you find those things occurred, you may find that this element have been proved.

Now, as I previously told you, one of the elements that the government must prove beyond a reasonable doubt for you to convict the defendant of violating the Foreign Corrupt Practices Act is if the defendant offered, paid, promise to pay or authorized the payment of money or of anything of value.

It is not required that the payment actually be made. A promise to pay and the authorization of payment by a domestic concern are each also prohibited by the Foreign Corrupt Practices Act.

Indeed, a domestic concern or an officer or director or shareholder of a domestic concern that engages in bribery of a foreign official, indirectly through any other person or entity, is liable under the Foreign Corrupt Practices Act just as if the person had engaged in the bribery directly.

Thus, if you find that the defendant is a domestic concern, that is, a US citizen, or that he was an officer, director, employee, agent or shareholder of a domestic concern, and that he authorized another person to pay a bribe, that authorization alone is sufficient for you

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

to find this element has been proven.

To repeat, it is not necessary that the payment actually take place.  Instead, it is the offer or the authorization that completes the crime.

You may find this element is satisfied if you find that the defendant promised or authorized an unlawful payment, even if you believe that the payment as not actually made.  It is sufficient to satisfy this element if Defendant Jefferson believed that the bribe would be paid, and that he promised or authorized the bribe to be paid.

Provided all the other elements are present, an offer to pay, payment, promise to pay, or authorization of payment is unlawful under the Foreign Corrupt Practices Act if it is made to any person, knowing that all or any portion of such money or thing of value will be offered, given or promised, directly or indirectly, to any foreign official.

For the purpose of this section, a person's state of mind is knowing with respect to conduct, a circumstance, or a result of, if such person is aware that the recipient of the payment or gift is engaging in such conduct; that is, the unlawful offering, giving, promise or payment; that such circumstance exists; or that the result is substantially certain to occur; or if such person has a firm belief that such circumstance exists; or that such result will substantially -- is substantially certain to

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

occur.

A person is deemed to have such knowledge if the evidence shows that he was aware of a high probability of the existence of such circumstance, unless he actually believes that such circumstance does not exist.

The element of knowledge may be satisfied by inferences that you may draw if you find that the defendant deliberately closed his eyes what would -- to what otherwise would have been obvious to him, when knowledge of the existence of a particular fact is an element of the offense.

I'm sorry.  Let me begin again.

The element of knowledge may be satisfied by inferences you may draw if you find that the defendant deliberately closed his eyes to what otherwise would have been obvious to him.  When knowledge of the existence of a particular fact is an element of the offense, such as -- such knowledge may be established if a person is aware of a high probability of its existence, and then fails to take action to determine whether it is true or not.

If the evidence shows you that the defendant actually believed the transaction was legal, he cannot be convicted, nor can he be convicted of being stupid or negligent or mistaken.  More is required than that.  But if a defendant's knowledge of a fact may be inferred from willful necessary -- I'm sorry.  But a defendant's knowledge

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

of a fact may be inferred from willful blindness to the knowledge or information indicating that there was a high probability that there was something forbidden or illegal about the contemplated transaction and payment.

It's the jury's function to determine whether or not the defendant deliberately closed his eyes to inferences and conclusions that may be drawn from the evidence with respect to this charge.

Now the term "foreign official" means any officer or employee of a foreign government, or any department, agency, or instrumentality thereof, or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality.

In this case the indictment charges that the then-vice-president of Nigeria, Atiku Abubakar, was a foreign official.

An instrumentality of a foreign government includes a government-owned or government-controlled company, such as commercial carriers, airlines, railroads, utilities, and telecommunications companies: Internet/telephone/television.

The indictment in this case charges that the Nigerian Telecommunications, Limited, also known as Nitel, was a Nigerian government-controlled company.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

The Foreign Corrupt Practices Act offers -- prohibit offers, payments, promises to pay or authorization of payments made by a domestic concern in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to any person or company.

It is therefore not necessary for the government to prove that the domestic concern itself obtained or retained any business whatsoever as a result of the unlawful offer, payment, or -- unlawful offer, payment, promise or gift.

Moreover, the act's prohibition of corrupt payments to assist in obtaining or retaining business is not limited to the obtaining or renewal of contracts or other businesses, but also includes a prohibition against corrupt payments related to the execution or performance of contracts, or the carrying out of existing business, such as payment to a foreign official for the purpose of obtaining more favorable tax treatment.

In order to sustain its burden of proof for the crime of violating the Foreign Corrupt Practices Act as charged in Count 11 of the indictment, the government must prove that the defendant made use of a means or instrumentality interstate commerce corruptly, in furtherance of an offer, payment, promise to pay or authorization of the payment of money or something of value

to a foreign official.

And you are instructed that is an action is in furtherance of something if it will assist in accomplishing that objective or is intended to promote that objective.

Now, in Count 11, the indictment charges the defendant with using the means of interstate commerce corruptly in furtherance of an offer, payment, or promise to pay something of value to Atiku Abubakar, then the Nigerian vice-president, in two ways:  First, on July 30th, 2005, when the defendant drove his car with $100,000 in cash from Arlington, Virginia, to the District of Columbia; and second, on July 30th, when he traveled from Alexandria, Virginia, to his Washington, DC, office to prepare a package to be delivered to the Nigerian vice-president.

The government is not required to prove that the defendant violated the Foreign Corrupt Practices Act in both ways that are alleged.  But each juror must agree with all the other jurors that the crime was committed in the same way.

That is, if you unanimously find that the government has proved beyond a reasonable doubt either that the government [sic] used the means of interstate commerce corruptly in furtherance of an offer, payment or promise to pay something of value to Atiku Abubakar by driving his car with $100,000 in cash from Arlington, Virginia, to the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

District of Columbia on July 30th, 2005, or that the defendant used the means of interstate commerce corruptly in furtherance of an offer to pay -- offer, payment, or promise to pay something of value to Atiku Abubakar by traveling from Alexandria to his office in Washington, DC, to prepare a package to be delivered to the Nigerian vice-president on July 30th, then you may find the defendant guilty of Count 11.

On the other hand, if you find that the defendant -- if you find that the government has not proved beyond a reasonable doubt that either the defendant's driving of his car with $100,000 in cash from Arlington to the District on July 30th, or his travel from Alexandria to his Washington office on that date to prepare a package to be delivered to the Nigerian vice-president was in furtherance of an offer to pay, or payment, or something of value -- or payment of something of value to that foreign official, then you must find the defendant not guilty of Count 11.

Now, Counts 12 through 14 charge that:  On the dates mentioned -- and I'll come to those -- that the Defendant Jefferson knowingly participated in the transfer of proceeds -- of the proceeds of a specified unlawful activity he had received in violation of Title 18, Section 201, from the Eastern District of Virginia to the Eastern

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

District of Louisiana, and then and there did knowingly engage or cause another to engage in monetary transactions in criminally derived property that was in value greater than 10,000, and was derived from bribe money that affected interstate commerce on these dates:  On June 24th, the transfer of check 1121 for $25,015, written from ANJ's account at the Dryades Savings Bank, payable to the Jefferson Committee, which was deposited on the same day into the Jefferson Committee account at Liberty Bank and Trust -- that's Count 12; second, on June 27th, 2005, a wire transfer for $25,000 from ANJ's account at Dryades Savings Bank to iGate's account at Bank America -- that's Count 13; and on July 26th, the transfer of check number 1122 for $25,000, written from ANJ's account at Dryades Savings Bank, payable to Andrea Jefferson, which was deposited on July 26th, 2005, in the Dryades Savings Bank account held in the name of Defendant Jefferson and Andrea Jefferson -- that's Count 14.

Now, Title 18, Section 1957 is part of the Federal Money Laundering Statute.  This statute reads, in pertinent part:  Whoever, in any of the circumstances set forth in Subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally deprived -- derived property of a value greater than $10,000, and is derived from specified unlawful activity, shall be guilty of

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

an offense.  That's (a).

(c) says that:  In prosecution for such an offense under this section, the government is not required to prove the defendant knew that the offense from which he -- the criminally deprived [sic] property was derived -- was specified unlawful activity.

And (d) states that:  The circumstances referred to in Subsection (a) are:  One, that the offense under this section takes place in the United States or in the special maritime or territorial jurisdiction of the United States; or that the offense under this section takes place outside the United States and such special jurisdiction, but the defendant's United States -- but that defendant is a United States person, but excluding the class described in paragraph (2)(d).

And I'll give you instructions on this in just a moment.

Pursuant to Title 18, 1956 -- Section 1956, Subsection (c), the term "specified unlawful activity" includes, among other things, bribery of a public official.

So in order to sustain its burden of proof of the crime of money laundering, the government must prove the following five essential elements beyond a reasonable doubt:

First, that the defendant knowingly engaged or attempted to engage in a monetary transaction in or

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

affecting interstate commerce;

Second, that the defendant knew the transaction involved criminally deprived -- I'm sorry -- criminally derived property.  That means coming from;

Third, that the property had a value of greater than $10,000;

Fourth, that the property was, in fact, derived from bribery; and

Fifth, that the transaction occurred in the United States.

Although the government must prove that at least $10,000 of the property at issue is criminally derived property, the government does not have to prove that all of the property at issue was criminally derived.

If the government fails to prove any of these essential element beyond a reasonable for any of the Counts 12, 13, and 14, then you must find the defendant not guilty of such count.

The term "monetary transaction" means a deposit, withdrawal, transfer, exchange, in or affecting interstate commerce, of funds or monetary instrument by or through or to a financial institution.

And "a financial institution" means, among other things, an insured bank, commerce -- a commercial bank, a trust company, a credit union, and a thrift

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

institution.

The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country.

Now, the first element requires that the transaction affected interstate commerce in some way, however minimal.  This effect on interstate commerce can be established in several ways.

First, any monetary transaction with a financial institution insured by FDIC affects interstate commerce.  So if you find that the Dryades Savings Bank was insured by FDIC, that's enough to establish that the transactions affected interstate commerce.

Second, if you find that the sources of the funds used in the transaction affected interstate commerce, that is sufficient, as well.

And third, if you find that the transaction itself involved an interstate transfer of funds, that would also be sufficient.

The second element of the money laundering offense charged in Counts 12 through 14 is that the defendant knew the transaction involved criminally derived property.

The term "criminally derived property" means

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

any property constituting or derived from proceeds from a criminal offense.

Funds are criminally derived if they are derived from an already-completed offense or a completed -- or a completed phase of an ongoing offense.

The government must prove not only that the defendant knew that the property involved in the monetary transaction constituted or was derived from proceeds obtained by some criminal offense; the government -- I'm sorry, let me -- the government must prove only that the defendant knew that the property involved in the monetary transaction constituted or was derived from proceeds obtained by some criminal offense.

The government does not have to prove that the defendant knew the precise nature of the criminal offense, or that the defendant knew the property involved in the transaction represented the proceeds of bribery.

Further, the government is not required to prove that all of the property involved in the monetary transaction was criminally derived property.  If you find that the proceeds derived from a criminal offense in the amount of $10,000 or more were combined or commingled with other funds from a lawful activity, for example, in a single bank account, proof of a later transaction involving more than $10,000 will satisfy the second element.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Thus, to find the defendant guilty of unlawful money -- monetary transaction alleged in Count 12, you must find that the government has proved beyond a reasonable doubt that $25,000 of the funds in the ANJ bank account at Dryades Savings Bank on June 25th which were transferred to the Jefferson Committee bank account were, in fact, proceeds already realized from the crime of bribery at the time they were transferred.

To find the defendant guilty of unlawful monetary transaction alleged in Count 13, you must find that the government has proved beyond a reasonable doubt that $25,000 of the funds in the ANJ bank account at Dryades Savings Bank on June 27, 2005, which were transferred to iGate's bank account on that date, were in fact proceeds already realized from the crime of bribery at the time they were transferred.

And to find the defendant guilty of unlawful monetary transaction as alleged in Count 14, you must find that the government has proved beyond a reasonable doubt that $25,000 of the ANJ bank account of the Dryades Savings Bank on July 6th, 2005, which were transferred to Andrea Jefferson's bank account on that day, were, in fact, proceeds already realized from the crime of bribery at the time they were transferred.

The third element of engaging in a monetary

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

transaction as charged in Counts 12, 13 and 14 of the indictment is property derived from a specified unlawful activity.  This element requires a proof beyond a reasonable doubt that the transaction involved in each count involved profits derived from a specified unlawful activity under United States law.

The lawful activity alleged in Counts 12, 13, and 14 is bribery of a public official.  So you are instructed that bribery, if proved, is a specified unlawful activity under federal law.  The government must prove, though, that the funds involved in the monetary transactions were the proceeds from a completed offense of bribery.

The fourth element of the crime of engaging in an unlawful monetary transaction as charged in Counts 12 through 14 is knowledge.  This element requires proof that the defendant knew that the transaction involved the proceeds of a criminal offense.

This means the government must prove that the defendant knew that the alleged transactions involved the profits derived from some form of unlawful activity constituting a felony under state or federal law.  Proof that the defendant knew the property involved in the monetary transactions represented the proceeds of the particular offense of bribery is not required.

The fifth element of the crime of engaging in

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

an unlawful monetary transaction charged in Counts 12 through 14 is that the government must prove beyond a reasonable doubt that the transaction took place in the United States.

Counts 12, 13, and 14 allege that the defendant conducted the monetary transactions between the ANJ bank account at the Dryades Savings Bank in Louisiana and the Jefferson Committee bank account at Liberty Bank and Trust in Louisiana, the iGate bank account in Bank of America in Kentucky, and the Jefferson bank account at the Dryades Savings Bank in Louisiana.

The government has a burden of establishing by a preponderance of the evidence that the offenses alleged in Counts 12, 13 and 14 are property charged here; that is, that venue is appropriate.

You are instructed that for the particular crime of money laundering, a prosecution for an offense may be brought in any district in which the financial or monetary transaction is conducted, or in any district where the prosecution for the underlying unlawful activity could be brought if the defendant participated in the transfer of the proceeds of the unlawful activity from that district to the district where the financial monetary transaction is conducted.

In other words, in order to convict defendant,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

you must find that the government has established by a preponderance of the evidence that when Lori Mody transferred $59,000 from McLean, Virginia, to the ANJ Dryades Savings Bank account on June 24th, Defendant Jefferson was participating in the transfer of proceeds from the completed offense of bribery or proceeds from a completed phase of the offense of bribery from the Eastern District of Virginia to Louisiana.

Now, in addition to bribery, honest services wire fraud, violating the Foreign Corrupt Practices Act, and money laundering, the defendant is also charged with aiding and abetting others in the commission of these crimes.

Aiding and abetting liabilities reflects the principle that a person may violate the law, even though he or she does not personally do each and every act constituting the offense, if that person aided and abetted the commission of the offense.

Section 2(a) of Title 18 provides that: Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Now, before a defendant may be held responsible for aiding and abetting others in the commission of the crime, it is necessary that the government prove beyond a reasonable doubt that the defendant knowingly and

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

deliberately associated himself in some way with the crime charged, and participated in it with the intent to commit the crime.

In order to be found guilty of aiding and abetting the commission of the crimes charged in Counts 3 through 15, the government must prove beyond a reasonable doubt that the defendant knew that the crime charged was to be committed or was being committed; second, knowing -- that the defendant knowingly did some act for the purpose of aiding the commission of the crime; and third, that the defendant acted with the intention of causing the crime charged to be committed.

Before the defendant may be found guilty as an aider and abettor to the crime, the government must also prove beyond a reasonable doubt that someone committed each of the essential elements of the offense charged.

Merely being present at the scene of the crime, or merely knowing that a crime was being committed or was about to be committed, is not sufficient conduct for the jury to find that defendant aided and abetted the commission of that crime.  The govern must prove that he defendant knowingly and intentionally associated himself with the crime in some way as a participant, that is, someone who wanted the crime to be committed, not as a mere spectator.

Count 15, the final count -- is that right?

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

JURORS:  No.

THE COURT:  No.  Second-to-last.

Count 15 charges that on or about August 3rd, 2005, in the -- New Orleans, the defendant knowingly and corruptly attempted to conceal from law enforcement agents, during a court-approved search of the defendant's New Orleans residence, an August 3rd facsimile addressed to defendant, with intent to impair the document's availability for use in official proceedings, namely an investigation being conducted by the FBI in the Eastern District of Virginia and elsewhere, and the present criminal prosecution through the indictment in court proceeding.

Title 18, Section 1512(c)(1) provides, in pertinent part, that:  Whoever corruptly alters, destroys, mutilates or conceals a record, document or other object, or attempts to do so, with the aim to impair the object's integrity or availability for use in an official proceeding, shall be guilty of an offense.

In some cases, it is a crime for anyone to attempt the commission of a crime, even though the attempt fails, and the intended offense is not actually carried out or fully committed.

In this instance, the defendant is charged with attempting to obstruct justice through the concealment of a document, to make that document unavailable for use in an

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

official proceeding.

In order to sustain its burden of proof of the crime of attempting to obstruct justice, the government must prove the following three essential elements beyond a reasonable doubt:

One, that the defendant knowingly and corruptly attempted to conceal a record or document;

Two, that the defendant did so with the intent to impair the record or the document's availability for use in an official proceeding; and

Three, that the defendant did an act constituting a substantial step toward the commission of that crime.

If the government fails to prove any of these essential elements beyond a reasonable doubt, you must find the defendant not guilty of Count 15.

Now, as the term is used in these instructions, the term "official proceeding" means any proceeding before a judge or court of the United States, official -- a United States magistrate judge, a federal grand jury, or a federal government agency.

And in establishing the offense of obstruction of justice, the government need not prove that the official proceeding was pending or was about to be instituted at the time of the offense.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

The government also does not need to prove that the defendant knew that the official proceeding was or would be before a judge or a court of the United States or a United States magistrate, a federal grand jury or a federal government agency.

But in order to show that the government [sic] had the requisite intent to impair the document's availability for use at an official proceeding, the government must prove beyond a reasonable doubt that the official proceeding was foreseen or contemplated by the defendant, and that the defendant believed that his acts would be likely to affect that foreseeable proceeding.

In other words, the defendant's conduct must have a relationship in time, causation or logic with the official proceeding, and his action must have the natural and probable effect of interfering with the due administration of justice.

The government does not have to prove, however, that the record or document was admissible in evidence or free from a claimed privilege.

The government must prove beyond a reasonable doubt that the defendant corruptly attempted to conceal the record or document. And in this context, "corruptly" means to act with dishonest, wrongful or immoral intent to influence, obstruct, or interfere improperly with the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

administration of justice.

"A substantial step" means some important action leading to the commission of a crime, as distinguished from some inconsequential or unimportant act. It must be something beyond mere preparation.  It must be an act unless -- which, unless frustrated by some condition or event, would have resulted, in the ordinary and likely course of things, in the commission of the crime being at tempted.

Because prosecutions under this section have an extraterritorial jurisdiction, the conduct that is the subject of this charge need not have occurred in the Eastern District of Virginia.  Instead, a prosecution under this section may be brought either in the district in which the official proceeding, whether or not pending or about to be instituted, was intended to be effected, or in the district in which the conduct constituting the alleged offense occurred.

Now, we come to the final count.

Count 16 charges that:  From in or about August 2000, through in or about August 2005, within the Eastern District of Virginia and elsewhere, the defendant did knowingly and unlawfully conduct and participate, directly and indirectly, in the conduct of the affairs of an enterprise, the Office of Congressman William J. Jefferson,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

through a pattern of racketeering activity, consisting of racketeering acts 1 through 12, and that the enterprise engaged in, and it activities affected, interstate and foreign commerce, all in violation of 1962(c) of Title 18, which provides, in permanent -- in pertinent part, that:  It shall be unlawful for any person, employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

So, in order to sustain its burden of proof for the crime of participating in the affairs of an -- of an interstate enterprise through a pattern of racketeering activity as charged in Count 16, the government must prove the following five elements beyond a reasonable doubt:

First, an enterprise as described in the indictment -- that an enterprise described in the indictment existed on or about the time alleged in the indictment;

Second, that the enterprise engaged in or its activity affected interstate or foreign commerce;

Third, that the defendant was employed by or was associated with the enterprise;

Fourth, that the defendant participated, either directly or indirectly, in the conduct of the affairs of

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

enterprise; and

Fifth, that the defendant knowingly participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity as described in the indictment, that is, through the commission of at lease two of the charged racketeering acts within ten years of each other, or through causing or aiding and abetting the commission of two such racketeering acts.

If the government fails to prove any of these essential elements beyond a reasonable doubt, then you must find the defendant not guilty of this charge.

Now, as used in these instructions, the term "enterprise" includes any individual partnership, corporation, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity.  The term "enterprise" can include a government office.

The term "enterprise," as used in these instructions, may include a group of people associated in fact, even though this association is not recognized as a legal entity.  A group or association of people can be an enterprise if these individuals have joined together for a purpose of engaging in a common course of conduct.

Such an association of persons may be established by evidence showing an ongoing association,

formal or informal, and by evidence that the people making up the association functioned as a continuing unit.

Therefore, in order to establish the existence of such an enterprise, the government must prove that there is an ongoing organization with some sort of framework for making and carrying out decision, that the various members and associates of the association function as a continuing unit to achieve a common purpose, and that the enterprise is separate and apart from the pattern of racketeering activity in which it engages; in other words, that it has a separate existence from the pattern of racketeering acts.

Regarding organization, it's not necessary that the enterprise have any particular formal structure.  But it must be sufficient -- must have sufficient organization that its members functioned and operated in a coordinated manner in order to carry out the alleged common purposes of the enterprise.

Continuing membership would exist even where a membership changes by adding or losing individuals during the course of its existence.

Therefore, such an association of individuals may retain its status as an enterprise, even though the membership of the association changes by adding or losing individuals during the course of its existence.

And the "separate existence" means that the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

enterprise has an existence beyond that which is necessary merely to commit each of the charged racketeering acts; that is, that the organization continue to exist in the intervals between the alleged racketeering activities.

It is not necessary, however, to find that the enterprise had some function wholly unrelated to the racketeering activity.  Common sense dictates that the existence of an association -- in fact, enterprise is oftentimes more readily proven by what it does than by an abstract analysis of its structure.

Moreover, you may consider proof of the racketeering acts to determine whether the evidence establishes the existence of the charged enterprise.

Thus, evidence of the function of overseeing and coordinating the commission of several different predicate racketeering acts and other activities on an ongoing basis may satisfy the separate existence of the enterprise requirement.

The term "enterprise" includes both legitimate and illegitimate enterprises.

There is no requirement that the enterprise benefit from the racketeering activity.  The enterprise, whether legitimate or illegitimate, may be used as a vehicle through which the unlawfully activity is committed, or may be a victim of such unlawful activity.

The government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated.

Now, as I previously -- we are nearing the end. Thank you for your patience.

As I stated previously, the government must prove beyond a reasonable doubt that the enterprise engaged in, or it's activities affected, interstate or foreign commerce.

"Interstate or foreign commerce" means trade or conducting business or travel between one state and another state or the District of Columbia.

And "foreign commerce" means foreign trade, business or travel between the United States and another country.

Therefore, interstate and foreign commerce may include the movement of money, goods, services or persons from one state to another state or the District of Columbia, or between the United States from another country.

This may include, among other matters, the purchase or sale of goods or supplies outside the United States, or the state in which the enterprise was located, or the use of interstate or international mail or wire facilities, or the causing of any of those things.

An enterprise is generally engaged in commerce

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

when it is itself directly engaged in the production or distribution or acquisition of goods or services in interstate commerce.

If you find that the evidence is sufficient to prove that the enterprise engaged in interstate or foreign commerce, the required nexus to interstate or foreign commerce is established, and therefore the government is not required to prove the alternative, that the activities of the enterprise affected interstate or foreign commerce.

Regarding the alternative method of satisfying this element, to establish the requisite effect of -- effect on interstate or foreign commerce, the government is not required to prove a significant or substantial effect on foreign commerce; rather, a minimal effect on interstate or foreign commerce is sufficient.

And it is not necessary for the government to prove that the individual racketeering acts themselves affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in its entirety that must be shown to have that effect.

On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the individual racketeering acts.

Moreover, it is not necessary for the government to prove that the defendant knew the enterprise

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

would affect interstate or foreign commerce, or that the defendant intended to affect interstate or foreign commerce, or that each defendant -- I'm sorry -- or that the defendant engaged in or his activities affected interstate or foreign commerce.

The government is not required to prove all of the circumstances outlined above. To satisfy this element, the government need only prove beyond a reasonable doubt either that the activities of the enterprise considered in their entirety had some minimal effect on interstate or foreign commerce, or that the enterprise was engaged in interstate or foreign commerce.

And the government must also prove beyond a reasonable doubt that the defendant was employed by or associated with the enterprise about which I have already instruct you.

The government need not prove both. Either one is sufficient to establish this element.

The term "employed by" should be given its common, plain meaning. Thus, a person is employed by an enterprise when, for example, he is on the payroll of the enterprise and performs services for the enterprise, holds a position in the enterprise, or has an ownership interest in the enterprise.

And "associated with" should also be given its

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

own plain meaning.  As Webster's Dictionary notes, associate means to join, often in a loose association, as a partner, fellow worker, colleague, friend, companion, ally, et cetera.

Therefore, a person is a -- or ally, to join or connect with one another.

Therefore, a person is associated with an enterprise when, for example, he joins with other members of the enterprise and he knowingly aids or furthers the activities of the enterprise, or he conducts business with or through the enterprise.

It is not required that the defendant have been employed by or associated with the enterprise for the entire time that the enterprise existed.

The government is also not required to prove that the defendant had a formal position in the enterprise, or participated in all the activities of the enterprise, or had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members in the enterprise.

Rather, it is sufficient that the government prove beyond a reasonable doubt that at some time during the existence of the enterprise as alleged in the indictment, the defendant was employed by or associated with the enterprise within the meaning of those terms as I have just

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

explained them, and that he knew of the general nature of the enterprise, and that the enterprise extended beyond his own role in the enterprise.

The government must prove beyond a reasonable doubt that the defendant conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise. Such proof may include evidence that the defendant intentionally performed acts, functions or duties which are necessary to or helpful in the operation of the enterprise.

Thus, the government must prove that the defendant participated in the operation or management of the enterprise itself, or that he had some part in directing the enterprise's affairs.

However, the government need not prove that the defendant exercised significant control over or within the enterprise, or that he had a formal position in the enterprise, or that he had primary responsibility for the enterprise's affairs.

Rather, an enterprise is operated not just by upper management, but also by lower-rung participants in the enterprise who are under the direction of upper management or carry out upper management's orders.

Therefore, you may find -- I don't think that next sentence has any application. I am going to omit it.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Any objection?

ATTORNEY LYTLE:  Not from the government, your Honor.

ATTORNEY SOLOMON:  No, your Honor.

THE COURT:  So the government must prove beyond a reasonable doubt -- one of the elements I gave you on this one is that it must prove a pattern of racketeering activity.

As I have already stated, the indictment alleges that defendant and his alleged coconspirators committed 12 racketeering acts, including bribery, deprivation of honest services through wire fraud, and money laundering.

Now, you won't -- I am not going to describe those 12, but you will have with you, marked as a Court exhibit, a description of those racketeering acts.  Those are allegations in the indictment.  They are not themselves proof or evidence of any kind.  But they are there for your use.

And what the government must prove beyond a reasonable doubt, three essential elements:

First, that the defendant intentionally committed or caused or aided and abetted the commission of two or more of the racketeering acts alleged in the indictment.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

These two or more racketeering acts must have been committed within ten years of each other.  And your verdict must be unanimous as to which specific racketeering acts you find that the defendant committed or caused to be -- or caused to be committed or aided and abetted.

In a moment I will instruct you on the elements regarding each of the charged -- well, I have already instructed on that.  You'll have a list.

Remember, there are 12 of them, or more, if there are subsections.  The government doesn't have to prove all of them.  You must find at least two.  But you must be -- before you can convict -- if you don't find two, you must acquit.  If you find two, you must be unanimous as to those two.  If you are not unanimous as to those two, you must acquit.

Now, as to the racketeering acts, there must have been a nexus to the enterprise, and the racketeering acts must be related.

A racketeering act has a nexus to the enterprise if it has a meaningful connection to the enterprise.  To be related, the racketeering acts must have the same or similar purposes, results, participants, victims or methods of commission, or otherwise be interrelated by distinguishing characteristics, and not be merely isolated events.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Two racketeering acts may be related, even though they are dissimilar --

(Noise interruption.)

THE CLERK:  Excuse me, Judge.

THE COURT:  Two racketeering acts may be related, even though they are dissimilar or not directly elated to each other, provided that the racketeering acts are related to the same enterprise.

For example, for both nexus and relatedness purposes, the requisite relationship between the enterprise and a predicate racketeering act may be established by evidence that the defendant was enabled to commit the racketeering act solely by virtue of his position in the enterprise, or involvement in or control over its affairs, or by evidence that the defendant's position in the enterprise facilitated its commission of the racketeering acts, or by evidence that the racketeering act benefited the enterprise, or by evidence that the racketeering act was authorized by the enterprise, or by evidence that the racketeering act promoted or furthered the purposes of the enterprise.

And third, the racketeering acts must themselves either extend over a substantial period of time, or they pose a threat of continued criminal activity.

The government need not prove that such a

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

thread of continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways.

For example, the thread of a continued unlawfully activity may be established when the evidence shows that the racketeering acts are part of a long-term association that exists for criminal purposes when the racketeering acts are shown to be the regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the government have proven the tread of continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against the defendant.  Rather, in addition to considering such acts, you may also consider the nature of the enterprise and other unlawful activities of the enterprise and its members, viewed in their entirety, including both charged and uncharged unlawful activities.

Remember now, you will have a list of the alleged racketeering acts.

And the racketeering acts of bribery of a public official and the deprivation of honest services by wire fraud, as alleged in these racketeering acts, contain several essential elements.  In order to find that the defendant committed these racketeering acts, the government must prove certain essential elements beyond a reasonable

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

doubt.

For each act of racketeering involving bribery or solicitation of bribes by a public official and the deprivation of honest services by wire fraud, the elements of the offense and any appropriate definitions that I have previously given you in those instructions, you need to follow those.

Similarly, the racketeering act of money laundering, as alleged in Counts 12 through 16, also contain several essential elements that must be proven by the government beyond a reasonable doubt.  You also have been instructed previously concerning these essential elements of money laundering, and I won't take -- instruct you again at this time on the elements of the offenses that you have already received instructions on.

The only exception is the racketeering act concerning the deprivation of honest services by mail fraud.

In order to find that the defendant committed this racketeering act, the government must prove the following three [sic] essential elements beyond a reasonable doubt.  This is -- relates to a different code section, 1341 and 1346.

First -- the government must prove beyond a reasonable doubt these three [sic]:

First, that the defendant knowingly devised or

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

knowingly participated in a scheme to defraud or deprive the citizens of the United States or the House of Representatives of their intangible right to honest services;

Second, that the scheme or artifice to defraud involved a material misrepresentation or concealment of material fact;

Third, that Jefferson did so willfully and with the intent to defraud; and

Fourth, that in advancing or furthering or carrying out this scheme to defraud, that the defendant used the mails or caused the mails to be used.

Use of the mails is an essential element of the offense of mail fraud as charged in the racketeering act, one of the racketeering acts in Count 16.  And you'll see that listed in the Court exhibit.

And the use of the mails is an essential element of that racketeering act, whether by mailing or causing to be mailed with the US Postal Service, or a private or commercial interstate carrier, or by depositing or causing to be deposited with such a carrier.

A private or commercial interstate carrier includes any business -- any business engaged in the transmission, transportation or delivery of messages or other articles in interstate commerce; that is, from any

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

place in one state to any place in another state.

If a message or other article is deposited with such a carrier, it need not be proved that the message or material thereafter moved in interstate from one state to another.

The government is not required to prove that the defendant actually mailed anything, or that the defendant even intended that the mails would be used to further or to advance or carry out the scheme or plan to defraud or to deprive another -- to carry out the alleged scheme, plan, or plan to defraud or to deprive another of the intangible right to honest services.

The government must prove beyond a reasonable doubt, however, that the mails were in fact used in some manner to further or to advance or to carry out the scheme to defraud or deprive another of the intangible right to honest services.

The government must also prove that the use of the mails would follow the ordinary course of business or events, or that the use of mails by someone was reasonably foreseeable.  It's not necessary that the government prove that the item itself was -- that the item itself mailed was false or fraudulent or contained false or fraudulent representation or promise, or contained any request for money or thing of value.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

The government must prove beyond a reasonable doubt, however, that the use of mails further or advanced or carried out in some way the scheme or plan to defraud or deprive another of the intangible right to honest services.

The terms "scheme to defraud or deprive," "to deprive another of intangible right to honest services," "duty to disclose," "conflict of interest," "scheme," "materiality," "intent to defraud," and "dual intent" have already been defined for you as a part these instructions concerning deprivation of honest services by wire fraud, and I will not repeat them here.

Now, we are very close to the end.

Reports about this trial have and will continue to appear in the newspapers, on radio and on television and on the Internet.

The person who writes or reports a news story may not have the opportunity to listen to all of the testimony that you have heard, may not see all of the evidence that you have seen, and may be receiving information or opinions from people who have not seen here in court -- or who have not been -- I'm sorry -- from people whom you have not seen here in court under oath and subject to cross-examination.

A report in the media may emphasize an unimportant point, or it may simply be wrong.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

As I have told you previously, you must not read any news story or accounts or blogs about the case, or anyone involved in the case in print or in the -- or on the Internet.  And you must not listen to any radio or television report about the case, or anyone involved in the case.

The case must be decided by you solely and exclusively on the evidence that was received here in open court.

Now, as I have told you several times, you must not base your verdict in any way on sympathy, bias, guesswork or speculation.  Your verdict must be based solely on the evidence and the Court's instruction.

The verdict must represent your considered judgment; that is, the considered judgment of each juror.

In order to return a verdict, it is necessary that each juror agree thereto.  In other words, your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgment.

You must each decide the case for yourself, but do so only after an impartial consideration of all the evidence in the case with your fellow jurors.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

And in the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Remember at all times, you are not partisans, you are judges, judges of the facts, and your sole interest is to seek the truth from the evidence in the case.

Now, the punishment provided by law for the offenses charged in the indictment is exclusively within the province of the Court and should never be considered by the jury in any way in arriving at an impartial verdict as to the offense charged.

Now, when you retire to the jury room you will select one of your number to serve as your foreperson.  And the foreperson will preside over your deliberations and will be your spokesperson here in open court.

A form of the verdict has been prepared for your convenience.

May I see it?

In essence, this is a -- we are going to have to prepare a renumbered one, Counsel.

But it is a four-page document.  It has the style of the case at the top, and then it has "Verdict."

And underneath that it will have, "We, the jury, find," and then it will have -- it will go down for each count. And you can note for each count whether you find guilty or not guilty, as you may find.

Now, for Count 16, we also have listed here the various, 12 racketeering acts. Remember, you have to find at least two, and you have to be unanimous as to those two. And they are listed here. You may find some proven and some not proven. Or you may find them all not proven, or you may find them all proven.

Then, at the end of the jury verdict form is a place for the foreperson's signature and name.

You will take this form of the verdict to the jury room, and when you reach your unanimous agreement as to your verdict, you will have your foreperson fill the verdict form in, date it and sign it, and then return to the courtroom with the verdict on which you unanimously agree.

Now, it's proper to add the caution that nothing said in these instructions, and nothing in any form of the verdict prepared for your convenience, is meant to suggest or to convey in any way or in any manner any intimation as to what verdict I think you should find. What your verdict is, is your sole and exclusive duty and responsibility.

Now, if it becomes necessary during your

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

deliberations to communicate with the Court, you may send a note by Mr. Wood, the court security officer, signed by the foreperson or by one or more members of the jury.

But no member of the jury should ever attempt to communicate with the Court by any means other than by a signed writing.  And the Court will not communicate with any member of the jury on any subject touching the merits of the cares, other than an open writing or orally -- other than in writing or orally here in open Court.

Now, I will communicate with you on several occasions on administrative matters, through Mr. Wood.  And I give you will an example.

Are the sandwiches here?

THE MARSHAL:  I will check.

THE COURT:  Let's make sure that we get the sandwiches up here.

And I will ask him to communicate some things to you of an administrative nature; but nothing touching the merits of the case.  I will do that only here in open court or in writing.

Now, you will note from the oath about to be taken by Mr. Wood that he, too, as well as all other persons, are forbidden to communicate in way or manner with any member of the jury on any subject touching the merits of the case.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Obviously, he will communicate some other administrative matters to you.

And bear in mind that you are never to reveal to any person, not even to the Court, how the jury stands, numerically or otherwise, on the question before you until after you have reached your unanimous verdict.

All right.  You may administer the oath to Mr. Wood.

(Court security officer sworn.)

THE COURT:  All right.  I have one other task to accomplish here at the bench.

Counsel, come to the bench.

And within the next five minutes, you will be released to go to lunch.

(Sidebar conference held as follows:)

THE COURT:  All right.  Did I misread one?

ATTORNEY LYTLE:  Yes, your Honor.  I just had one or two items to raise to the Court's attention.

THE COURT:  All right.

ATTORNEY LYTLE:  With regard to instruction 79, defining -- or noting the statutory language for the Foreign Corrupt Practices Act --

THE COURT:  All right.

ATTORNEY LYTLE:  -- the Court said "proper advantage" instead of "improper advantage."

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

THE COURT:  Did you all hear the same thing?

ATTORNEY SOLOMON:  I don't recall, your Honor.

THE COURT:  All right.  Any objection to my just telling them that if they heard "proper," it was "improper"?  And I will refer to that.

What else do you have?

ATTORNEY LYTLE:  Then, your Honor, with regard to Counts 12 through 14, monetary transactions, the money laundering, I don't believe the Court referenced that they would be getting a chart --

THE COURT:  I will.

ATTORNEY LYTLE:  -- for those transactions.

THE COURT:  I will.

ATTORNEY LYTLE:  Finally, your Honor, with regard to racketeering acts, each of the 1 through 11 are broken down with a and B, and the indictment charges that they could find either a or B to find the racketeering act.  In other words, 1 could be satisfied by finding 1A or 1B.

THE COURT:  I understand that.

ATTORNEY LYTLE:  And then 12, racketeering act 12 is broken down by six different money laundering transactions, and they can found one of the six to satisfy the 12 racketeering act.  It's the way the indictment is set forth.

We would --

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

THE COURT:  Tell me about 12 again.

ATTORNEY LYTLE:  Count -- racketeering act 12 is actually broken down into, I believe, six monetary transactions, money laundering transactions.  And so the way the indictment charges is that the jury could find just one of those to satisfy the 12 racketeering act.

THE COURT:  All right.

Any objection to my telling the jury that?

As long as I tell them:  Now, remember, these -- this is not evidence of proof of guilt.  These are the allegations in the indictment.  But you, in accordance with the instructions, you need to look at them to see whether or not the government has borne its burden of proof.

All right.  Anything else?

ATTORNEY LYTLE:  I would have to look at the indictment, 12 a through a certain letter.  I just don't have that in front of me, the number.

THE COURT:  All right.  Well, I am not going to be that -- I'll be fairly specific.

What page was the Foreign Corrupt Practices Act on?

ATTORNEY LYTLE:  Page 79, your Honor.

THE COURT:  All right.

Now, does the defendant have any of those?

ATTORNEY SOLOMON:  Your Honor, I apologize.  I

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

left my copy of the instructions at the table.  May I get it?  There was one paragraph that I thought was omitted.

THE COURT:  All right.

ATTORNEY SOLOMON:  Thank you.

(Pause.)

ATTORNEY LYTLE:  Your Honor, does the Court propose that we draft the alternate verdict form with regard to racketeering acts?

THE COURT:  You need to get rid of this (indicating).  You need to get rid of these page numbers.

ATTORNEY LYTLE:  All right.

THE COURT:  And then you need to fix it, show it to Mr. Trout, Ms. Jackson, before I give it to them.  It has got to be done very quickly.

What was omitted?

ATTORNEY SOLOMON:  Your Honor, on the venue instruction, I did not hear the Court read the last paragraph.  You talked about venue being a preponderance standard, then said, remember all the elements --

THE COURT:  All right.  I may have omitted that.  Is there any doubt -- I am not even sure "proper" warrants it, but the racketeering acts does.

I think I will simply say:  Remember, venue has to be served by a preponderance -- or has to be proved by a preponderance, but everything else has to be beyond a

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

reasonable doubt.

ATTORNEY SOLOMON:  And the one other thing, your Honor, is --

THE COURT:  Go ahead.

ATTORNEY SOLOMON:  -- when the Court, the Court referenced the list of wires that would be provided to the jury in connection with the wire fraud counts, I did not hear the caution that that list is allegations.

THE COURT:  Oh.  All right.  I think I did.  I will cover it by a general one.

ATTORNEY SOLOMON:  Thank you, your Honor.

ATTORNEY LYTLE:  Your Honor, I am reminded that although the Court may have misspoken just for that one word, that the Court covered the elements correctly, which includes the improper advantage.  So maybe it is not necessary to do that one.

THE COURT:  All right.  So we don't need to do it.

So, let's recapitulate what I am going to do.

I am going to do the racketeering acts.  And I'll do -- and he mail fraud -- no.  I'm sorry.  And the wire fraud.  I didn't list those.

ATTORNEY LYTLE:  The monetary transactions.

THE COURT:  I'm sorry, the monetary transactions for the racketeering acts, I will make clear

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

128

that those are allegations.

And what was --

ATTORNEY SOLOMON:  It was after talking about venue being a preponderance --

THE COURT:  Oh, I just say, "remember" -- okay. Those three things, right?

ATTORNEY SOLOMON:  Yes, your Honor.

THE COURT:  All right.

Now, apart from that, was the jury -- and apart from the objections that you, that you made in the course of the instructions conference, has the jury otherwise been fully and fairly instructed?

ATTORNEY LYTLE:  We believe so, your Honor.

ATTORNEY SOLOMON:  Yes your Honor.

THE COURT:  All right.

Now, I'm going to -- after I do all of that, I am going to excuse the three alternates.  They will be instructed not to discuss the matter with anyone; they may still be needed.

And then I have them retire and deliberate; but it will take time.

I need to have the verdict form as promptly as possible, and these exhibits; that is, the Court Exhibit Number 1, which is overt acts -- oh, here we have it.

No, it doesn't have, "We, the jury, find..."

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

ATTORNEY LYTLE:  We still have to adjust the racketeering acts.

THE COURT:  And they will still have to adjust it.

So put at the beginning, "We, the jury, find," and so forth.

All right, now, I will excuse these three, and then I will permit them to deliberate.

Now, you all need to get that to me, because I am going to allow them to deliberate without having the verdict form and without having all of these exhibits, because you need to look at them.  But I will tell them we will get that to them as soon as possible.

ATTORNEY BELLOWS:  We are almost done.

THE COURT:  All right.

Let's proceed.

ATTORNEY SOLOMON:  Excuse me, your Honor.  We need to raise the exhibit binder.

THE COURT:  Yes, the exhibit binders.  Are you all ready with those?

ATTORNEY SOLOMON:  There were some issues that the government was dealing with.  I'm not exactly sure where they are on theirs.

ATTORNEY BELLOWS:  Yes.  There were a few changes.  We will have them by the end of lunch.

THE COURT:  Bird speed, they need those.

All right.  Let's proceed.

Now, I am going to rely -- once those exhibits are given to Ms. McConnell and to Mr. Wood by you all, that's it.

He will take them into the jury room.  So you are responsible for insuring that nothing inappropriate goes in or is omitted.  And I will rely on counsel for that.

All right.  Let's proceed.

(End of sidebar conference, open court as follows:)

THE COURT:  All right.  Ladies and gentlemen, remember when I instructed you as to venue, the government only has to prove venue by a preponderance of the evidence, but it has to prove all the other matters, the elements of the other offenses, beyond a reasonable doubt.  That's a distinction I wanted to be clear about.

Now, with respect to Count 16, you will have a Court exhibit that lists the racketeering activities.  There are 12 alleged racketeering activities.  These are all alleged.  It comes from the indictment, which, as I have told you, is not proof or evidence itself.  But you have to have them so that you can decide whether the government has proved that beyond a reasonable doubt.

And so it will identify them, and it will

identify them as 1A, 1B, 2A, 2B, all the way up to 11A and -B. And as I told you in the instructions, the government has to prove at least two racketeering activities, and you must be unanimous as to which two. And you may find that it hasn't proved any. That's entirely up to you.

And so it can be either A or B. In other words, it doesn't, it doesn't have to be 1A and 1B to be a proof of one racketeering activity. It could be either 1A or 1B. You might find both or your might find none.

Now when you get to 12, 12 has six parts to it, not two. And there, the government has to prove, in order to prove that racketeering act, one of those six. But again, you have to be unanimous on that, if there is just one of the six.

Is that right?

ATTORNEY LYTLE: Your Honor, I just reviewed the indictment. There are actually nine.

THE COURT: Nine. All right.

But you have to be unanimous as to which of the nine, just as you have to be unanimous as to whether it's A or B.

Now, I believe I have covered everything, Counsel, have I not?

ATTORNEY LYTLE: Yes, your Honor.

THE COURT: Mr. Trout, have I covered

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

everything?

ATTORNEY TROUT:  Yes, your Honor.

THE COURT:  All right.

Now, I am sure all of you know how many jurors typically deliberate in a criminal case in Federal Court. The number, of course, is 12.  That means three of you are alternates.

Now, we could not have proceeded without your participation.  You were vital to this trial.  And although I am going to excuse the three that I will name now, I am going to direct that you not discuss the matter with anyone until we -- until the case is all over.  Because there may be circumstances that could arise where we would need your continued participation.

So do not discuss the matter with anyone.  Do not undertake any investigation.  Don't look up anything on the Internet or anything of that sort.  In other words, remain pristine about this, just as you have been for these weeks.

And just as soon as we can, once the case is over, we will call and advise you.  And at that point you are free to read or look at anything you wish.

The three are 108 -- who is 108?

THE JUROR:  (Indicating)

THE COURT:  Am I looking at the wrong thing?

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Oh, 167, 63, 81.

All right.  Now, it is, as I said, very important that you refrain from discussing the matter.  And I will have the deputy clerk communicate with you as soon as we are able to do so.  And that communication could say, "Return as quickly as you can."

So, remember to adhere to that instruction.

All right.  You may depart at this time, and you may take your sandwich with you.  But from now on, we are going to have the 12 separate.  So you take your sandwich with you, or your baked Alaska, or whatever it was.

(Alternate jurors excused.)

THE COURT:  Now, as I told you at the outset, the moment of deliberation is a precise one.  It's now near at hand.  It hasn't quite arrived yet.

I am going to excuse you now, and you won't hear the familiar litany, because I won't tell you not to discuss the matter among yourselves, because now the time has arrived when you must do precisely that.

But you are going to have a sandwich first.  Mr. Wood will bring in the exhibit books.  There will be a set of exhibit books for the government and an exhibit book for the defendant, with an index in the front of each, that will help you reference those.

There will be the Court's exhibits that I have

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

told you about, and there will be the stipulations.  I think there are nine or thereabouts.

ATTORNEY LYTLE:  Yes Your Honor.

THE COURT:  Nine stipulations.

So you will have all of that, and the verdict form, and the tape recorder with the tapes.

Now, once all that is in the room, and the door is closed -- Mr. Wood can't be in there, either.  Once he has left the room and the door is closed, you may then begin your deliberations.

Now, if one of you needs to use the facilities, you must cease your deliberation, because you all twelve have to be there to engage in deliberations.

You are free to take a break whenever you wish. I won't reconvene you until the end of the day.  You may deliberate as long or as little as you like.  You are the sole judges of this case.  What you do in the jury room is entirely up to you.

And you will hear me say at the end of this case that, ordinarily, you are not under any constraints about -- when this case is all over and you have finished, I will tell you that you may speak to whomever you wish about the case.

But I will also tell you at that time that whenever I see on the media a juror discussing what went on

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

in the course of deliberations, I think that does an injury to the deliberative process, because jurors might not feel free to give a full and complete expression of their views if they know everything they say is going to grist for the media mill.

So I'm going to suggest to you at the end that you have an obligation to your fellow jurors to maintain as confidential what went on in the jury room. But that's a choice you make. It's not an order of the Court. That's entirely up to you. But I merely make that suggestion, and I will make it again when you are all done.

All right. You may keep your books now.

Are the sandwiches here, Mr. Wood?

THE MARSHAL: Yes, sir.

THE COURT: And we need to get the -- while you are eating the sandwiches, Mr. Wood and Ms. McConnell and counsel will work hard on getting the exhibits and all the matters in there.

Now, they will eat their lunch in the other room; is that right?

THE MARSHAL: Yes, sir.

THE COURT: When you finish your lunch, I think we will have most everything back there. You may begin your deliberations even if we don't have it all back there. But we will get it to you just as quickly as we can.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

And as I say, you may deliberate as long or as little as you like.

All right.  You may follow Mr. Wood into the jury room.

(Jury excused to deliberate at 12:45 p.m.)

THE COURT:  All right.  You may be seated.

By the way, should we need an alternate, I did not read them in the order in which they were selected.

For your information, the order in which they were selected were -- Number 1 has already been excused.  The second alternate was Number 81.  The third was Number 167.  And the fourth was 63.

All right.  Anything else -- now, I want counsel to get to work on the exhibits and all of those -- are they all done?

ATTORNEY LYTLE:  There is some work going on right now, and we will go back and check on that, your Honor.

THE COURT:  All right.  Well, you all can delay your lunch and everything else, because we need to proceed pretty promptly.

Now, there are a couple of other things -- when you do the verdict form, leave out the month at the end.

In addition, where you see on Count 16, do you have that in front of you?  Count 16 has the various

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

racketeering acts?

ATTORNEY DUROSS:  Yes, your Honor.

THE COURT:  They only have to go to the racketeering -- they only have to indicate on the racketeering acts if they find the defendant guilty of it. If they find the defendant not guilty of Count 16, they don't have to fill out anything on the racketeering acts.

ATTORNEY LYTLE:  Don't the racketeering acts have to be determined first, before they find guilty, your Honor?

THE COURT:  Well, then you don't have it set up the right way.

ATTORNEY LYTLE:  Yes, your Honor.

THE COURT:  You and counsel work that out. Show it to me.  They don't have to have the jury verdict form when they start.  But you all get together on that.

The point is, typically, they don't have to fill in the part about racketeering acts if they find the defendant not guilty.

And they could conceivably find all the requisite racketeering acts and not find the defendant guilty, if they don't find the other element of the offense.

ATTORNEY LYTLE:  Yes, your Honor.  We'll make sure --

THE COURT:  So it's hard to figure out exactly

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

how to say it, because it's also true that they can consider the racketeering acts in determining whether or not there is an enterprise, and so forth.  So it's a little hard to know precisely what to say.  Maybe what's said there is sufficient, because we don't want to confuse them.

Anything further, Mr. Lytle?

ATTORNEY LYTLE:  Not from the government, your Honor?

THE COURT:  Mr. Trout?

ATTORNEY TROUT:  When would we be expected back, assuming there is a note or anything like that?

THE COURT:  Well, I want the exhibits.

ATTORNEY TROUT:  Oh, I understand.  I'm talking about at the end of the day.

THE COURT:  Oh, I see.  5:30, 6:00 o'clock. I'll probably, when it gets close to that time, tell Mr. Wood to inquire of them whether they wish to continue deliberating.  I will accommodate them into the evening if they wish to do so.

If they don't, I will send them home and have them come back in the morning.

But you should be here -- and you should also be close by, in case there is a question.  So if you leave the building, make sure that -- and remain close by, an make sure the deputy clerk has a number that you can be reached

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

by.

ATTORNEY TROUT:  Yes, your Honor.  We have already provided those numbers.

THE COURT:  All right.  That would be fine.

The major effort now is to have the exhibits prepared and those court exhibits, and they should be numbered sequentially, overt acts 1 and 2, so it should be overt acts for Count 1 is Court 1, Court 2 for Count 2, and whatever is next, sequentially.

All right.  And I have those and the stipulations here.  The parties needed to look at that, because I want the parties to be clear about it before they go to Ms. McConnell or Mr. Wood.

If there is a dispute, I will reconvene and deal with it.  But I can't imagine there would be a dispute after all this time.

All right.  Court stands in recess.

(Court recessed at 12:50 p.m.)

(Court called to order at 5:27 p.m.)

(Jury not present.)

THE COURT:  All right.  This is United States against Jefferson.

I am going to convene the jury and allow them to go home, and reconvene them in the morning.  I will give them an opportunity to come earlier in the morning, if they

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

wish, and proceed.

All right.  You may bring the jury in.

(Jury impaneled at 5:28 p.m.)

THE COURT:  All right.  You may be seated.

All right, ladies and gentlemen, I am now going to release you for the evening.  You may give your books to Mr. Wood.  He will put them in the room.  They are not going to go anywhere and.  That lock will be locked.  Everything will remain as it is.

I will reconvene you at 9:30, or at 9:00, if you prefer, or at 8:30 or 6:15.

(Laughter.)

(Chorus of responses.)

THE COURT: Nine-thirty?

(Jurors indicating.)

THE COURT: Nine-thirty tomorrow.

Now this evening, again, put this matter out of your mine to one side.  Don't investigate or read or listen to anything on the case.  And I will see you tomorrow morning at 9:30.

Now when you arrive tomorrow, there will be other matters going on in the courtroom.  But once Mr. Wood advises me that all of you are here, then I will stop what I am doing in here and convene you and we will proceed.

All right.  You may follow Mr. Wood out, and I

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

look forward to seeing you in the morning.

(Jury excused at 5:29 p.m.)

THE COURT:  Now, What I often do in these matters is I leave it to you -- and I leave it to you to decide whether you wish to do it this way -- in some instances I convene the jury without anybody, any lawyers or parties present, and just allow them -- because all we will do is just call the roll, and once they are here they are gone into the jury room and I continue with the docket.

But either you are all here -- not necessarily all -- in other words, all three lawyers for both sides don't have to appear.  And of course, the defendant can waive.  You may do as you wish.

But what I won't do is have one lawyer from one side here, and nobody here from the other side.  In that event, nobody will be here.

Do you have a preference, Mr. Lytle or Mr. Trout?

You don't have to agree on how many of you are here, but you do have to agree whether any of you are going to be here.

ATTORNEY LYTLE:  Your Honor, we agree that the jury can get going without the lawyers here.

THE COURT:  All right.  Mr. Trout, what's your view?

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

ATTORNEY TROUT:  Well, my view before I consulted with my client was that I would dispense with presence, but I think Mr. Jefferson would like to be here.

THE COURT:  All right.  That's fine.  Everyone can be here, then, tomorrow at 9:30.

All right.  I thank counsel.  I see you tomorrow at 9:30.

(Court recessed at 5:32 p.m.)

---

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

CERTIFICATE


I, MICHAEL A. RODRIQUEZ, an Official Court Reporter for the United States District Court, in the Eastern District of Virginia, Alexandria Division, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had and evidence adduced upon the jury trial in the case of UNITED STATES OF AMERICA v. WILLIAM J. JEFFERSON.


I further certify that I was authorized and did report by stenotype the proceedings in said jury trial, and that the foregoing pages, numbered 1 to 143, inclusive, constitute the official transcript of said proceedings, as taken from my machine shorthand notes.


IN WITNESS WHEREOF, I have hereto subscribed my name this   22nd   day of _____June_____, 2010.


_____/S/_____
Michael A. Rodriquez, RPR/CM/RMR
Official Court Reporter


MICHAEL A. RODRIQUEZ, RPR/CM/RMR